KILPATRICK TOWNSEND & STOCKTON LLP
WILLIAM T. UM (State Bar No. 166536)
WUm@kilpatricktownsend.com
HEATHER W. HABES (State Bar No. 281542)
HHabes@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA  90212-2018
Telephone:  310-248-3830
Facsimile:  310-860-0363

Attorneys for Plaintiff
YAHOO! INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| YAHOO! INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>       v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,<br><br>        Defendant. | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>  **(1) BREACH OF CONTRACT (DUTY TO DEFEND)**<br><br>  **(2) BREACH OF CONTRACT (DUTY TO INDEMNIFY)**<br><br>  **(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Yahoo! Inc. ("Yahoo") files this Complaint against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), alleging as follows:

1.     This lawsuit arises out of National Union's failure to honor its contractual obligation to defend and to indemnify Yahoo under a series of commercial general liability insurance policies, in connection with lawsuits in

California and Illinois alleging violations of privacy resulting from Yahoo's purported sharing of content in its email services. Yahoo brings claims for breach of contract pertaining to National Union's duty to defend and duty to indemnify, and resulting damages. Yahoo also seeks to recover for damages based on National Union's tortious breach of the implied covenant of good faith and fair dealing.

## The Parties, Jurisdiction And Venue

2.     Plaintiff Yahoo is a corporation formed under the laws of the State of Delaware with its principal place of business in Sunnyvale, California.

3.     Defendant National Union is a corporation organized under the laws of Pennsylvania, with its principal place of business in New York, New York.   As detailed below, National Union issued numerous insurance policies to Yahoo. National Union is a member of the AIG family of insurers.

4.     This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (c)(2) and (d) in that National Union is subject to personal jurisdiction because it regularly transacts business in California and is an admitted insurer in California.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because the contracts of insurance that are the subject of this action were entered into and were to be performed within this District, and the underlying events giving rise to Yahoo's claim for insurance coverage occurred within this District.

## Email Scanning Cases Against Yahoo

6.     During the period of August 2012 to June 2015, several class action lawsuits were filed against Yahoo alleging privacy violations involving Yahoo's email services.  These lawsuits are detailed below and are collectively referred to hereafter as the "Email Scanning Cases."

### (A) *Sutton* & *Penkava* Lawsuits

7. In June 2012, Yahoo was named as a defendant in complaints filed in California state and federal courts alleging violations of privacy and California law: (1) *Sutton & Williams v. Yahoo! Inc.*, Super. Ct. Cal., Marin County, Case No. CIV1202973 (the "*Sutton* Lawsuit") filed on June 29, 2012, and (2) *Carson Penkava v. Yahoo! Inc.*, United States District Court for the Northern District of California, Case No. 12-cv-03414 (the "*Penkava* Lawsuit") filed on June 28, 2012. The proposed class alleged in the *Penkava* Lawsuit included: "[a]ll individuals who are not residing in California but who are residing in the United States who are not Yahoo! subscribers and who have sent an e-mail to a private individual Yahoo! subscriber from their non-Yahoo! email account." In contrast, the *Sutton* Lawsuit sought to include similarly situated California residents.

8. The plaintiffs in the *Sutton* and *Penkava* Lawsuits alleged, among other things, that Yahoo violated their right to privacy by "intercept[ing] e-mails sent by individual non-Yahoo! subscribers sent from their non-Yahoo! e-mail accounts before their intended delivery to private individual Yahoo! subscribers, through the application of devices and techniques to review those e-mails for their words, content and thought processes." The *Penkava* Lawsuit further alleged that Yahoo "profited as a result of its repeated and pervasive violation of CIPA [California's Violation of Privacy Act]." Beyond the violation of privacy caused by Yahoo's alleged review of plaintiffs' emails, the *Sutton* and *Penkava* Lawsuits claimed that "Yahoo! has and continues to intercept and review and/or record the e-mail communications by Plaintiffs and the Class to private individual Yahoo! subscribers before their receipt by the Yahoo! subscribers . . . ."

9. The *Penkava* Lawsuit was dismissed with prejudice on November 30, 2012, and the *Sutton* Lawsuit was dismissed without prejudice on January 22, 2013.

### (B) *Holland, et al.* Lawsuits

10. On October 25, 2013, plaintiff Eric Holland filed a class action

complaint against Yahoo in the United States District Court for the Northern District of California, *Eric Holland v. Yahoo! Inc.*, Case No. 13-cv-4980 (the "*Holland* Lawsuit"). The *Holland* Lawsuit includes two causes of action against Yahoo: (1) Violation of California's Invasion of Privacy Act, (2) Violation of the Electronic Communications Privacy Act. The proposed class includes "[a]ll persons who, through non-Yahoo! Mail accounts, either received an email message from a Yahoo! Mail user with an @yahoo.com email address or sent an email to a Yahoo! Mail user with an @yahoo.com email address within the past two years." Three other plaintiffs filed similar complaints against Yahoo alleging identical causes of action.

11.     The *Holland* Lawsuit was consolidated with these other similar complaints as *In Re: Yahoo Mail Litigation*. A Consolidated Class Action Complaint was filed on February 12, 2014. The *In Re: Yahoo Mail Litigation* Lawsuit includes five causes of action for (1) Violation of California's Invasion of Privacy Act, (2) Violation of Article 1, Section 1 of the Constitution, (3) Violation of the Federal Wiretap Act, (4) Violation of the Federal Stored Communications Act, and (5) Declaratory relief. An Amended Consolidated Class Action Complaint was subsequently filed on June 9, 2015.

12.     The original *Holland* Lawsuit alleged, among other things, that Yahoo's practices purportedly encroached "on consumers' privacy rights by monitoring and recording confidential communications without making adequate disclosure of its conduct so that consumers are even aware that their rights are being violated." The *Holland* Lawsuit also claimed that "Yahoo collects and shares information with its 'trusted partners' in order to 'customize the advertising and content users see.'" Plaintiffs further allege that "Yahoo admits to using the information it unlawfully acquires for marketing purposes, including but not limited to, selling targeted advertising to advertisers." The *In Re: Yahoo Mail Litigation* includes similar alleged violations of privacy, such as "Plaintiffs and class members reasonably expect that their email communications with Yahoo Mail users are private, and do not expect

1  Yahoo to intercept their email communications, scan and store the content of their

2  emails, and distribute the content to third parties without their consent."  Moreover,

3  that "Plaintiffs and class members were and are injured by Yahoo's unlawful

4  interception and reading of their emails."

5      13.  The parties settled the class action claims and judgment was entered

6  pursuant to the terms of settlement on August 25, 2016.

7      **(C)** *Rehberger* **Lawsuit**

8      14.  On June 2, 2015,  plaintiff Kaylynn Rehberger filed a "copycat" lawsuit

9  in the United States District Court for the Southern District of Illinois, *Kaylynn*

10  *Rehberger, et al. v. Yahoo*, Case No. 3:15-cv-00609-SMY-DGW (S.D. Ill.) (the

11  "*Rehberger* Lawsuit").  The *Rehberger* Lawsuit is similarly premised on allegations

12  of Yahoo's "interception and scanning of electronic mail communications sent

13  between its Yahoo Mail users and non-Yahoo Mail users, and Yahoo's subsequent

14  disclosure of the intercepted content without the consent of all parties to the

15  communication . . . ."

16      15.  The *Rehberger* Lawsuit was dismissed on March 24, 2016.

17      16.   Yahoo incurred in excess of the jurisdictional amount of this Court to

18  defend and to settle the Email Scanning Cases.

19      **The National Union Policies**

20      17.  National Union sold to Yahoo five consecutive, one-year "Commercial

21  General Liability" insurance policies, covering the period of May 31, 2008 to May

22  31, 2013 (the "National Union Policies").  Each of the National Union Policies

23  provides Commercial General Liability coverage with a General Aggregate Limit of

24  $2,000,000 subject to a $1,000,000 limit for "Personal and Advertising Injury"

25  coverage, and a $1,000,000 per occurrence limit for each occurrence.  The National

26  Union Policies all contain substantially similar terms that provide coverage for the

27  Email Scanning Cases.  As an example, attached hereto as Exhibit A is a true and

28  correct copy of National Union Policy No. XWC 721-90-84, which covers the period

1   of May 31, 2008 to May 31, 2009.

2       18.   The National Union Policies include a Commercial General Liability

3   ("CGL") Coverage Form.  This Form includes, among other coverages,

4   "COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY"

5   comprised of two sections.  Section (1) is the "Insuring Agreement" and Section (2)

6   is titled "Exclusions" and includes subparts numbered (a) – (p) that purport to limit

7   the coverage available under the Insuring Agreement in section (1).  Ex. A, CGL

8   Coverage Form, Coverage B.

9       19.   Significantly for purposes of this lawsuit, Yahoo specifically sought to

10   expand the "personal injury" coverage provided by the National Union Policies

11   through a separately drafted manuscript endorsement.  In "Endorsement No. 1"[1],

12   "COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY" of the

13   Form is "deleted in its entirety and replaced" with "COVERAGE B PERSONAL

14   INJURY LIABILITY" as set forth in the Endorsement (the "Personal Injury

15   Endorsement").  Ex. A, End. 1 § II.  In contrast to the CGL Coverage Form, this

16   Personal Injury Endorsement removes several exclusions and provides broad

17   coverage for "personal injury."  *Id.*

18       20.   As set forth in the Personal Injury Endorsement, the Insuring Agreement

19   for "COVERAGE B PERSONAL INJURY LIABILITY" states:

20          We will pay those sums that the insured becomes legally obligated to pay as

21          damages because of 'personal injury' to which this insurance applies.  We will

22          have the right and duty to defend the insured against any 'suit' seeking those

23          damages. …

24   Ex. A, End. 1 § II.

25       21.   "Personal injury" is defined by the Personal Injury Endorsement as

26   "injury, including consequential 'bodily injury', arising out of one or more of the

27

28   [1] Endorsement No. 1 is included in Exhibit A.  The same Endorsement appears in each of the following National Union Policies (with only slight changes in spacing), but the title of the Endorsement differs: 2009-2010 Policy ("Endorsement #1"); 2010-2011 ("Endorsement"); 2011-2012 Policy ("Endorsement # 004").

following offenses: … (e) Oral or written publication, in any manner, of material that violates a person's right of privacy."   Ex. A, End. 1 § III(a).

22.   Yahoo has paid all premiums due on the National Union Policies in full. Yahoo also has satisfied all pertinent terms of and conditions precedent to the National Union Policies.

**National Union's Wrongful Denial Of Coverage For The Email Scanning Cases**

23.   Yahoo timely provided notice of the *Penkava* and *Sutton* Lawsuits to National Union, and National Union summarily denied coverage on September 26, 2012.  National Union recognized that Coverage B, "as amended by Endorsement" in certain policies, covered "Personal Injury," but wrongfully concluded that the underlying lawsuits did not allege "any 'personal injury' or 'personal and advertising injury'" purportedly because: "[t]here are no allegations that Yahoo! published or made known to any third party any of the allegedly unlawful material that Yahoo! intercepted from the individual non-Yahoo! subscribers."  National Union also raised an exclusion—"Insureds Engaging In Media And Internet Type Activities"—as another basis to deny coverage even though this exclusion was expressly removed from the National Union Policies.  Attached hereto as Exhibit B is a true and correct copy of National Union's denial of coverage for the *Penkava* and *Sutton* Lawsuits.

24.   Yahoo tendered the *Holland, et al.* Lawsuits to National Union, and beginning on January 15, 2014, National Union informed Yahoo that there was no coverage for all of the *Holland, et al.* Lawsuits.  Using the same basis—word for word—that it used to deny coverage for the *Penkava* and *Sutton* Lawsuits, National Union claimed: "[t]here are no allegations that Yahoo! published or made known to any third party any of the allegedly unlawful material that Yahoo! intercepted from the individual non-Yahoo! subscribers."  National Union again raised an exclusion— "Insureds Engaging In Media And Internet Type Activities"—as another basis to deny coverage even though this exclusion was expressly removed from the National Union Policies.  Attached hereto as Exhibit C is a true and correct copy of National

1  Union's denial of coverage for the *Holland, et al.* Lawsuits.

2       25.    Because National Union denied any responsibility under its policies for

3  these lawsuits, Yahoo retained, and paid the fees of, its own counsel and defended the

4  *Holland, et al.* Lawsuits, which became *In Re: Yahoo Mail Litigation* as detailed

5  above, to conclusion without the assistance or support of National Union.

6       26.    In Fall 2015, after the *Rehberger* Lawsuit was filed, and with a

7  preliminary settlement hearing pending in *In Re: Yahoo Mail Litigation*, Yahoo

8  requested National Union to reconsider its coverage denial for the Email Scanning

9  Cases, and requested National Union to provide an immediate defense of the new

10 *Rehberger* Lawsuit and to defend and to fund the settlement in *In Re: Yahoo Mail*

11 *Litigation*.  Specifically, Yahoo reiterated that the Email Scanning Cases all contain

12 allegations that clearly fall within National Union's broad obligation to defend

13 lawsuits alleging "[o]ral or written publication, in any manner, of material that

14 violates a person's right of privacy."  Attached hereto as Exhibit D is a true and

15 correct copy of Yahoo's letter requesting that National Union reconsider its coverage

16 denial.

17      27.    In response to Yahoo's letter, National Union changed its position and

18 agreed to defend *In Re: Yahoo Mail Litigation*.  In a letter dated February 16, 2016,

19 National Union stated that it "reconsidered its coverage position [and] retracts its

20 previous disclaimer of coverage . . . and ***hereby agrees to defend*** Yahoo."  (Emphasis

21 added.)  National Union, however, only agreed to defend pursuant to its 2011-12

22 Policy.  In its letter, National Union referenced the allegations from the original

23 *Holland, et al.* Lawsuits and concluded—albeit over two years too late—that

24 National Union's duty to defend was triggered by these allegations.  Attached hereto

25 as Exhibit E is a true and correct copy of National Union's letter agreeing to defend

26 Yahoo.

27      28.    Rather than acknowledge that it should have agreed to defend Yahoo

28 from the outset when the original *Holland* Lawsuit was filed and accept the

consequences for its two-year delay, National Union instead blamed Yahoo as the reason for National Union's original denial. Specifically, National Union stated that when it originally considered coverage for the *Holland* Lawsuit, "Endorsement No. 4 [the manuscript Personal Injury Endorsement discussed above] was missing from National Union's copy of the policy." National Union implied that Yahoo should have provided National Union with a copy of National Union's own policy and that Yahoo's failure to do so in a timely manner was partly the reason for National Union's over two-year delay to acknowledge its duty to defend.

29.   This is not the first time that National Union relied on an incomplete policy to deny coverage to Yahoo. As explained above, when National Union denied coverage for the *Penkava* and *Sutton* Lawsuits in September 2012, National Union cited the "Insureds Engaging In Media And Internet Type Activities" exclusion as a basis to deny coverage even though this exclusion was expressly removed by the Personal Injury Endorsement to the relevant National Union Policies.

30.   Around that same time period (in or about October 2012), Yahoo's insurance brokers at ABD Insurance & Financial Services corresponded with National Union because National Union again had failed to consider the Personal Injury Endorsement that replaced certain exclusionary language in the National Union Policies in connection with several lawsuits, including the *Sutton* Lawsuit that Yahoo had tendered to National Union. Specifically, Yahoo's brokers explained to National Union that National Union was relying on an incomplete policy without an endorsement and in November 2012, forwarded a copy of the Personal Injury Endorsement to National Union. Attached hereto as Exhibit F is a true and correct copy of the email correspondence between National Union and Yahoo's insurance brokers. This is the same endorsement that National Union claims was "missing from National Union's copy of the policy" when National Union denied coverage for the *Holland, et al.* Lawsuits in January 2014.

31.   On March 1, 2016, Yahoo accepted National Union's acknowledgement

of the potential for coverage and agreement to defend, and offered to provide copies of invoices reflecting defense fees that Yahoo incurred to defend the Email Scanning Cases for National Union's immediate review and payment. Yahoo expected National Union to reimburse the defense fees as required under the policies.

32.     On March 10, 2016, National Union advised Yahoo that National Union continued to deny any duty to indemnify Yahoo for settlement of *In Re: Yahoo Mail Litigation*. National Union further argued that it intended to rely on a limitation of liability endorsement for Allocated Loss Adjustment Expense ("ALAE") that would only apply in the event National Union originally performed under the terms of the National Union Policies. Yahoo explained that the ALAE endorsement does not apply when, as here, National Union failed to defend Yahoo from the outset of the Email Scanning Cases.

33.     Significantly for purposes of this case, the allegations triggering coverage were pleaded in the initial *Holland, et al.* Lawsuits filed beginning on October 25, 2013, and did not change in the two and a half years of litigation that followed. Thus, Yahoo explained that National Union had an obligation to defend when Yahoo first gave notice of the *Holland, et al.* Lawsuits, along with the other similar claims in *Penkava, Sutton,* and *Rehberger* – the Email Scanning Cases.

34.     Given National Union's recognition of its duty to defend *In Re: Yahoo Mail Litigation*, Yahoo urged National Union to change its position with respect to the *Penkava* and *Sutton* Lawsuits, explaining in detail the bases for coverage under the National Union Policies. National Union, however, reconfirmed its denial by letter dated May 12, 2016.

35.     The Email Scanning Cases allege, among other things, "publication" by Yahoo of emails to third parties that purportedly violated underlying plaintiffs' rights to privacy. Additionally, none of the exclusions, conditions or limitations contained in the National Union Policies operate to preclude coverage. At the very least, the Email Scanning Cases contain claims and allegations that gave rise to *the potential*

*for coverage*, thus triggering National Union's duty to defend Yahoo under well-established insurance principles.

36.    By refusing to honor its contractual obligations to defend and to indemnify Yahoo in all of the Email Scanning Cases, National Union breached one or more of the National Union Policies.

37.    National Union's coverage denial is particularly unreasonable and unjustified in light of the following:

a. National Union has exhibited a pattern and practice of relying on non-existent exclusions, including the "Insureds Engaging In Media And Internet Type Activities" exclusion, to deny coverage for the Email Scanning Cases;

b. National Union wrongfully denied a duty to defend the *Holland, et al.* Lawsuits when those lawsuits were first filed as even National Union now acknowledges that those same original allegations create a potential for coverage and trigger National Union's duty to defend;

c. Although National Union has recognized that it denied its duty to defend *In Re: Yahoo Mail Litigation* in error, National Union seeks to rely on the ALAE limitation provision in the National Union Policies that would only apply had National Union originally defended Yahoo in these actions;

d. Despite National Union's acknowledgement of the potential for coverage and its duty to defend *In Re: Yahoo Mail Litigation*, it continues to deny any duty to indemnify Yahoo for the settlement of *In Re: Yahoo Mail Litigation*, and it continues to wrongfully deny its duty to defend the identical claims in the *Sutton* and *Penkava* Lawsuits;

e. National Union was unambiguously advised in November 2012 that the Personal Injury Endorsement applied to several of the relevant National Union Policies, and yet, National Union again intentionally ignored the

Personal Injury Endorsement when it denied coverage to Yahoo for the *Holland, et al.* Lawsuits in January 2014 based, in part, on an exclusion that was removed by this endorsement;

f.   Despite being reminded of the Personal Injury Endorsement and having received a copy of the endorsement from Yahoo's insurance brokers in October 2012, National Union continued to ignore the endorsement and claimed that this endorsement was "missing from National Union's copy of the policy" when it denied coverage for the *Holland, et al.* Lawsuits in January 2014;

g.   National Union continues to try to excuse its wrongful denial of coverage by claiming that it was "missing" the full copy of its *own* insurance policy when it failed to defend Yahoo;

h.   Rather than acknowledge that it should have agreed to defend Yahoo from the outset when the original *Holland* Lawsuit was filed and accept the consequences for its two-year delay, National Union instead tried to blame Yahoo as the reason for National Union's original denial and wrongfully implied that Yahoo should have provided National Union with a full copy of National Union's own policy;

i.   Despite acknowledging that it has a duty to defend *In Re: Yahoo Mail Litigation*, National Union refuses to reimburse the defense fees and costs that Yahoo incurred to defend *In Re: Yahoo Mail Litigation* without condition.  Instead, National Union insists that if it pays Yahoo's past defense fees and costs, National Union will demand that Yahoo turn around and repay those same monies back to National Union in reliance on the ALAE endorsement;

j.   National Union's proffered position as to the Email Scanning Cases violates the terms of the National Union Policies, law, insurance industry custom and practice, the parties' course of dealings, and the facts.

38.     Yahoo has incurred significant defense costs as a result of National Union's failure to defend and improper denial of coverage.

## COUNT I

### (Breach of Contract – Duty to Defend)

39.     Yahoo incorporates herein by reference paragraphs 1 through 38 of this Complaint as fully set forth herein.

40.     National Union had a duty to defend Yahoo under the National Union Policies because the Email Scanning Cases allege "personal injury" arising out of the offense of "publication" of "material" that "violates a person's right to privacy" or raised at least the potential for coverage.

41.     Yahoo complied with all applicable conditions precedent contained in the National Union Policies related to National Union's duty to defend.  None of the exclusions, conditions or limitations contained in the National Union Policies operate to preclude National Union's duty to defend.

42.     By failing to defend Yahoo in the Email Scanning Cases, National Union materially breached its obligation under one or more of the National Union Policies.

43.     As a direct and proximate result of National Union's breach, National Union has deprived Yahoo of the benefit of the insurance for which Yahoo has paid premiums to National Union, and has caused Yahoo to incur significant legal defense fees and expenses in an amount exceeding the jurisdictional limit of this Court.

44.     Yahoo has been damaged in an amount to be proven at trial, which consists of unreimbursed defense costs associated with the Email Scanning Cases, plus interest and other appropriate damages.

## COUNT II

### (Breach of Contract – Duty to Indemnify)

45.     Yahoo incorporates herein by reference paragraphs 1 through 44 of this Complaint as fully set forth herein.

46.   National Union had a duty to indemnify Yahoo under one or more of the National Union Policies because the Email Scanning Cases allege covered "personal injury" arising out of the offense of "publication" of "material" that "violates a person's right to privacy."

47.   Yahoo has complied with all applicable conditions precedent contained in the National Union Policies.  Additionally, none of the exclusions, conditions or limitations in the National Union Policies operate to preclude National Union's duty to indemnify.

48.   By refusing to honor its obligation to indemnify Yahoo in connection with the Email Scanning Cases, National Union materially breached its obligations under one or more of the National Union Policies.

49.   As a direct and proximate result of National Union's breach, National Union has deprived Yahoo of the benefit of the insurance policies for which Yahoo has paid premiums, and has caused Yahoo to incur significant legal fees, expenses, and amounts paid to resolve the Email Scanning Cases.

50.   Yahoo has been damaged in an amount to be proven at trial, plus interest and appropriate damages.

## COUNT III

### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

51.   Yahoo incorporates herein by reference paragraphs 1 through 50 of this Complaint as fully set forth herein.

52.   The National Union Policies contain an implied covenant, unwritten but implied by operation of law, that imposes upon National Union an obligation to act in good faith and to deal fairly with Yahoo in all matters material to the National Union Policies, and to give at least the same level of consideration to Yahoo's interests as it gives to its own interests.

53.   National Union has unreasonably and without basis persisted in asserting its position that there is no covered "personal injury" alleged in the Email Scanning

1  Cases, despite its express and belated acknowledgement of its duty to defend *In Re:*
2  *Yahoo Mail Litigation.*  Even though it has recognized its breach of the duty to
3  defend, National Union continues to claim that it is entitled to rely on limitations in
4  the National Union Policies that only apply when it has not breached its contractual
5  obligations.  National Union has expressly or effectively denied coverage for Yahoo's
6  insurance claim, in conscious and complete disregard of Yahoo's rights, applicable
7  law, the language of the National Union Policies, insurance industry custom and
8  practice, the parties' course of dealings, and the facts.

9       54.     National Union's continued and repeated refusal to honor its coverage
10 obligations to Yahoo is unreasonable, violates Yahoo's reasonable expectations of
11 coverage, constitutes a gross and conscious disregard for Yahoo's interests, and
12 placed its own interests above those of Yahoo.

13      55.     National Union knew its conduct was unreasonable, or acted in reckless
14 disregard of the fact that its conduct was unreasonable.

15      56.     In addition, National Union has breached its duties under the National
16 Union Policies through some or all of the following conduct:

17         a.  Failing to investigate properly the facts related to the claims asserted
18             against Yahoo in the Email Scanning Cases, or to evaluate those facts
19             properly;

20         b.  Deliberately neglecting to inquire fully into possible bases that might
21             support coverage for the Email Scanning Cases;

22         c.  Ignoring relevant evidence available, as well as relevant case law,
23             supporting Yahoo's claim for coverage of the Email Scanning Cases;

24         d.  Maliciously and oppressively seeking to rely on limiting language in the
25             National Union Policies that only applies when National Union has
26             satisfied its contractual obligations, and not breached its duty to defend
27             with respect to the Email Scanning Cases;

28         e.  Attempting to blame Yahoo for not providing a copy of Endorsement

No. 4 or other purported relevant information when National Union was specifically informed of this endorsement, Yahoo had no further obligation to provide information following National Union's conclusory denial, and National Union is responsible for maintaining adequate records of the policy documents;

f. Deceptively or deliberately misrepresenting its coverage position to avoid defense and indemnification of Yahoo;

g. Asserting grounds to avoid coverage that it knows are not supported by, and are contrary to, the terms of the National Union Policies, the law, insurance industry custom and practices, and the facts;

h. Refusing to pay defense costs or to indemnify Yahoo in connection with the Email Scanning Cases, for which Yahoo reasonably expected a defense and indemnification;

i. Engaging in a pattern and practice of relying on deleted and non-existent exclusions to consistently deny coverage for covered lawsuits; and

j. By giving greater consideration to its own interests than it gave to Yahoo's interests.

57. In breach of the implied covenant of good faith and fair dealing, National Union committed some or all of the acts alleged above for the purpose of consciously withholding from Yahoo the rights and benefits to which it is entitled under the National Union Policies. Such bad faith conduct was committed, authorized, or ratified by an officer, director, or managing agent of National Union.

58. National Union has breached its obligations under the National Union Policies in conscious disregard of Yahoo's rights, constituting oppression, fraud, or malice. National Union has engaged in a series of acts designed to deny wrongfully the benefits due under the National Union Policies. National Union acted with the requisite intent to injure within the meaning of California Civil Code section 3294. Yahoo is entitled to recover punitive damages from National Union in an amount

1    sufficient to punish and deter similar conduct.

2        59.    As a direct, proximate, and foreseeable result of National Union's

3    tortious conduct and conscious disregard for Yahoo's rights, Plaintiffs have sustained

4    damages, including without limitation, incidental and consequential damages flowing

5    from National Union's bad faith denials, attorneys' fees incurred by Yahoo pursuing

6    coverage in light of National Union's wrongful denial of coverage, pre-judgment

7    interest, punitive damages, and such other relief as the Court deems appropriate.

8        60.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813

9    (1985), Yahoo is entitled to recover its reasonable attorneys' fees incurred in its

10   efforts to obtain the benefits of the coverage that National Union has wrongfully

11   withhold, and continues to withhold, in bad faith, plus interest.  The total amount of

12   these attorneys' fees is currently unknown.  When the precise amount of Yahoo's

13   damage is known, Yahoo will assert those damages accordingly.

14       61.    Yahoo is further entitled to recover from National Union damages

15   sustained by reason of National Union's tortious conduct, including consequential

16   and punitive damages, in an amount to be determined at trial.

17                          **PRAYER FOR RELIEF**

18       WHEREFORE, Yahoo respectfully seeks the following relief:

19       A.     That the Court enter judgment in favor of Yahoo on all Counts;

20       B.     On all Counts, an award of damages in Yahoo's favor in an amount to

21              be determined at trial;

22       C.     On Yahoo's Count III, extra-contractual damages, including without

23              limitation compensatory damages flowing from National Union's bad

24              faith denials, attorneys' fees incurred by Yahoo to pursue coverage in

25              light of National Union's wrongful denial of coverage, pre-judgment

26              interest, punitive damages, and such other relief as the Court deems

27              appropriate;

28       D.     On all Counts, an award of Yahoo's reasonable attorneys' fees, pre-

1   judgment and post-judgment interest, costs and the expenses of this

2   action; and

3   E.   On all Counts, for such other and further relief as this Court deems just

4   and proper.

5

6   DATED:   January 30, 2017          Respectfully submitted,

7                                      KILPATRICK TOWNSEND & STOCKTON
                                       LLP

8

9                                      By: _____

10                                         WILLIAM T. UM
                                           HEATHER W. HABES

11                                     Attorneys for Plaintiff
                                       Yahoo! Inc.

12

- 18 -
COMPLAINT

1

## <u>REQUEST FOR TRIAL BY JURY</u>

2

Yahoo hereby requests that this case be tried to a jury.

3

4

DATED:  January 30, 2017

Respectfully submitted,

5

KILPATRICK TOWNSEND & STOCKTON
LLP

6

7

By:

8

WILLIAM T. UM
HEATHER W. HABES

9

10

Attorneys for Plaintiff
Yahoo! Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

Policy No.  GL 930-84
Renewal of No. 7218194

CG DS 01 10 01

**AIG** **AMERICAN INTERNATIONAL COMPANIES** ®
70 Pine Street, New York, NY 10270
(212) 770-7000
Coverage is provided by
# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
(a capital stock company)

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**NAMED INSURED & MAILING ADDRESS**
YAHOO, INC.
701 FIRST AVENUE
SUNNYVALE, CA 94089-1019

**PRODUCER'S NAME & MAILING ADDRESS**
ABD INSURANCE AND FINANCIAL SERVICES
305 WALNUT STREET
REDWOOD CITY, CA 94063-1731

**POLICY PERIOD:** From 05/31/2008 to 05/31/2009 at 12:01 A.M. Standard Time at your mailing address shown above.

**FORM OF BUSINESS:**

☒ CORPORATION  ☐ PARTNERSHIP  ☐ LIMITED LIABILITY COMPANY  ☐ INDIVIDUAL  ☐ OTHER

**BUSINESS DESCRIPTION:**   INTERNET OR WEB OPS.

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:  ON FILE WITH COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**POLICY PREMIUM:***             $290,650

**PREMIUM SHOWN IS PAYABLE:**     $290,650 at inception.
*This policy is subject to annual audit.
**Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002 as amended by the Terrorism Risk Insurance Program Reauthorization Act 2007:**
    $26,399 Included In Policy Premium

**SCHEDULE OF STATE TAXES, FEES AND SURCHARGES, IF APPLICABLE:****

**State Taxes, Fees and Surcharges shown are in addition to the above referenced Policy Premium.

**ENDORSEMENTS ATTACHED TO THIS POLICY:**      SEE ATTACHED FORMS SCHEDULE

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORMS, AND ENDORSEMENTS IF ANY ISSUED TO FORM A PART THEREOF COMPLETE THE ABOVE NUMBERED POLICY.

Date Issued: 06/30/2008

EXHIBIT A - PAGE 21

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this policy.

President
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Secretary
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

This policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the policy.

Authorized Representative

SIGNUJ

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
|     DAMAGE TO PREMISES RENTED TO YOU LIMIT | $1,000,000 | Any one premise |
|     MEDICAL EXPENSE LIMIT | $10,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |

| RETROACTIVE DATE (CG 00 02 ONLY) |
|---|

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE:   NONE
                  (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES.)

| CLASSIFICATION AND PREMIUM | | | | | |
|---|---|---|---|---|---|
| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE Prem/Prod/comp Ops   Ops | ADVANCE PREMIUM Prem/ Ops | Prod/comp Ops |
| SEE COMPOSITE RATE ENDORSEMENT | | | | | |

A = AREA
C = TOTAL COST
M = ADMISSIONS
O = TOTAL OPERATING EXPENSES
P = PAYROLL
S = GROSS SALES
T = OTHER
U = UNITS (EACH)

Total:   $290,650

EXHIBIT A  -  PAGE 23

## FORMS SCHEDULE

EFFECTIVE DATE: 05/31/2008

NAMED INSURED:       YAHOO, INC.

POLICY NUMBER:       XWC 721-90-84

```
IL0017 (1198) COMMON POLICY CONDITIONS
CG0001 (1207) COMM GEN'L LIAB COV FORM
CG0224 (1093) EARLIER NOTICE OF CANC
CG2015 (0704) ADDITIONAL INSURED - VENDORS
CG2147 (1207) EMPL. RELATED PRACTICES EXCL
CG2404 (1093) WAIVER OF TRANS RIGHTS OF RECOV
CG3234 (0105) CALIFORNIA CHANGES
IL0021 (0702) NUCLEAR ENERGY LIAB EXCL (BROAD FORM)
IL0270 (0907) CA CHANGES-CANC/NONRENEWAL
58332  (0793) TOTAL LEAD EXCLUSION
61944  (0295) BROAD FORM NAMED INSURED
62132  (0395) UNINTENTIONAL ERRORS AND OMISSIONS
64009  (1195) NONOWNED WATERCRAFT ENDT -
82540  (0405) ASBESTOS AND SILICA EXCL ENDT
51767  (0402) EMPLOYEE BENEFITS LIABILITY INS
61707  (1294) AMENDT OF DUTIES, OCC, OFFNSE, CL/SUIT
61712  (1206) ADD'L INSRD-WHERE REQ'D UNDER CONTRACT
61945  (0901) EXTENDED FIRE DAMAGE LIAB (WATER)
62134  (0395) AMENDT ENDT - WHEN WE DO NOT RENEW
62898  (0901) RADIOACTIVE MATTER EXCLUSION
64007  (0405) FELLOW EMPLOYEE EXCLUSION DELETED
65157  (0496) INCIDENTAL MEDICAL MALPRACTICE COVERAGE
67260  (0397) BODILY INJURY DEFINITION EXTENSION
67265  (0397) AMENDMENT OF OTHER INSURANCE
67266  (0397) NEWLY ACQUIRED ENTITY COVERAGE EXT
67446  (0497) LIMITED JOINT VENTURE COVERAGE
71705  (0998) LIBERALIZATION
71709  (0304) COMPOSITE RATING PLAN ENDORSEMENT
74437  (0304) BLENDED POLLUTION EXCLUSION
74447  (0901) PERSONAL INJURY DEFINITION EXTENSION
78689  (0703) FUNGUS EXCLUSION
87295  (0105) EXCLUSION - VIOLATION OF STATUTES
89644  (0705) AMENDATORY ENDT- COVERAGE TERR
ENDT NO.1     COVERAGE B - PERSONAL INJURY
```

# GENERAL LIABILITY
# NOTICE TO POLICYHOLDERS

## REVISIONS TO ADDITIONAL INSURED ENDORSEMENTS

This Notice does **not** form a part of your insurance contract. The Notice is designed to alert you to coverage changes in several additional insured endorsements in this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply. Please read your policy, and the endorsements attached to your policy, carefully.

This notice contains a brief synopsis of the revisions to the following endorsements:

- CG 20 07 07 04 - Additional Insured - Engineers, Architects, Or Surveyors

- CG 20 10 07 04 - Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization

- CG 20 15 07 04 - Additional Insured - Vendors

- CG 20 26 07 04 - Additional Insured - Designated Person Or Organization

- CG 20 28 07 04 - Additional Insured - Lessor Of Leased Equipment

- CG 20 31 07 04 - Additional Insured - Engineers, Architects Or Surveyors

- CG 20 32 07 04 - Additional Insured - Engineers, Architects Or Surveyors Not Engaged By The Named Insured

- CG 20 33 07 04 - Additional Insured - Owners, Lessees Or Contractors - Automatic Status When Required In Construction Agreement With You

- CG 20 34 07 04 - Additional Insured - Lessor Of Leased Equipment - Automatic Status When Required In Lease Agreement With You

- CG 20 37 07 04 - Additional Insured - Owner, Lessees Or Contractors - Completed Operations

When any of the above references endorsements are attached to your policy, there is coverage for a person or organization that you name as an additional insured on your policy **ONLY** if the bodily injury, property damage or personal and advertising injury is caused in whole or in part by your acts or omissions or the acts or omissions of those working on your behalf.

There is **NO** coverage for the additional insured for bodily injury, property damage or personal and advertising injury caused entirely by any negligence that is not attributable to you or those acting on your behalf.

This may be a reduction in coverage in states where you are contractually permitted to hold harmless an additional insured for that additional insured's sole negligence or in states where courts have enabled coverage for the sole negligence of the additional insured.

86511 (8/04)

POLICY NUMBER: GL   721-90-84

**COMMERCIAL GENERAL LIABILITY**
CG P 010 12 07

# 2007 GENERAL LIABILITY MULTISTATE FORMS REVISION
# ADVISORY NOTICE TO POLICYHOLDERS

This is a summary of the major changes to your policy. This notice does not reference every editorial change made in the coverage form. No coverage is provided by this summary nor can it be construed to replace any provisions of your policy or endorsements. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THIS POLICY SHALL PREVAIL.**

The major areas within the policy that broaden or reduce coverage are highlighted below. Also, the areas within the policy that do not impact coverage are highlighted below.

---

## COVERAGE FORM CHANGES

## *NO IMPACT IN COVERAGE*

### SUPPLEMENTARY PAYMENTS SECTION

**CG 00 01 12 07** - Commercial General Liability Coverage Form (Occurrence Version)

**CG 00 02 12 07** - Commercial General Liability Coverage Form (Claims-made Version)

**CG 00 09 12 07** - Owners And Contractors Protective Liability Coverage Form - Coverage For Operations Of Designated Contractor

**CG 00 33 12 07** - Liquor Liability Coverage Form (Occurrence Version)

**CG 00 34 12 07** - Liquor Liability Coverage Form (Claims-made Version)

**CG 00 35 12 07** - Railroad Protective Liability Coverage Form

**CG 00 37 12 07** - Products/Completed Operations Liability Coverage Form (Occurrence Version)

**CG 00 38 12 07** - Products/Completed Operations Liability Coverage Form (Claims-made Version)

**CG 00 39 12 07** - Pollution Liability Coverage Form Designated Sites

**CG 00 40 12 07** - Pollution Liability Limited Coverage Form Designated Sites

**CG 00 65 12 07** - Electronic Data Liability Coverage Form

**CG 00 66 12 07** - Product Withdrawal Coverage From

The Supplementary Payments Section in your policy provides coverage for your defense costs with respect to any claim we investigate or settle, or any suit against you that we defend. The Supplementary Payments Section has been revised to reinforce that coverage is provided for court costs taxed against you, but this section does not provide coverage for plaintiff's attorneys' fees or attorneys' expenses taxed against you.

While this change is considered to be a reinforcement of coverage intent, it may result in a decrease in coverage in jurisdictions where courts have ruled that plaintiff's attorneys' fees or attorneys' expenses taxed against the insured can be levied as a supplementary payment.

### INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRET EXCLUSION

**CG 00 01 12 07** - Commercial General Liability Coverage Form (Occurrence Version)

**CG 00 02 12 07** - Commercial General Liability Coverage Form (Claims-made Version)

**CG 00 65 12 07** - Electronic Data Liability Coverage Form

---

CG P 010 12 07 © ISO Properties, Inc., 2007

The Infringement Of Copyright, Patent, Trademark Or Trade Secret Exclusion in your policy has been revised to reinforce that the exclusion does **not** apply to coverage for personal and advertising injury arising out of infringement of other intellectual property rights involving the use of another's advertising idea in your advertisement.

## DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES EXCLUSION

**CG 00 01 12 07** - Commercial General Liability Coverage Form (Occurrence Version)
**CG 00 02 12 07** - Commercial General Liability Coverage Form (Claims-made Version)

Previously, this exclusion was added to your policy via mandatory endorsement. The endorsement contained an exclusion addressing injury or damage arising out of any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003 or any other similar statute, ordinance or regulation that prohibits or limits the sending, transmitting, communicating or distribution of material or information. This exclusion has now been incorporated directly into your policy.

## LIQUOR LIABILITY

**CG 00 33 12 07** - Liquor Liability Coverage Form (Occurrence)
**CG 00 34 12 07** - Liquor Liability Coverage Form (Claims-made)

The definition of "injury" in your policy has been revised to reinforce that coverage is provided for bodily injury or property damage, as well as any related care, loss of services or loss of support.

---

## MULTISTATE ENDORSEMENTS

# *BROADENINGS IN COVERAGE*

### Existing Endorsements

**CG 22 60 12 07** - Limitation Of Coverage - Real Estate Operations
When this revised endorsement is attached to your policy, coverage is provided for injury and damage arising out of the ownership, operation, maintenance or use of premises listed **or shown** by you. The addition of the words "or shown" accommodates real estate agents who provide real estate professional services for properties shown but not listed by such agents.

**CG 22 93 12 07** - Lawn Care Services Coverage
When this revised endorsement is attached to your policy, insureds who apply herbicides/pesticides on lawns under their regular care are now provided bodily injury and property damage coverage.

### New Endorsements

**CG 22 92 12 07** - Snow Plow Operations Coverage
When this endorsement is attached to your policy, coverage is provided for bodily injury and property damage arising out of snow plow operations performed by an auto.

**CG 24 16 12 07** - Canoes Or Rowboats
When this endorsement is attached to your policy, coverage is provided for bodily injury and property damage arising out of the operation of any canoe or rowboat owned or used by or rented to you.

EXHIBIT A - PAGE 27

   ©ISO Properties, Inc., 2007   CG P 010 12 07

## *REDUCTIONS IN COVERAGE*

### Existing Endorsements

**CG 21 47 12 07** - Employment-related Practices Exclusion (For Use With Commercial General Liability Coverage Forms)

**CG 29 51 12 07** - Employment-related Practices Exclusion (For Use With The Owners And Contractors Protective Liability And Pollution Liability Coverage Forms)

The Employment-related Practices Exclusion is revised to reinforce that, when these endorsements are attached to your policy, coverage is not provided for any injury to a person associated with the employment of that person, whether it occurs before employment, during employment or after employment of that person. Additionally, the exclusion is revised to reinforce that coverage does not apply for injury to a person caused by the malicious prosecution of that person.

While these changes are each a reinforcement of coverage intent, they may result in a decrease in coverage in jurisdictions where courts have ruled the exclusion to be inapplicable in employment-related malicious prosecution claims and/or post-employment claims. For that reason, out of caution, we are listing it as a decrease.

### New Endorsements

**CG 21 97 12 07** - Abuse Or Molestation Exclusion - Specified Professional Services

When this endorsement is attached to your policy, coverage is not provided for injury or damage arising out of the actual or threatened abuse or molestation of a person while in the care, custody or control of any insured, during the rendering of the specified professional service.

**CG 21 98 12 07** - Total Pollution Exclusion Endorsement (For Use With The Products/Completed Operations Coverage Forms)

When this endorsement is attached to your policy, coverage is not provided for bodily injury or property damage (including any loss, cost or expense) arising out of any pollution exposure.

 ©ISO Properties, Inc., 2007 EXHIBIT A - PAGE 28 □

# GENERAL LIABILITY

# NOTICE TO POLICYHOLDERS

## REVISIONS TO ADDITIONAL INSURED - VENDORS

This Notice does not form a part of your insurance contract. The Notice is designed to alert you to coverage changes in several additional insured endorsements in this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply. Please read your policy, and the endorsements attached to your policy, carefully.

This notice contains a brief synopsis of the revisions to endorsement CG 20 15 07 04 - Additional Insured - Vendors

When this endorsement is attached to your policy, there is NO coverage for an additional insured vendor for bodily injury or property damage arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf, unless the bodily injury or property damage is caused by:

1. Repackaging solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from you, and then repackaged in the original container; or

2. Inspections, adjustments, tests or servicing that the vendor has agreed to make or normally undertake to make in the usual course of business, in connection with the distribution or sale of the products.

This may be a reduction in coverage in states where you are contractually permitted to hold harmless an additional insured for that additional insured's sole negligence or in states where courts have enabled coverage for the sole negligence of the additional insured.

86512 (8/04)                                                    EXHIBIT A - PAGE 29

POLICY NUMBER: GL   721-90-84

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: GL   721-90-84

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of rea-

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 31

sonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 32

CG 00 01 12 07

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of

any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under

EXHIBIT A - PAGE 33

the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that

must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 34

CG 00 01 12 07

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not ap-

ply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

 © ISO Properties, Inc., 2006 EXHIBIT A - PAGE 35 □

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

EXHIBIT A - PAGE 36

    (a) The accident takes place in the "coverage territory" and during the policy period;

    (b) The expenses are incurred and reported to us within one year of the date of the accident; and

    (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid administered at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

    (1) Agrees in writing to:

© ISO Properties, Inc., 2006
EXHIBIT A - PAGE 37

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.

Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

   (a) Owned, occupied or used by,

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 38

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any de-

    © ISO Properties, Inc., 2006    EXHIBIT A - PAGE 39      □

mands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises

rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total ap-

© ISO Properties, Inc., 2006      EXHIBIT A - PAGE 40      CG 00 01 12 07 □

plicable limits of insurance of all insurers.

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

  **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

  **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

  **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

  **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

  **c.** All other parts of the world if the injury or damage arises out of:

    **(1)** Goods or products made or sold by you in the territory described in Paragraph a. above;

    **(2)** The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 41

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 42

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

© ISO Properties, Inc., 2006

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 44

CG 00 01 12 07

POLICY NUMBER: GL    721-90-84

**COMMERCIAL GENERAL LIABILITY**
**CG 02 24 10 93**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

Number of Days Notice            90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2. of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

EXHIBIT A - PAGE 45

POLICY NUMBER: GL    721-90-84

**COMMERCIAL GENERAL LIABILITY**
CG 20 15 07 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) |
|---|
| BLANKET AS REQUIRED BY WRITTEN CONTRACT |
| |
| **Your Products** |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II - Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally un-

dertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

      (1) The exceptions contained in Subparagraphs d or f.;  or

      (2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

CG 20 15 07 04

© ISO Properties, Inc.,2004

POLICY NUMBER: GL 721-90-84

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 EXHIBIT A - PAGE 47 □

POLICY NUMBER: GL    721-90-84

**COMMERCIAL  GENERAL  LIABILITY**
**CG 24 04 10 93**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER  OF  TRANSFER  OF  RIGHTS  OF  RECOVERY AGAINST  OTHERS  TO  US

This endorsement  modifies  insurance  provided  under  the  following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name  of  Person  or  Organization:**
WHERE REQUIRED BY WRITTEN CONTRACT

(If no  entry  appears  above,  information  required  to  complete  this  endorsement  will  be  shown  in  the Declarations  as  applicable  to  this  endorsement.)

The TRANSFER OF RIGHTS  OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** - COMMER-CIAL GENERAL LIABILITY CONDITIONS) is amended  by  the addition  of  the following:

We  waive  any  right  of  recovery  we  may  have  against  the  person  or  organization  shown  in  the Schedule  above  because  of  payments  we  make  for  injury  or  damage  arising  out  of  your  ongoing operations  or  "your  work"  done  under  a  contract  with  that  person  or  organization  and  included  in the  "products-completed   operations  hazard".  This  waiver  applies  only  to  the  person  or  organization shown  in  the  Schedule  above.

Copyright, Insurance  Services  Office,  Inc., 1992     EXHIBIT A  -  PAGE 48

POLICY NUMBER: GL     721-90-84

**COMMERCIAL GENERAL LIABILITY**
**CG 32 34 01 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

          © ISO Properties, Inc.,2004
□

POLICY NUMBER: GL  721-90-84                                              **IL 00 21 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc., 2001    EXHIBIT A - PAGE 50

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  (a) Any "nuclear reactor";

  (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

  (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

©ISO Properties, Inc., 2001

EXHIBIT A - PAGE 51

IL 00 21 07 02          □

POLICY NUMBER: GL    721-90-84

IL 02 70 09 07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

a. 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

b. 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 52

the risks insured against.

  (6) A determination by the Commissioner of Insurance that the:

    (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (b) Continuation of the policy coverage would:

      (i) Place us in violation of California law or the laws of the state where we are domiciled; or

      (ii) Threaten our solvency.

  (7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

  b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

    (2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

  **7. Residential Property**

    This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

    Commercial Property Coverage Part

    Farm Coverage Part - Farm Property - Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

    a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

    b. We may not cancel this policy solely because the first Named Insured has:

      (1) Accepted an offer of earthquake coverage; or

    (2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

    However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

    c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction (**c.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

      (1) Capital Assets Program Coverage Form (Output Policy);

      (2) Commercial Property Coverage Part - Causes Of Loss - Special Form; or

      (3) Farm Coverage Part - Causes Of Loss Form - Farm Property, Paragraph **D.** Covered Causes Of Loss - Special.

**C.** The following is added and supersedes any provisions to the contrary:

  **NONRENEWAL**

  **1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

    We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

  **2. Residential Property**

    This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

    Capital Assets Program (Output Policy) Coverage Part

    Commercial Property Coverage Part

    Farm Coverage Part - Farm Property - Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

    a. We may elect not to renew such coverage for any reason, except as provided in **b.**, **c.** and **d.** below:

© ISO Properties, Inc., 2006
EXHIBIT A - PAGE 53
IL 02 70 09 07

**b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

  **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

  **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

  the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earth-quake Authority that included an earthquake policy premium surcharge.

**d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

  **(1)** Capital Assets Program Coverage Form (Output Policy);

  **(2)** Commercial Property Coverage Part - Causes Of Loss - Special Form; or

  **(3)** Farm Coverage Part - Causes Of Loss Form - Farm Property, Paragraph **D.** Covered Causes Of Loss - Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2006

EXHIBIT A - PAGE 54

**ENDORSEMENT**

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

policy No. GL  721-90-84     issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY**

**TOTAL LEAD EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY**

This insurance does not apply to any "bodily injury", "property damage", "personal injury", or "advertising injury", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

*Laurence J. Sweeney*

AUTHORIZED REPRESENTATIVE
EXHIBIT A - PAGE 55

58332 (7/93)

**ENDORSEMENT**

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

policy No. GL     721-90-84      issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BROAD FORM NAMED INSURED**

*This endorsement modifies insurance provided under the following:*

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    TRUCKERS COVERAGE FORM

**Policy Declarations, "Named Insured" is revised to include:**

"Named Insured" means the person or organization first named as the Named Insured on the Declarations Page of this policy (the "First Named Insured"). Named Insured also includes (1) any other person or organization named as a Named Insured on the Declarations Page; (2) any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over at the inception date of this policy, provided such subsidiary, associated, affiliated, allied or acquired company or corporation and their operations have been declared to us prior to the inception date of this policy.

*Lawrence J. Sweeney*

AUTHORIZED REPRESENTATIVE

EXHIBIT A - PAGE 56

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.   05/31/2008          forms a part of

policy No. GL     721-90-84        issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**UNINTENTIONAL ERRORS AND OMISSIONS**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section IV - Commercial General Liability Conditions, 6. - Representations** is amended by adding:

d.     The unintentional failure by you or any Insured to provide accurate and complete representations as of
       the inception of the policy will not prejudice the coverages afforded by this policy.

*Lawrence J. Sweeney*
AUTHORIZED REPRESENTATIVE

EXHIBIT A - PAGE 57

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.   05/31/2008        forms a part of

Policy No. GL     721-90-84      issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NONOWNED WATERCRAFT ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I - Coverages, Coverage A. - Bodily Injury and Property Damage Liability, 2. - Exclusions, g. - Aircraft, Auto or Watercraft, (2),** is amended to read:

(2)    A watercraft you do not own that is:

   (a)    Less than 50    feet long; and

   (b)    Not being used to carry persons or property for a charge.

However, this exception does not apply to watercraft you do not own that is used in any pre-arranged race or speed contest.

**Section II - Who is an Insured,** is amended to add following the last unmarked paragraph:

No person is an insured with respect to any watercraft owned in whole or in part by such person or by a member of his household.

*Lawrence J. Sweeney*
AUTHORIZED REPRESENTATIVE

64009 (11/95)

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008      forms a part of

policy No. GL    721-90-84     issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS AND SILICA EXCLUSION ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions, is** amended to add the following exclusions:

**Q. Asbestos**

"Bodily injury" or "Property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

**R. Silica**

"Bodily injury" or "property damage" or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

**Section I. - Coverages, Coverage B.- Personal and Advertising Injury Liability, 2. - Exclusions is** amended to add the following exclusions:

**P. Asbestos**

"Personal and Advertising Injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

82540 (4/05)

**Q. Silica**

"Personal and Advertising Injury" or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

All other terms, conditions and exclusions of the policy shall remain unchanged.

_Lawrence J. Sweeny_

**Authorized Representative or
Countersignature (in States Where
Applicable)**

EXHIBIT A - PAGE 60

**ENDORSEMENT**

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

policy No. GL     721-90-84      issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT  CAREFULLY**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS ENDORSEMENT IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  PLEASE READ THIS ENDORSEMENT CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF INSURANCE AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED BY US FOR LEGAL DEFENSE.**

**EMPLOYEE BENEFITS LIABILITY INSURANCE**
**PROVIDES CLAIMS MADE COVERAGE - Please read carefully**

**ADDITIONAL DECLARATIONS**

| ITEMS | | |
|---|---|---|
| 1. | **LIMIT OF INSURANCE FOR EMPLOYEE BENEFITS LIABILITY INSURANCE** Any payments made pursuant to this endorsement will be subject to, and erode the General Aggregate Limit of the policy to which this endorsement is attached. | |
| | $   1,000,000   , Each Wrongful Act or Series Of Related Wrongful Acts Limit | |
| 2. | **SELF INSURED RETENTION:** ☐ (Applicable, if checked) | $          , Each Wrongful act or series of related Wrongful acts.  If applicable, then the insurance provided by this endorsement will only apply in excess of the listed Self Insured Retention (hereinafter "Retained Limit"). Additionally, we shall have the right, but not the duty, to defend any suit against the Insured seeking damages on account of a Wrongful act or series of related Wrongful acts. |
| 3. | **DEDUCTIBLE:** ☒ (Applicable, if checked) | $       1,000, Each Wrongful act or series of related Wrongful acts. If applicable, then the Deductible is subject to the terms and conditions of the Deductible Endorsement - Form A (Form No.           ) that is attached to the policy under Endorsement No.        . |
| 4. | **RETROACTIVE DATE:**     05/01/1998 | |
| 5. | **ESTIMATED ANNUAL PREMIUM:** | $ INCLUDED |

A.    For the purpose of coverage provided by this endorsement only, **SECTION I  -  COVERAGES,** is amended with the addition of the following:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

1. Insuring Agreement

    a. We will pay the Insured for those sums which the Insured shall become legally obligated to pay as damages because of any "claim" made against the Insured due to any "Wrongful act" of the Insured, or any other person for whose acts the Insured is legally liable, in the "administration" of the "employee benefit program" of the Insured.

    Except with respect to a Retained Limit as indicated in Item 2 of the Additional Declarations, we have the right and duty to defend any suit against the Insured seeking damages on account of such negligent act, error or omission, even if any of the allegations of the suit are groundless, false or fraudulent, and we may make such investigation and settlement of any "claim" or suit as we deem expedient. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. But:

      1) The amount we will pay for damages is limited as described in Section D. 1. of this endorsement headed Limits of Insurance;

      2) the amounts we pay for "allocated loss adjustment expenses" will reduce the Limit of Insurance available as provided under Section D. 1. of this endorsement headed Limits of Insurance; and

      3) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements, or "allocated loss adjustment expenses".

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section C. of this endorsement.

    b. The insurance provided by this endorsement applies to damages only if:

      1) the damages did not occur before the Retroactive Date, if any, shown in Item 4. of the Additional Declarations or after the end of the policy period; and

      2) the "claim" for damages covered by this endorsement is first made against the Insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Section E., 2. Optional Extended Reporting Period.

    c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

      2) When we make settlement in accordance with Paragraph 1.a. above

    A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

    d. All "claims" for damages made by an "employee" because of any "Wrongful act" or series of related "Wrongful acts", including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. Exclusions

This endorsement does not apply to:

    a. Dishonest, Fraudulent, Criminal Or Malicious Act.

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c. Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d. Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

1) Failure of any investment to perform;
2) Errors in providing information on past performance of investment vehicles; or
3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program"

f. Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the internal Revenue Code or any similar state or local law.

j. Employment-Related Practices

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

k. Failure to Maintain Insurance or Bond

Any "claim" made against the Insured based on or attributable to any failure or omission on the part of the Insured to effect and maintain insurance or bonding for Plan Property or Assets.

B.  For purposes of the coverage provided by this endorsement only, **Section II - Who Is An Insured** is deleted in its entirety and replaced with the following:

Insured: as used in this endorsement, means the Named Insured, provided that (a) if the Named Insured is designated as an individual, the insurance applies only to the conduct of a business of which he is the sole proprietor and (b) the unqualified word Insured also includes the following:

A.  If the Named Insured is or includes a partnership or joint venture, any partner or member thereof but only with respect to his liability as such;

B.  Any executive officer, director or stockholder of the Named Insured while acting within the scope of his duties as such;

C.  Any employee, provided such employee is authorized to act in the "administration" of the "Employee Benefits Program" of the Named Insured.

C.  For the purposes of the coverage provided by this endorsement only, **SECTION I - SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**, is deleted in its entirety and replaced with the following:

ALLOCATED LOSS ADJUSTMENT EXPENSES - EMPLOYEE BENEFITS LIABILITY COVERAGE

a.  If a Retention Amount is shown in Item 2. of the Additional Declarations above, you are responsible for all "Allocated Loss Adjustment Expenses" we pay as Supplementary Payments, according to the election indicated by an "X" below. If no election is indicated, election i. shall apply.

☐  i.  All "Allocated Loss Adjustment Expenses" up to the Retained Limit. However, the most you are responsible for with respect to damages and "Allocated Loss Adjustment Expenses" combined shall not exceed the Retained Limit.

☐  ii.  All "Allocated Loss Adjustment Expenses".

☒  iii.  A part of "Allocated Loss Adjustment Expenses". That part will be calculated by dividing the smaller of the Retained Limit or the damages you pay by the damages we pay. If we pay no damages, you are responsible for all "Allocated Loss Adjustment Expenses" up to the applicable Retained Limit and 100 % of all remaining "Allocated Loss Adjustment Expenses".

☐  iv.  No "Allocated Loss Adjustment Expenses".

b.  If a Deductible Amount is shown in Item 3. of the Additional Declarations above, **you must reimburse us** for all "Allocated Loss Adjustment Expense" we pay as Supplementary Payments, according to the election indicated in the Deductible Endorsement that is referred to in Item 3 of the Additional Declarations.

c.  With regard to either a Retained Limit or a Deductible:

(1)  your duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured; and

(2)  All payments made by us for "Allocated Loss Adjustment Expenses" will be within the Limits of Insurance as provided under Section D. 1. of this endorsement headed Limits of Insurance.

D.  For the purposes of the coverage provided by this endorsement, **Section III - Limits Of Insurance** is revised as follows:

1.  Limits Of Insurance

a.  The Limits of Insurance shown in the Additional Declarations and the rules below fix the most we will pay regardless of the number of:

    1)  Insureds;

    2)  "Claims" made or "suits" brought;

    3)  Persons or organizations making "claims" or bringing "suits";

    4)  "Wrongful act" or series of related "Wrongful acts"; or

    5)  Benefits included in your "employee benefit program".

b.  The General Aggregate Limit as described in **Section III - Limits Of Insurance, 2.** is amended to include the following paragraph:

    d.  All damages and all associated "allocated loss adjustment expenses" that we pay because of a "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured.

c.  Subject to the General Aggregate Limit, the Each Wrongful Act or Series Of Related Wrongful Acts Limit as stated in Item 1. of the Additional Declarations is the most we will pay for all damages and all associated "allocated loss adjustment expenses" due to any one "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured.

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2.  Retention Amount

If a Retention Amount is shown in Item 2. of the Additional Declarations above, the Limits of Insurance for the Coverage provided by this endorsement will apply in excess of the Retained Limit as stated in Item 2. of the Additional Declarations.

Subject to additional "Allocated Loss Adjustment Expenses", the Retained Limit is the most an insured will pay for all damages due to any one "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured.

3.  Deductible

If a Deductible Amount is shown in Item 3. of the Additional Declarations above, **you must reimburse us** for all damages due to any one "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured and any "Allocated Loss Adjustment Expense" we pay as Supplementary Payments, according to the terms and conditions as provided for in the Deductible Endorsement that is referred to in Item 3 of the Additional Declarations.

E.  For the purpose of coverage provided by this endorsement only, **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** is amended with the addition of the following conditions:

1.   PREMIUM

The premium stated in the ADDITIONAL DECLARATIONS is an estimated premium only. Upon termination of each annual period of this endorsement the Insured, on request, will furnish us a statement of the total number of employees at the end of the period. The earned premium shall be computed on the average of the number of employees at the end of the coverage period and that stated in the ADDITIONAL DECLARATIONS. If the earned premium thus computed exceeds the estimated premium paid, the Insured shall pay the excess to us; if less, we shall return to the Insured the unearned portion paid by such Insured.

2.   OPTIONAL EXTENDED REPORTING ENDORSEMENT

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium, then you have the right to purchase an Extended Reporting Period Endorsement. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It only extends the time to report covered claims that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. The "claim" must first be made against an Insured and reported to us within 3 years after the Employee Benefits Liability Endorsement ends and while the reporting endorsement is in effect.

To obtain this reporting endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends. If we don't receive written notice and payment within this period, the Extended Reporting Period will not go into effect. Additionally, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium. This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Endorsement. Once you pay the premium we can't cancel the endorsement. We will determine the additional premium taking into account the following:

a.   The exposures insured;
b.   Previous types and amounts of insurance;
c.   Limits of Liability available under the Employee Benefit Liability Insurance for future payment of damages; and
d.   Other related factors.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any "claim" to which The Employee Benefits Liability Endorsement applies.

3.   CONFORMITY WITH STATUTE

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is issued are hereby amended to conform to such statutes.

F.   Special Conditions relating to the Retained Limit (if applicable)

1.   With respect to the coverage provided by this endorsement only, Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, "claim" or Suit, a. is amended to read:

    A.    Periodic Notices: on a **ANNUAL**    basis, you must provide us with a written summary (loss run) of all "wrongful acts", "claims", or "suits" which have or may result in payments within the Retained Limit.

        This written summary must show:

        1.    The date of the "wrongful act"; and
        2.    A description of the damage, and
        3.    The amount paid or reserved, including "allocated loss adjustment expense", resulting from the "wrongful act", "claim" or "suit".

    B.    Individual Notices of a "wrongful act": in addition to the Periodic Notices provided for in A. above, you must see to it that we are notified as soon as practicable of any "wrongful act" which may result in a "claim". Knowledge of a "wrongful act" by your agent, your servant, or your employee will not in itself constitute knowledge to you unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have received such notice. To the extent possible notice should include how, when and where the "wrongful act" took place and the nature of any damage arising out of the "wrongful act". You must provide us with any and all additional information, material and/or data, subsequent to the original notice, as it becomes available.

2.    Claims Administration

    A.    You will employ and pay, without any reimbursement from us, a firm acceptable to us for the purpose of providing claim services (Claims Administrator). In the event of cancellation, expiration or revision of the contract between you and the self-insurance service company, you will notify us within ten (10) days of the cancellation, expiration or revision.

    B.    Loss settlements made by you or the Claims Administrator will be within the terms, conditions and limits of the policy.

    C.    There will be no reduction of the Retained Limit because of payment of "claims" or "suits" arising from "claims" or "suits" for which coverage is not afforded to by the policy.

3.    Bankruptcy

    Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy. In the event there is insurance, whether or not applicable to an "wrongful act", "claim" or "suit" within the Retained Limit, you will continue to be responsible for the full amount of the Retained Limit before the limits of insurance under this policy apply. In no case will we be required to pay the Retained Limit or any portion thereof. Our obligations will attach only when the entire amount of the Retained Limit has been paid and then only in excess of the Retained Limit and not in excess of the total limit of insurance adjusted for any reduction in the aggregate limit of our liability.

G.    For the purpose of coverage provided by this endorsement only, **SECTION V - DEFINITIONS**, is amended with the addition of the following definitions:

1.    "Administration": shall mean:
    A.    Giving counsel to employees with respect to the Employee benefit program;
    B.    Interpreting the Employee benefit program;
    C.    Handling of records in connection with the Employee benefit program;
    D.    Effective enrollment, termination or cancellation of employees under the "Employee benefit program", provided all are acts which are authorized by the Named Insured.

2.   "Allocated Loss Adjustment Expenses" means all fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a "claim" or "suit" against you, or to the protection and perfection of your or our subrogation rights.

"Allocated Loss Adjustment Expenses" shall not include our general overhead, the salary and employee benefits of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated company(ies), with respect to a "claim" or "suit" against you.

3.   "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

4.   "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

5.   "Employee benefit program": means a program providing some or all of the following benefits to "employees" of the Insured, whether provided through a cafeteria plan or otherwise:

(a)   group life insurance; group accident or health insurance; dental, vision and hearing plans; provided that no one other than an "employee" of the Insured may subscribe to such benefits and such benefits are made generally available to those "employees" of the Insured who satisfy the plan's eligibility requirements;

(b)   profit sharing plans, employee savings plans, pension plans, employee stock subscription plans, provided that no one other than an "employee" of the Insured may subscribe to such benefits and such benefits are made generally available to all "employees" of the Insured who are eligible under the plan for such benefits;

(c)   workmen's compensation, unemployment insurance, social security benefits, disability benefits;

(d)   Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

(e)   Any other similar benefits designated in the Schedule or added thereto by endorsement.

6.   "Wrongful act": means any actual or alleged negligent act, error or omission in the "administration" of the Employee Benefits Plan.

H.   For the purpose of coverage provided by this endorsement only, Definitions 5. and 18. in **SECTION V - DEFINITIONS** are replaced by the following:

5.   "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18.   "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

     b.     Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms, exclusions, and conditions of this policy remain unchanged.

_Lawrence J. Sweeney_
**Authorized Representative or
Countersignature (in States Where
Applicable)**

## ENDORSEMENT

This endorsement, effective 12:01 A.M.     05/31/2008          forms a part of

Policy No. GL     721-90-84       issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, a.** is hereby deleted and replaced with the following:

a.     You must see to it that we are notified as soon as practicable on any "occurrence" or an offense which may result in a claim. Knowledge of an "occurrence" or an offense by your agent, your servant, or your employee will not in itself constitute knowledge to you unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have receive such notice. To the extent possible notice should include:

    (1)     How, when and where the "occurrence" or offense took place;

    (2)     The names and addresses of any injured persons and witnesses; and

    (3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

*Lawrence J. Sweeney*
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT**

This endorsement, effective 12:01 A.M. 05/31/2008       forms a part of

policy No. GL     721-90-84     issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - WHERE REQUIRED UNDER CONTRACT OR AGREEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION II - WHO IS AN INSURED,** is amended to include as an additional insured:

Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you.

However, the insurance provided will not exceed the lesser of:

- The coverage and/or limits of this policy, or

- The coverage and/or limits required by said contract or agreement.

Lawrence J. Sweeney

**Authorized Representative or
Countersignature (In States Where
Applicable)**

61712 (12/06)

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  05/31/2008                forms a part of

policy No. GL      721-90-84        issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXTENDED FIRE DAMAGE LIABILITY**
**(WATER DAMAGE)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section III - Limits of Insurance, 6. is amended to read:

6.      Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay
        under Coverage A for damages because of "property damage" to premises, while rented to
        you or temporarily occupied by you with permission of the owner, arising out of any one fire
        or out of water damage associated with attempts to extinguish any one fire.

_Lawrence J. Sweeney_

**Authorized Representative or**
**Countersignature (in States Where**
**Applicable)**

61945 (9/01)

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.   05/31/2008        forms a part of

policy No. GL      721-90-84        issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT ENDORSEMENT - WHEN WE DO NOT RENEW**

*This endorsement modifies insurance provided under the following:*

   COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section IV - Commercial General Liability Conditions, 9. - When We Do Not Renew is amended to read:**

9.    If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than NINETY                    (090) days before the expiration date.

      If notice is mailed, proof of mailing will be sufficient proof of notice.

*Lawrence J. Sweeney*
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT

This endorsement, effective 12:01 A.M.  05/31/2008          forms a part of

policy No. GL      721-90-84      issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RADIOACTIVE MATTER EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions,** is amended to add:

Any liability for "bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions,** is amended to add:

Arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

Lawrence J. Sweeney

**Authorized Representative or
Countersignature (in States Where
Applicable)**

62898 (9/01)

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

policy No. GL     721-90-84        issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### FELLOW EMPLOYEE EXCLUSION DELETED

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section II - Who is an Insured, 2. a. (1) (a)** is amended to read:

(a)    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to your other "volunteer workers" while performing duties related to the conduct of your business.

Authorized Representative or
Countersignature (in States Where
Applicable)

64007 (04/05)                                                          EXHIBIT A - PAGE 75

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  05/31/2008          forms a part of

Policy No. GL     721-90-84      issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE**

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Form

Section V - DEFINITIONS  is amended to add:

"Incidental Medical Malpractice Injury" means "Bodily Injury" arising out of the rendering of or failure to render the following services:

a.    medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.    the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

Section II - WHO IS AN INSURED, 2. a. (1) (d) is deleted in its entirety and replaced with the following:

(d)    Arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any physician, dentist, nurse or other medical practitioner employed or retained by you. However, the insurance provided hereunder to such persons will not apply to liability arising out of services performed outside of the scope of their duties as your "employees." Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The Coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

*Lawrence J. Sweeney*

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008 forms a part of

Policy No. GL 721-90-84 issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### BODILY INJURY DEFINITION EXTENSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section V - Definitions, 3. - "Bodily injury"** is amended to read:

3. "Bodily injury" means physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress.

AUTHORIZED REPRESENTATIVE

67260 (3/97)

EXHIBIT A - PAGE 77

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008    forms a part of

Policy No. GL    721-90-84    issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDMENT OF OTHER INSURANCE

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section IV - Commercial General Liability Conditions, 4. - Other Insurance, b. - Excess Insurance,** is amended to read:

b.    **Excess Insurance**

This insurance is excess over any of the other insurance whether primary, excess, contingent or on any other basis:

(1)    Unless such insurance is specifically purchased to apply as excess of this policy, or

(2)    you are obligated by contract to provide primary insurance.

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

*Lawrence J. Sweeney*
AUTHORIZED REPRESENTATIVE

67265 (3/97)

EXHIBIT A - PAGE 78

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008        forms a part of

Policy No. GL     721-90-84     issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NEWLY ACQUIRED ENTITY COVERAGE EXTENDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section II - Who is an Insured, 4. a. is amended to read:

4.     Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

     a.     Coverage under this provision is afforded only until the 90TH day after you acquire or form the organization or the end of the policy period, whichever is earlier;

_Lawrence J. Sweeney_

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

Policy No. GL     721-90-84       issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### LIMITED JOINT VENTURE COVERAGE

*This endorsement modifies insurance provided under the following:*

   COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section II - Who is an Insured,** Last unmarked paragraph is amended to read:

No person or organization, other than you, is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Lawrence J. Sweeney
AUTHORIZED REPRESENTATIVE

EXHIBIT A - PAGE 80

## ENDORSEMENT

This endorsement, effective 12:01 A.M.  05/31/2008          forms a part of

Policy No. GL      721-90-84      issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### LIBERALIZATION CLAUSE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

If we revise or replace our standard policy form to provide more coverage without an additional premium charge, your policy will automatically provide the additional coverage as of the day revision is effective in your state.

AUTHORIZED REPRESENTATIVE

71705 (9/98)

EXHIBIT A - PAGE 81

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  05/31/2008          forms a part of

policy No. GL     721-90-84       issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## COMPOSITE RATING PLAN PREMIUM ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CGL)
LIQUOR LIABILITY COVERAGE FORM (LL)
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM (PCO)
BUSINESS AUTO COVERAGE FORM (BA)
GARAGE COVERAGE FORM (G)
TRUCKERS COVERAGE FORM (T)

**The Class Code, Premium Basis, and Rate section of the Policy Declarations is changed to apply as follows:**

The premium for this policy will be computed upon a composite basis as shown below in accordance with our rules, rates, rating plans, premiums and minimum premiums and the other policy terms.

SCHEDULE

| Coverage (CGL, LL PCO, BA G or T) | Premium Type (S or NS) | Estimated Basis of Premium | Composite Rate(s) | Estimated Premium | Minimum Premium | Deposit Premium |
|---|---|---|---|---|---|---|
| CGL | NS | 3,666,562 | 72.0000 | $263,994 | | $263,994 |
| CGL | NS | 112.5 ACRES | 2.2860 | $257 | | $257 |
| TRIA | | 3,666,562 | .0072 | $26,399 | | $26,399 |
| | | | Totals: | $290,650 | | $290,650 |

The Composite Rate(s) shown above apply per 1,000      (a number such as 1, 10, 100, etc)
of SQUARE FOOT      (a basis of premium type defined on page 2 of this endorsement).

## COMPOSITE RATING PLAN PREMIUM ENDORSEMENT

### DEFINITIONS OF "BASIS OF PREMIUM TYPE"

(Subject to "Exceptions", if any, described below)

**Admissions** means the total number of persons, other than you, your partners and your employees, admitted during the policy period, to events conducted on premises you own, rent, lease, or other-wise control, whether on paid admission tickets, complimentary tickets or passes.

**Cost** means the total cost to you for all work performed for you during the policy period by inde-pendent contractors and their subcontractors at all levels, including the cost of all labor, materials, equipment and supplies furnished, used or delivered for use in the execution of such work, whether furnished by the owner, by contractors or subcontractors at any level, including, but not limited to, all fees, allowances, bonuses, and commissions either made, paid or due, as well as taxes other than taxes which you collect as a separate item and remit directly to a governmental division.

**Gallons** means the total number of gallons of liquid petroleum gases invoiced on any basis to any customer, whether or not the insured actually takes possession of such gasses.

**Licensed Auto** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.

**Miles** means the total mileage driven during the policy period by all licensed "autos" owned by you.

**Receipts** means the gross amount of money you have charged others for work that you, your partners, your employees, your contractors and subcontractors at all levels have performed during the policy period, including taxes other than taxes which you collect as a separate item and remit directly to a governmental division.

**Remuneration** or **Payroll** means all of the money or the substitute for money earned during the policy period by you if you are the proprietor of the insured business, by all partners if you are a partnership or by all members if you are a Limited Liability Company, and by all your employees for their services to you during the policy period, subject to the following:

☐ Total Gross Remuneration or Payroll, without limitation; or

☐ Determined and limited in accordance with our Workers' Compensation Insurance Manual's rules respectively for the states in which you have employment; or

☐ Determined and limited in accordance with our General Liability Insurance Manual's rules respectively for the states in which you have employment.

**Sales** means the gross amount of money you or others trading in your name have charged for all goods and services you or they have sold or distributed during the policy period, including charges for delivery, installation, service and repair, and including taxes other than taxes which you or such others collect as a separate item and remit directly to a governmental division. Sales will include both foreign and domestic sales and sales by one named insured to another unless otherwise indicated by "x" below:

☐ Sales do NOT include foreign sales.

☐ Sales do NOT include sales by one named insured to another.

**Units** means the number of items of the types specified in this endorsement.

a. **Units that you hold for use in your business** shall mean half the sum of their number at the policy's inception and their number at its expiration or termination, (if terminated then pro-rated by the fraction of an annual period that the policy remained in effect).

b. **Units that you sell to others** whether for your own account or the account of another, shall mean the total number of such units that you sell during the policy term.

If Units is selected as the basis of premium, a Unit is a(n)

EXHIBIT A - PAGE 83

<u>**Other Basis of Premium Type (define here):**</u>

## Other Definitions

<u>Subject</u> is a Premium Type which means that such premium is subject to adjustment under a retro-spective rating plan described in an endorsement attached to the policy. "Subject" is signified on Page 1 by a Premium Type "S".

<u>Non-Subject</u> is a Premium Type which means that such is NOT subject to adjustment under a retro-spective rating plan described in an endorsement attached to the policy. "Non-Subject" is signified on Page 1 by a Premium Type "NS".

*Lawrence J. Sweeney*

**Authorized Representative or Countersignature (in States Where Applicable)**

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

policy No. GL     721-90-84     issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### BLENDED POLLUTION EXCLUSION

*This endorsement modifies Insurance provided under the following:*

Commercial General Liability Coverage Form

**SECTION 1 - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2., Exclusions, f., Pollution** is deleted in its entirety and replaced by the following:

f.  **Pollution**

(1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i)  "Bodily Injury" if sustained within a building and caused by smoke, fumes, vapor, or soot from equipment used to heat that building;

(ii)  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii)  "Bodily injury" or "property damage" arising out of heat, smoke, or fumes from a "hostile fire"; or

(iv)  "Bodily injury" or "property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" caused by fire, explosion, lightening, windstorm, vandalism or malicious mischief, collapse, riot and civil commotion, flood, automatic sprinkler leakage, earthquake, or collision or upset of "mobile equipment" or aircraft, which is sudden and accidental, provided that;

1.  Such pollution commences during the term of this policy;

2.  An insured discovers the commencement of such pollution no later than fourteen (14) calendar days after it commences; and

3.  The insured reports the commencement of such pollution to us in writing no later than twenty (20) days following its discovery by any insured.

(v)  "Bodily injury" or "property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" that results directly from the violent breaking open or explosion of any plant, building, equipment other than underground tanks, underground piping, or underground equipment, for which the named insured has legal responsibility, either as owner or operator caused by perils other than those listed in (iv) above, provided that:

74437 (3/04)

1. Such pollution commences during the term of this policy;

2. An insured discovers the commencement of such pollution no later than fourteen (14) calendar days after it commences; and

3. The insured reports the commencement of such pollution to us in writing no later than twenty (20) days following its discovery by any insured.

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal, electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor;

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

*Lawrence J. Sweeney*

**Authorized Representative or Countersignature (in States Where Applicable)**

EXHIBIT A - PAGE 86

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008          forms a part of

policy No. GL     721-90-84        issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PERSONAL INJURY DEFINITION EXTENSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section V - Definitions, 14. - "Personal injury and Advertising injury"** is amended to read:

14.   "Personal injury and advertising injury" means injury, including consequential "bodily injury", humiliation, mental anguish or shock, arising out of one or more of the following offenses:

   a.   False arrest, detention or imprisonment;

   b.   Malicious prosecution;

   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d.   Oral or written publication of material, in any manner, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e.   Oral or written publication, in any manner, of material that violates a person's right of privacy.

   f.   The use of another's advertising idea in your "advertisement"; or

   g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*Lawrence J. Sweeney*

**Authorized Representative or
Countersignature (in States Where
Applicable)**

EXHIBIT A - PAGE 87

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008        forms a part of

policy No. GL        721-90-84        issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### FUNGUS EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any "fungus(i)", "mold(s)", mildew or yeast, or

    b.  Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew or yeast, or

    c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

    "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including "mold(s)", rusts, mildews, smuts, and mushrooms.

    "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and "fungi" that produce molds.

    "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its other endorsements, the provisions of this exclusion will supercede.

**ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.**

*Laurence J. Sweeney*

**Authorized Representative or
Countersignature (in States Where
Applicable)**

78689 (7/03)

EXHIBIT A - PAGE 88

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 05/31/2008      forms a part of

policy No. GL    721-90-84    issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION - VIOLATION OF STATUTES IN CONNECTION WITH SENDING, TRANSMITTING OR COMMUNICATING ANY MATERIAL OR INFORMATION

This insurance does not apply to any loss, injury, damage, claim, suit, cost or expense arising out of or resulting from, caused directly or indirectly, in whole or in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

To the extent any coverage may otherwise be available under this Policy, the provisions of this Exclusion shall supercede the same and exclude such coverage.

All other terms and conditions of the policy are the same.

*Lawrence J. Sweeney*

**Authorized Representative or Countersignature (in States Where Applicable)**

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  05/31/2008             forms a part of

policy No. GL       721-90-84         issued to YAHOO, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT - COVERAGE TERRITORY

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_Lawrence J. Sweeney_
**Authorized Representative or
Countersignature (in States Where
Applicable)**

EXHIBIT A - PAGE 90

## ENDORSEMENT NO. 1

This endorsement, effective 12:01 A.M.      05/31/2008            forms a part of

policy No. GL   721-90-84        issued to   YAHOO, INC.

by   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### COVERAGE B – PERSONAL INJURY

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE PART

I.   The **"Personal And Advertising Injury"** exclusion contained in **"2. Exclusions"** of Section I, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is hereby deleted and replaced with the following:

**Personal Injury; Advertising Injury**      "Bodily injury" arising out of "personal injury" or "advertising injury".

II.  In Section I, **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** is  hereby deleted in its entirety and replaced with the following:

**COVERAGE B PERSONAL INJURY LIABILITY**

**1.  Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

        (1)  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

        (3)  Our duty to defend applies only in those countries in the coverage territory where legal circumstances permit us to defend.   In those countries in the coverage territory where legal circumstances do not permit us to defend, we will reimburse you for your defense costs, subject to our prior authorization.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

    b.  This insurance applies to "personal injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.  Any claim or "suit" must be made or brought in the coverage territory or the United States of America, its territories and possessions, Puerto Rico or Canada.

**2.  Exclusions**

EXHIBIT A - PAGE 91

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

   "Personal injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury".

b. **Material Published With Knowledge Of Falsity**

   "Personal injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

   "Personal injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

   "Personal injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

   "Personal injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

   "Personal injury" arising out of a breach of contract.

g. **Infringement Of Copyright, Patent, Trademark or Trade Secret**  "Personal injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

h. **Electronic Chatrooms Or Bulletin Boards**

   "Personal injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

i. **Unauthorized Use Of Another's Name Or Product**

   "Personal injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

j. **Pollution**

   "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

k. **Pollution-Related**

   Any loss, cost or expense arising out of any:

   (1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

l. **Asbestos**

   Arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of the

manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

n. **War**

**Personal injury** arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

o. **Employment-Related Practices**

**Personal injury** to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of **personal injury** to that person at whom any of the employment related practices describe in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

p. **Terrorism**

**Personal injury** arising directly or indirectly as a result of or in connection with **terrorism** including, but not limited to, any contemporaneous or ensuing **personal injury** caused by fire, looting or theft.,

q. **Advertising Injury**

Damages arising out of "advertising injury".

III.    For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended as follows:

a. The definition of "personal and advertising injury" is deleted in its entirety and replaced by the following:

"Personal injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

     e.  Oral or written publication, in any manner, of material that violates a person's right of privacy.

  b.  The following definition is added:

"Advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     a.  Oral or written publication, in any manner, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

     b.  Oral or written publication, in any manner, of material in your "advertisement" that violates a person's right of privacy;

     c.  The use of another's advertising idea in your "advertisement"; or

     d.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

IV.    Furthermore and not withstanding the foregoing, all other references to "personal and advertising injury" in the Coverage Part shall be deleted and replaced with "personal injury".

All other terms, conditions and exclusions of this policy remain unchanged.

*Lawrence J. Sweeney*

**AUTHORIZED REPRESENTATIVE**

EXHIBIT A - PAGE 94