MATTHEW C. LOVELL (SBN: 189728)
mlovell@nicolaidesllp.com
LAURA H. SMITH (SBN: 136117)
lsmith@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 745-3770
Facsimile: (415) 745-3771

DANIEL I. GRAHAM, JR. (Appearance *Pro Hac Vice*)
dgraham@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker, 21st Floor
Chicago, IL 60606
Telephone: (312) 585-1400
Facsimile: (312) 585-1401

Attorneys for Defendant
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
a Pennsylvania Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| YAHOO! INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,<br><br>Defendant. | Case No. 5:17-CV-00489-EJD<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**<u>Accompanying Documents</u>**:<br>Separate Statement; Request for Judicial Notice; Declaration of Matthew C. Lovell<br><br>Date: Thursday, March 15, 2018<br>Time: 9:00 a.m.<br>Dept.: 4<br>Judge: Hon. Edward J. Davila |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES ........ 3

III. UNDISPUTED MATERIAL FACTS ........ 3

A. The National Union Fronting Policies ........ 3

B. The Email Scanning Cases ........ 5

1. The *Sutton* and *Penkava* Lawsuits ........ 5

2. *The Holland* Lawsuit and *In re Yahoo Mail Litigation* ........ 6

IV. SUMMARY JUDGMENT STANDARD ........ 8

V. ARGUMENT ........ 9

A. National Union Did Not Breach any Duty to Defend Yahoo in the Email Scanning Cases. ........ 9

1. National Union Did Not Have a Duty to Defend the *Sutton* or *Penkava* Lawsuits. . 9

2. At Yahoo's Request, National Union Reconsidered Its Coverage Position in Connection with the *Holland* Lawsuit and Accepted Yahoo's Tender of *In Re Yahoo Mail Litigation* under a Reservation of Rights. ........ 11

B. A Breach of the Duty to Defend Does Not Allow Yahoo to Repudiate Its Reimbursement Obligations Under the 2011 Policy. ........ 11

C. National Union Does Not Owe a Duty to Indemnify Yahoo for the Email Scanning Cases. ........ 14

1. National Union Did Not Breach a Duty to Indemnify Yahoo in the *Sutton* or *Penkava* Lawsuits. ........ 14

2. Yahoo's Settlement of *In Re Yahoo Mail Litigation* Did Not Resolve any Liability of Yahoo Because of "Personal Injury." ........ 14

3. Yahoo's Settlement of *In Re Yahoo Mail Litigation* Does Not Obligate National Union to Pay Damages, as Required by the 2011 Policy. ........ 15

a. Injunctive Relief Requiring Yahoo to Change Its Email Scanning Architecture Is Not "Damages." ........ 16

b. The Underlying Plaintiffs' Attorneys' Fees Are Not Damages or Supplementary Payments. .......... 17

c. The Underlying Plaintiffs' Incentive Awards Are Not Damages. .......... 18

D. National Union Did Not Commit Bad Faith. .......... 18

VI. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Cases**

*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137 (2007) .......... 9

*AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807 (1990) .......... 16

*Alea London Ltd. v. Am. Home Services, Inc.*, 638 F.3d 768 (11th Cir. 2011) .......... 18

*Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135 (1983) .......... 11

*Blue Ridge Ins. Co. v. Jacobsen,* 25 Cal. 4th 489 (2001) .......... 14

*Bullock v. Maryland Cas. Co.*, 85 Cal. App. 4th 1435 (2001) .......... 16

*Buss v. Superior Court,* 16 Cal. 4th 35 (1997) .......... 9

*CalFarm Ins. Co. v. Krusiewicz,* 131 Cal. App. 4th 273 (2005) .......... 19

*California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1 (1985) .......... 19, 20

*Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945 (2001) .......... 14

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335 (2001) .......... 19, 20

*Cutler-Orosi Unified Sch. Dist. v. Tulare County Sch. etc. Auth.*, 31 Cal. App. 4th 617 (1994) .......... 16, 17

*Dobson v. Twin City Fire Ins. Co.*, 2015 WL 12698443 (C.D. Cal. Aug. 5, 2015) .......... 12

*Flintkote v. Gen. Acc. Assur*. Co., 410 F. Supp. 2d 875 (N.D. Cal. 2006) .......... 8, 9

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2011 WL 13134897 (C.D. Cal. 2011) .......... 11, 12

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .......... 18

*Ins. Co. of North Am. v. National Am. Ins. Co. of Calif.*, 37 Cal. App. 4th 195 (1995) .......... 17

*Integral Res., Inc. v. Hartford Fire Ins. Co.*, 2014 WL 2761170 (C.D. Cal. 2014) .......... 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc*., 210 F. 3d 1099 (9th Cir. 2000) .......... 8

*Palmer v. Truck Ins. Exch*., 21 Cal. 4th 1109 (1999) .......... 14

*Powerine Oil Co., Inc. v. Superior Ct*., 37 Cal. 4th 377 (2005) .......... 9

*R & B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327 (2006) .......... 19

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......... 18

*SCI CA. Funeral Servs., Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450 (C.D. Cal. 2013) .......... 13

*State Farm General Ins. Co. v. JT's Frames, Inc*., 181 Cal. App. 4th 429 (2010) .......... 9, 10

*State of Cal. v. Pac. Indem. Co.*, 63 Cal. App. 4th 1535 (1998) .......... 12

*Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1 (1995) .......... 8, 9, 19

*Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 255 F. Supp. 3d 970 (N.D. Cal. 2017) .......... 10

**Statutes**

Cal. Civ. Code. § 3358 .......... 2, 12, 13

California Penal Code § 630 .......... 5, 10

California Penal Code Section 631 .......... 5, 7

**Rules**

Fed. R. Civ. P. 23(b)(2) .......... 8

Fed. R. Civ. P. 56(a) .......... 1, 8

**Other Authorities**

William T. Um & Erica J. Dominitz, *Top 10 Things Litigators Should Know about Insurance*, LAW 360 (August 2, 2016 5:29 PM EDT) .......... 20

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Thursday, March 15, 2018, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4 of the United States District Court, Northern District of California – San Jose Division located at 280 South 1st Street, San Jose, California, 95113, defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") will and hereby does move this Court for summary judgment against Plaintiff Yahoo!, Inc. ("Yahoo") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

As more fully detailed in the following Memorandum of Points and Authorities, no triable issue of fact exists and National Union is entitled to judgment as a matter of law on all three counts of Yahoo's complaint.

This Motion is based on this Notice of Motion and Motion and accompanying Memorandum of Points and Authorities; the Separate Statement, Request for Judicial Notice, and Declaration of Matthew C. Lovell filed concurrently in support of this Motion; the files and records in this lawsuit, and upon such other matters as may be presented to the Court prior to and at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

As a core component of its insurance program, Yahoo purchased insurance policies that contain a "Deductible Coverage Endorsement," which obligates Yahoo to reimburse National Union all "Allocated Loss Adjustment Expense'" defined to include attorney fees or expenses reasonably chargeable to the defense of a suit brought against Yahoo) and "any amounts we [National Union] have paid as damages…." Yahoo now seeks to escape its reimbursement obligations under the Deductible Coverage Endorsement and to manufacture insurance coverage broader than the coverage its policies provide, by alleging that National Union breached the duty to defend, the duty to indemnify, and the implied covenant of good faith and fair dealing in connection with three underlying lawsuits (collectively, the "Email Scanning Cases"):

- ***Sutton, et al. v. Yahoo! Inc.***, No. CIV 1202973 (Marin Cty. Super. Ct.) ("*Sutton*");
- ***Penkava v. Yahoo! Inc***., No. 12-cv-03414 (U.S.D.C., N.D. Cal.) ("*Penkava*"); and
- ***Holland v. Yahoo! Inc***., No. 13-cv-4980 (U.S.D.C., N.D. Cal.) ("*Holland*"), consolidated into ***In re Yahoo Mail Litigation***.

Yahoo is incorrect, factually and legally.

**First,** Yahoo's duty to defend claims are meritless. National Union had no duty to defend the *Sutton* and *Penkava* lawsuits in the first instance, because their allegations did not potentially implicate National Union's "personal injury"/"personal and advertising injury" coverage, or were otherwise excluded from coverage. Moreover, at Yahoo's request, National Union reconsidered coverage and agreed to defend Yahoo in connection with *Holland* (later consolidated into *In re Yahoo Mail Litigation*) after Yahoo provided additional information.

**Second**, Yahoo's claim for indemnity in connection with *In re Yahoo Mail Litigation* (the only one of the three Email Scanning Cases that presents a question of indemnification) fails, because the settlement consisted of only injunctive relief and Yahoo's payment of plaintiffs' attorneys' fees and other expenses. No portion of the settlement was covered because it did not involve an award of damages against Yahoo, a necessity for coverage.

**Last**, because National Union did not breach a duty to defend or indemnify, Yahoo's claim for breach of the duty of good faith and fair dealing ("bad faith") fails as a matter of law.

As this motion will demonstrate, the *Sutton* and *Penkava* lawsuits and Yahoo's bad faith claim are all ancillary to a game Yahoo is playing. Yahoo believes that, in breaching a duty to defend under a fronting policy, an insurer necessarily repudiates its contract, thus making the insured's reimbursement obligations under the policy unenforceable. To be clear, National Union denies that it breached any duty to defend owed to Yahoo. However, even if there were a breach, the California Civil Code dictates that "no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."[1] Allowing Yahoo to escape the reimbursement obligations it contracted for under the Policies would give Yahoo a windfall recovery. California law does not permit this outcome. National Union is therefore entitled to summary judgment as a matter of law on all claims.

[1] Cal. Civ. Code. § 3358.

## II. STATEMENT OF ISSUES

Per Local Rule 7-4(a)(3), this motion raises the following issues:

1. Whether National Union properly declined to defend the *Sutton* and *Penkava* lawsuits under the "personal injury"/"personal and advertising injury" coverage, where the plaintiffs did not allege damages because of an "oral or written publication, in any manner, of material that violates a person's right of privacy" by Yahoo, or were otherwise excluded from coverage;
2. Whether National Union is entitled to enforce its right to reimbursement of defense costs pursuant to the Deductible Coverage Endorsement, where National Union reconsidered its coverage position in connection with the *Holland* lawsuit and agreed to defend that lawsuit (subsequently consolidated with other actions as *In re Yahoo Mail Litigation*);
3. Whether Yahoo is entitled to indemnification from National Union for amounts Yahoo paid to settle *In re Yahoo Mail Litigation* where the settlement consisted only of injunctive relief and entailed the payment of attorneys' fees and other litigation costs, none of which constitutes damages covered under National Union's insurance contract; and
4. Whether National Union satisfied its duty of good faith and fair dealing to Yahoo in connection with the Email Scanning Cases, where National Union did not breach any duties that it owed to Yahoo, and National Union acted reasonably in evaluating Yahoo's claim for coverage.

## III. UNDISPUTED MATERIAL FACTS

### A. The National Union Fronting Policies

Yahoo negotiated and obtained from National Union four consecutive commercial general liability ("CGL") insurance policies in effect from May 31, 2008 to May 31, 2012: the "2008 Policy"; the "2009 Policy"; the "2010 Policy"; and the "2011 Policy." (collectively, the "Policies"). *See* National Union's Sep. Stmt. of Facts ("SSF") 1. Each of the Policies has limits of liability of $1 million per occurrence and contains standard language obligating National

Union to provide Yahoo a defense against potentially covered lawsuits. SSF 2. However, all Policies after the 2008 Policy are modified by a Deductible Coverage Endorsement (the "Deductible Endorsement"), pursuant to which Yahoo agreed to reimburse National Union "for any amounts we [National Union] have paid as damages…." SSF 5. In addition, Yahoo contracted to reimburse to National Union "All 'Allocated Loss Adjustment Expense'" ("ALAE"), which is defined to mean "all fees for service of process, court costs and expenses; … interest; attorneys' fees; … costs of employing experts;" costs for transcripts, depositions and court reporters, "*and any similar fee, cost or expense reasonably chargeable to the* investigation, negotiation, settlement or *defense of a* loss or a claim or *suit against you* …" SSF 6 (emphasis added).

The Policies were issued in conjunction with a separate "Payment Agreement" setting forth Yahoo's agreement to "pay [National Union] all Your Payment Obligation and to perform all Your other obligations according to this Agreement …." SSF 3. "Payment Obligation" is defined to include amounts that Yahoo must pay under the Policies. SSF 4.

The Policies provide that National Union will pay those sums the insured becomes legally obligated to pay as damages because of "personal injury" (or "personal and advertising injury"), as defined by the Policies. SSF 2. "However, [National Union] will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' to which this insurance does not apply." *Id.* The Policies contain "Supplementary Payments" provisions, which state that where National Union is obligated to do so, and subject to the Deductible Endorsement, "[w]e will pay, with respect to … any 'suit' against an insured we defend: … All expenses we incur." SSF 7. This section also provides for payment of court costs taxed against the insured, but excludes "attorneys' fees or attorneys' expenses taxed against the insured." *Id.*

The Policies' CGL Form defines "personal and advertising injury" as injury arising out of certain offenses enumerated in the definition of that term, among them, the "[o]ral or written publication, in any manner, of material that violates a person's right of privacy" (the "Privacy Offense"). SSF 8. However, all the Policies are modified by a manuscript "Coverage B – Personal Injury" endorsement (the "PI Endorsement"), which replaces the "Personal and

Advertising Injury" coverage in the CGL Form with a modified "Personal Injury" coverage. SSF 9. The PI Endorsement's definition of "personal injury" includes the identical Privacy Offense. SSF 10. The PI Endorsement also retains the substance of Exclusion d. in the original CGL Coverage Form, providing that "[t]his insurance does not apply to: … d. Criminal Acts [¶] "Personal injury" arising out of a criminal act committed by or at the direction of the insured" (the "Criminal Acts exclusion") SSF 11. However, the endorsement deletes Exclusion j. in the CGL Form, which precludes coverage for "Personal and Advertising Injury" "committed by an insured whose business is … [a]n Internet search, access, content or service provider." *Id.* As relevant here, this is the only significant change that the PI Endorsement makes.

**B. <u>The Email Scanning Cases</u>**

**1.** <u>The *Sutton* and *Penkava* Lawsuits</u>

On August 8, 2012, Yahoo provided first notice to National Union of the *Sutton* and *Penkava* lawsuits, which were filed on June 28, 2012 and June 29, 2012, respectively. SSF 12. Both lawsuits alleged that Yahoo engaged in unlawful and wrongful wiretapping or eavesdropping in violation of the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq*. ("CIPA"), by intercepting and reviewing e-mails before delivery to Yahoo e-mail subscribers. SSF 13, 14. The *Sutton* lawsuit alleged that Yahoo's "practice of reviewing and reading people's e-mail without their consent and/or knowledge" was "unlawful" and that Yahoo engaged in "illegal" conduct in violation of California Penal Code Section 631. SSF 13. Similarly, the *Penkava* lawsuit asserted that Yahoo's practices were "illegal," "unlawful and constitute criminal activity." SSF 14.

National Union declined both tenders on September 26, 2012 on the grounds that the lawsuits did not allege Yahoo was liable for an oral or written publication of material that implicated the Privacy Offense. National Union also relied on the Criminal Acts exclusion to deny coverage. SSF 15. Yahoo successfully defended *Sutton* and *Penkava*, and the lawsuits were dismissed on January 22, 2013 and November 30, 2012, respectively. SSF 16.

\\\

\\\

**2.** *The Holland* Lawsuit and *In re Yahoo Mail Litigation*

On November 15, 2013, Yahoo tendered the *Holland* lawsuit to National Union under the 2011 Policy and the subsequent policy, which that is no longer at issue in this lawsuit.[2] SSF 17. The *Holland* plaintiffs alleged that Yahoo violated CIPA and the Electronic Communications Privacy Act by "scanning, analyzing, indexing, reading, learning, storing or otherwise using" e-mails without the consent of those communicating with Yahoo e-mail subscribers. SSF 18.

National Union declined Yahoo's tender on January 15, 2014, citing Exclusion j, and other terms and exclusions in the 2011 Policy and a later policy. SSF 19. However, National Union invited Yahoo to provide "as soon as possible" any additional information that Yahoo felt would cause National Union to review its coverage position or assist National Union in its investigation. SSF 20.

Despite National Union's invitation, Yahoo did not communicate to National Union concerning the *Holland* lawsuit for nearly two years. In the meantime, unbeknownst to National Union, the *Holland* lawsuit was consolidated with several other lawsuits in a class action entitled *In Re Yahoo Mail Litigation*. The plaintiffs in that case filed a Consolidated Class Action Complaint on February 12, 2014, which was subsequently amended on June 9, 2015. SSF 21.

On November 20, 2015, Yahoo requested that National Union reconsider its disclaimer of coverage for the *Holland* lawsuit and referenced, for the first time, the *In re Yahoo Mail Litigation*, filed 21 months earlier. SSF 22. Yahoo advised National Union that it believed National Union's January 15, 2014 coverage position was incorrect because it did not reflect the PI Endorsement, which removed Exclusion j. Yahoo did not provide copies of either the pleadings filed in the *In Re Yahoo Mail Litigation* or the PI Endorsement referenced in Yahoo's correspondence.

\\\

[2] The plaintiffs sought to certify a class of individuals who received or sent emails on or after October 2, 2011.

While National Union was investigating Yahoo's request for reconsideration, Yahoo informed National Union on January 27, 2016 that it had reached a preliminary settlement of the Consolidated Class Action. SSF 25. Yahoo had, in fact, already moved for preliminary approval of a class action settlement three weeks earlier. SSF 24.

After identifying and analyzing the Consolidated Class Action Complaint filed in the *In Re Yahoo Mail Litigation* and confirming that the 2011 Policy was modified by the PI Endorsement, National Union retracted its previous disclaimer of coverage on February 16, 2016 and agreed to defend Yahoo in the *In re Yahoo Mail Litigation* under the 2011 Policy under a reservation of rights. SSF 23. In its reservation of rights, National Union cited Yahoo's repayment obligations under the Deductible Endorsement, requested information concerning the underlying litigation, and advised that National Union's reservations created a conflict of interest that entitled Yahoo to designate independent counsel to defend itself in the *In re Yahoo Mail Litigation*. *Id.*

On March 10, 2016, National Union declined Yahoo's request that National Union indemnify Yahoo for the settlement of the *In re Yahoo Mail Litigation*. SSF 26. National Union reminded Yahoo that the 2011 Policy only provides indemnity for covered damages and, based on the motion for preliminary approval, the settlement involved injunctive relief, attorneys' fees, and service awards, which are not damages. *Id.* National Union reiterated specific requests for information that Yahoo had not provided, and reminded Yahoo that any payments National Union was required to make in connection with Yahoo's defense costs were subject to reimbursement under the Deductible Endorsement. *Id.*

On March 15, 2016, the court in the *In re Yahoo Mail Litigation* issued an Order Granting Motion for Preliminary Approval of Class Action Settlement ("Approval Order"). SSF 27. In the Approval Order, the court noted that the only claims remaining after August 12, 2014 were Plaintiffs' claims under Section 2702(a)(1) of the Stored Communications Act and under Section 631 of the CIPA, which were based on Yahoo's interception of "emails for content during transit and before placing the emails into storage." *Id.* The order detailed Yahoo's agreement to injunctive relief: that upon completion of the settlement, Yahoo would

make "technical changes to its email architecture" and "only analyze emails for content when these emails are no longer in transit and after these emails reach a Yahoo Mail user's inbox or outbox." *Id*.

The *In re Yahoo Mail Litigation* court explained that it certified the plaintiff classes under Federal Rule of Civil Procedure 23(b)(2), which provides for only injunctive or declaratory relief and does not authorize monetary damages. SSF 28. Consistent with its analysis, the court granted preliminary approval of the settlement based on its examination of the "nature of the claims, which would have only allowed the Class to obtain injunctive relief and not monetary damages." SSF 29. The court confirmed the settlement did not encompass, and did not release, plaintiffs' claims against Yahoo for monetary damages. *Id.*

The class plaintiffs thereafter filed a Motion for Attorneys' Fees and Costs and Lead Plaintiff Service Awards, seeking approval of a negotiated $4 million award for their alleged fees and costs and $5,000 "service awards" for each of the four class representatives. SSF 30. The court granted this motion, and judgment was entered in the *In re Yahoo Mail Litigation* on August 25, 2016. *Id.*

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute as to the material facts, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant meets its burden on summary judgment, the nonmovant may not resist summary judgment by "[m]ere allegations or denials." *Flintkote v. Gen. Acc. Assur*. Co., 410 F. Supp. 2d 875, 881 (N.D. Cal. 2006) (citation omitted). The nonmovant must produce admissible evidence that shows a genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc*., 210 F. 3d 1099, 1102-03 (9th Cir. 2000).

The interpretation of an insurance policy is a question of law, particularly well-suited for summary judgment. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). To prevail on summary judgment, Yahoo has the initial burden of establishing that its claims fall within the scope of the policy's coverage. *Id*. at 15.

\\\

Although insurance contracts have "special features," they are still contracts subject to the ordinary rules of contract interpretation. *Powerine Oil Co., Inc. v. Superior Ct.*, 37 Cal. 4th 377, 390 (2005). The mutual intention of the contracting parties at the time the contract was formed governs policy interpretation. *Id.* The parties' intent is gleaned from the plain meaning of the policy language taken as a whole. *Flintkote*, 410 F. Supp. 2d at 881.

## V. ARGUMENT

### A. National Union Did Not Breach any Duty to Defend Yahoo in the Email Scanning Cases.

To state a claim for breach of contract based on an insurer's breach of its duty to defend a lawsuit, the insured must demonstrate that the insurer wrongfully refused to defend a lawsuit potentially covered by the insurer's policy. *Waller*, 11 Cal. 4th at 19. Yahoo's breach of duty to defend claim fails because National Union either had no duty to defend in the first instance, or it agreed to defend.

#### 1. National Union Did Not Have a Duty to Defend the *Sutton* or *Penkava* Lawsuits.

An insurer does not have a duty to defend where the claims asserted against its insured are not potentially covered. *Buss v. Superior Court*, 16 Cal. 4th 35, 47 (1997). National Union did not owe a duty to defend the *Sutton* or *Penkava* lawsuits because they did not allege Yahoo's oral or written publication of material that implicated the Privacy Offense.

California courts have consistently held that the Privacy Offense (or analogous wording) is not implicated unless the insured is alleged to have published confidential information about the plaintiff to a third party. *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 150 (2007). For example, in *State Farm General Ins. Co. v. JT's Frames, Inc.*, 181 Cal. App. 4th 429 (2010), an insured's assignee sued an insurer that denied coverage for a lawsuit involving alleged transmission of unsolicited faxes to class members under the Telephone Consumer Protection Act ("TCPA"). *Id.* at 433. Citing *ACS*, the *JT's Frames* court held that the insurer had no duty to defend or indemnify the insured because the lawsuit did not involve

publication of information to a third party. *Id.* at 449-51; *see also Integral Resources, Inc. v. Hartford Fire Ins. Co.*, No. 14-CV-02308, 2014 WL 2761170, at *7 (C.D. Cal. June 13, 2014) (insurer had no duty to defend or indemnify its insured in underlying TCPA action alleging the insured had placed numerous calls to the complainant, because there was no third-party disclosure).

Most recently, this district held that National Union had no duty to defend or indemnify Yahoo under the same Policies at issue here in connection with lawsuits alleging that Yahoo violated the TCPA by sending unsolicited text messages to claimants. *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 255 F. Supp. 3d 970 (N.D. Cal. 2017). The court emphasized that the Privacy Offense only "plausibly covers injury caused by the disclosure of private content to third parties based on the word 'publication' in the provision." *Id.* at 975. Because the underlying claimants in that action did not allege that Yahoo disclosed content about them to third parties, but only sent them material, the Policies afforded no coverage to Yahoo for those suits. *Id.*

The *Sutton* and *Penkava* lawsuits are devoid of any allegation that Yahoo shared the underlying plaintiffs' personal information with a third party. Instead, the *Sutton* and *Penkava* plaintiffs' sole cause of action against Yahoo for violation of the CIPA claimed that Yahoo engaged in the practice of reviewing and reading people's e-mail without their consent and/or knowledge. Compl., ECF 1, ¶8 (emphasis added). Because the *Sutton* and *Penkava* lawsuits did not allege a publication of information to a third party, the lawsuits did not implicate the Privacy Offense, and National Union had no duty to defend them.

In addition, the Policies' Criminal Acts exclusion (SSF 11) bars coverage for the *Sutton* and *Penkava* lawsuits. Each of those lawsuits asserted a sole cause of action against Yahoo under CIPA (Cal. Penal Code § 630, *et seq.*). CIPA criminalizes wiretapping and eavesdropping and subjects wrongdoers to penalties, including fines and imprisonment, in addition to civil liability. Consistent with that statutory provision, the *Sutton* and *Penkava* lawsuits asserted that Yahoo's practice of reviewing and reading people's email without their

consent and/or knowledge was "unlawful" and "illegal." Indeed, the *Penkava* lawsuit expressly alleged that Yahoo's conduct constituted "criminal activity." SSF 14.

As a matter of California law, "criminal acts" exclusions are unambiguous and enforceable. *Atlas Assurance Co. v. McCombs Corp*., 146 Cal. App. 3d 135, 144 (1983) (applying exclusion in context of employer's liability for theft by employee). Thus, even if the *Sutton* or *Penkava* lawsuits involved claims for damages because of Personal Injury (they do not), the Criminal Acts exclusion bars coverage.

2. <u>At Yahoo's Request, National Union Reconsidered Its Coverage Position in Connection with the *Holland* Lawsuit and Accepted Yahoo's Tender of *In Re Yahoo Mail Litigation* under a Reservation of Rights.</u>

Yahoo is likewise incorrect as a matter of law when it contends that National Union breached its duty to defend the *Holland* lawsuit and the *In Re Yahoo Mail Litigation*. Quite the contrary, National Union agreed to defend upon Yahoo's request. National Union retracted its denial of coverage with respect to the *Holland* lawsuit and *agreed to defend Yahoo* in the newly tendered the *In Re Yahoo Mail Litigation* under a reservation of rights. Under these facts, National Union did not breach the duty to defend.

**B. <u>A Breach of the Duty to Defend Does Not Allow Yahoo to Repudiate Its Reimbursement Obligations Under the 2011 Policy.</u>**

Yahoo has endeavored to manufacture a breach, believing that a purported breach of National Union's duty to defend Yahoo under its fronting policy entitles Yahoo to escape its reimbursement obligations under the 2011 Policy. Yahoo's premise is incorrect as a matter of law.

California law recognizes that an insurer's breach of the duty to defend does not entitle an insured to transform the fundamental nature of the policy that the insured purchased. For example, in *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., No. 08-0020, 2011 WL 13134897, at *3-4 (C.D. Cal. Sept. 1, 2011) ("*Hyundai*"), National Union and its co-insurer were found to have wrongfully refused to defend a patent infringement lawsuit. The *Hyundai* court considered whether the insurers' breach of the duty to defend somehow nullified the language in the Supplementary Payments provision of their policies which stated that the

insurers did not have to provide collateral for appellate bonds. The court properly concluded that the policy language was enforceable, regardless of any breach.

The *Hyundai* court explained that the insured could not include as contract damages amounts for the loss of use of funds the insured posted to secure an appellate bond "because the insurers were never required to post collateral under the contract in the first place." *Id.* at *3. *See also State of Cal. v. Pac. Indem. Co.*, 63 Cal. App. 4th 1535, 1551 (1998) (contract damages are meant to make the nonbreaching party whole). The court emphasized that, although the insurers were found to have breached a duty to defend, the insured could recover "only those amounts that would put it back in the same position as if the contract had been performed." *Hyundai*, 2011 WL 13134897 at *3 (citing Cal. Civ. Code § 3358 and *State of Cal. v. Pac. Indem. Co*., 63 Cal. App. 4th 1535, 1551 (1998) (contract damages are meant to make the nonbreaching party whole).

The *Hyundai* court concluded the insurers were responsible for damages based on nonpayment of bond *premium*, which the policies promised to pay as part of the duty to defend, but that was all that was required to make the insured whole under the terms of the insurers' policies. *Id*. In making its determination, the *Hyundai* court held that the "refusal to defend does not estop the insurers from relying on contractual language in the Supplementary Payments provision regarding bond coverage. As discussed above, this language precludes Hyundai's theory regarding loss of use damages." *Hyundai*, 2011 WL 13134897, at *4.

More recently, in *Dobson v. Twin City Fire Ins. Co*., No. 11-0192, 2015 WL 12698443, at *8–9 (C.D. Cal. Aug. 5, 2015), the district court concluded that a breach of the insurer's duty to defend did not negate the insurer's right to enforce an allocation provision in its policy. The provision expressly required the insured to repay the insurer its defense costs and settlement, to the extent it was established that any of those amounts were not covered under the insurer's policy. *Id*. at *1.

The insured argued that the insurer could not rely on the policy's allocation provision because the insurer had breached its defense obligation. *Id.* at *8. The insured reasoned that the insurer therefore waived its right to invoke its allocation provision and, as a consequence, was

obligated to pay for the insured's defense costs and settlement in their entirety, without allocation. *Id*. The *Dobson* court disagreed. *Id.* at *9.

The *Dobson* court emphasized that its fundamental goal was to give effect to the mutual intention of the parties, based on the written provisions of the contract. *Id.* Finding the allocation provision to be "conspicuous, plain and clear," the court concluded the provision was, likewise, enforceable. *Id.* at *8-9.

Even if a duty to defend has been breached (a proposition that National Union denies), National Union is not foreclosed from enforcing its rights under the Deductible Endorsement to the 2011 Policy. National Union is obligated to provide only the coverage that Yahoo contracted to obtain, which is significantly curtailed because Yahoo purchased a fronting program.[3] Yahoo cannot obtain a windfall by: (1) failing for 22 months to object to National Union's coverage position with respect to the initial complaint in the *Holland* lawsuit (even as that action was consolidated with several other lawsuits), (2) later requesting National Union to reconsider its coverage position, to which National Union agreed; and (3) then trying to leverage National Union's subsequent agreement to defend Yahoo to obtain benefits to which Yahoo is *not* entitled under the 2011 Policy. Such a result would place Yahoo in a *better* position than it would have been in if National Union had provided an immediate defense, in violation of California Civil Code Section 3358 ("Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."). California law does not entitle Yahoo to reap the windfall it seeks from an alleged breach of the duty to defend.

\\\

\\\

[3] As explained in *SCI CA. Funeral Servs., Inc. v. Westchester Fire Ins. Co*., 288 F.R.D. 450 (C.D. Cal. 2013), fronting policies do not transfer the risk of loss from the policyholder to the insurer. Instead, the policyholder agrees to indemnify the insurer for any loss paid by the insurer. *Id.* at 454 (citations omitted). Fronting policies satisfy insurance requirements because the insurance company is responsible in the first instance to pay a loss covered by its policy. But the arrangement also satisfies the policyholder's interest in retaining the risk and minimizing premiums because the policyholder agrees to indemnify the insurer for any loss the insurer is required to pay.

**C. <u>National Union Does Not Owe a Duty to Indemnify Yahoo for the Email Scanning Cases.</u>**

To trigger the duty to indemnify, an insured must prove that a claim is actually, as opposed to potentially, covered by the insurer's policy. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1120 (1999). Even where there is a duty to defend, an insurer is not obligated to indemnify the insured for any liability that ultimately is not covered. *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497 (2001).

1. <u>National Union Did Not Breach a Duty to Indemnify Yahoo in the *Sutton* or *Penkava* Lawsuits.</u>

Yahoo broadly asserts it has incurred "significant … amounts … to resolve the Email Scanning Cases," collectively. Other than this vague allegation, the only settlement alleged in the Complaint (as opposed to a dismissal) is in the *In re Yahoo Mail Litigation*. *See* Yahoo's Compl., ECF 1, ¶¶ 9, 13. Two of the three Email Scanning Cases – namely, *Sutton* and *Penkava* – were dismissed. There is no evidence that Yahoo made any indemnity payment in connection with those lawsuits. Thus, Yahoo's broad allegations about an alleged breach of the duty to indemnify all of the Email Scanning Cases are misleading. It is self-evident that an insurer cannot have breached a duty to indemnify where there is nothing to indemnify

Moreover, an insurer cannot have a duty to indemnify where, as here, there is no duty to defend in the first instance. *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001) ("[w]here there is a duty to defend, there *may be* a duty to indemnify; but where there is no duty to defend, there *cannot be* a duty to indemnify.") (emphasis in original). As discussed above at pp. 9-11, National Union never had a duty to defend the *Sutton* or *Penkava* lawsuits. Accordingly, National Union is entitled to summary judgment that it did not have, and thus did not breach, a duty to indemnify Yahoo in connection with the *Sutton* or *Penkava* lawsuits.

2. <u>Yahoo's Settlement of *In Re Yahoo Mail Litigation* Did Not Resolve any Liability of Yahoo Because of "Personal Injury."</u>

Yahoo's indemnity claim against National Union fails because, in settling the *In re Yahoo Mail Litigation*, Yahoo did not resolve a claim for damages because of "personal injury"

(or "personal and advertising injury"), as defined by the 2011 Policy. Only the Privacy Offense involving "[o]ral or written publication, in any manner, of material that violates a person's right of privacy" is potentially implicated. (*See* supra, pp. 4-5).

The Approval Order entered in the *In re Yahoo Mail Litigation* confirms that, at the time of the settlement, the only claims remaining were based on Yahoo's interception of "emails for content *during transit and before placing the emails into storage*." SSF 27. The settlement acknowledged technical violations of the Stored Communications Act and CIPA and obligated Yahoo to make structural changes to alter the precise timing of its interception of email. The court observed in the Approval Order: the "Settlement Agreement provides Plaintiffs the relief that [they] seek under both the SCA and CIPA," which is that "Yahoo will now only analyze emails for content when these emails are no longer in transit and after these emails reach a Yahoo Mail user's inbox or outbox." SSF 27.

Nowhere in the Approval Order is there any mention of a demonstrated, or even alleged, publication of private information to third parties. Instead, the settlement required Yahoo to implement structural changes in its email scanning processes; it did not require Yahoo to pay damages because of any publication of material. National Union therefore has no indemnity obligation in connection with the *In re Yahoo Mail Litigation* settlement, the terms of which are outside the scope of the Privacy Offense.

3. Yahoo's Settlement of *In Re Yahoo Mail Litigation* Does Not Obligate National Union to Pay Damages, as Required by the 2011 Policy.

Like all of the Policies, the 2011 Policy under which National Union agreed to defend obligates National Union to indemnify those sums that Yahoo becomes legally obligated to pay as covered *damages*. In addition to the lack of a covered liability, Yahoo's settlement of *In re Yahoo Mail Litigation* does not involve a payment of damages. The settlement consists of three components: injunctive relief; a negotiated $4 million award for the underlying plaintiffs' attorneys' fees and costs; and $5,000 "service awards" for each of the four class representatives. SSFs 29-30. None of these is an award of damages under California law.

\\\

Where, as here, an insurance policy does not define the term "damages," the ordinary and popular definition of the term controls. *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 825 (1990). On this basis, the California Supreme Court has interpreted damages to mean monetary compensation that a person recovers for loss or detriment that person has suffered through the acts of another. *Id*. at 826. Neither injunctive relief, attorneys' fees, nor incentive awards constitutes an item of damages.

***a.*** *Injunctive Relief Requiring Yahoo to Change Its Email Scanning Architecture Is Not "Damages."*

California courts have long held that declaratory and injunctive relief does not constitute damages under a CGL policy. For example, in *Cutler-Orosi Unified Sch. Dist. v. Tulare County Sch. etc. Auth.*, 31 Cal. App. 4th 617, 629-30 (1994), the court concluded that injunctive relief requiring school districts to eliminate racial discrimination due to violations of the Voting Rights Act ("VRA") was not damages. In making its determination, the court observed that the VRA did not authorize an award of monetary damages, and the plaintiffs would not be reimbursed for losses suffered for a violation of the Act. *Id*. at 630. Instead, the injunction requiring the school districts to eliminate racial discrimination in voting was purely prophylactic relief, which did not compensate the plaintiffs. *Id*.; *accord Bullock v. Maryland Cas. Co.*, 85 Cal. App. 4th 1435, 1447-48 (2001) (underlying claimants would receive no compensation due to insured's compliance with injunction; their only redress would be to bring their own suit for damages).

Like the injunctive relief contemplated by the courts above, the costs Yahoo incurs to change its email architecture are not damages. Here, the *In re Yahoo Mail Litigation* court granted preliminary approval of the settlement based on its examination of the "nature of the claims, which would have only allowed the Class to obtain injunctive relief and not monetary damages." SSF 29. Indeed, Yahoo's own briefing in the *In re Yahoo Mail Litigation* belies any argument to the contrary. *See* SSF 24, Mot. for Prelim. Approval of Class Action Settlement, 3:4-5 (acknowledging that plaintiffs "chose to pursue only injunctive and declaratory relief" and sought class certification on that basis). The Approval Order therefore confirms that the settlement encompasses only prophylactic, injunctive relief, which does not compensate the

underlying plaintiffs. Because any costs arising from the injunctive relief to which Yahoo agreed in the *In re Yahoo Mail Litigation* settlement are not damages, Yahoo is not entitled to indemnification for such amounts from National Union under the 2011 Policy.

***b.*** *The Underlying Plaintiffs' Attorneys' Fees Are Not Damages or Supplementary Payments.*

California courts have likewise recognized that damages do not include attorneys' fees incurred by prevailing plaintiffs. *See Cutler-Orosi*, 31 Cal. App. 4th at 632. Like most CGL policies (and the Policies here), the insuring agreement before the *Cutler-Orosi* court provided that the insurer would pay for sums the insured was legally obligated to pay "as damages," while the policy's Supplementary Payments provision separately provided that the insurer would pay for "costs taxed against the insured." *Id*. at 625, 632. In holding that attorneys' fees were not damages, the *Cutler-Orosi* court observed that, if the insuring agreement's use of the term damages already included costs, the supplementary payments policy provision providing for payment of "costs taxed against the insured" would be surplusage, contrary to basic rules of construction. *Id*. at 631-32.

As a second basis for its holding, the court in *Cutler-Orosi* posited that an attorneys' fees award does not compensate the plaintiffs for the injuries that brought them into court, but instead reimburses expenses the plaintiffs incurred in seeking relief. *Id*. at 632. Reasoning further, the court emphasized that interpreting damages to include all forms of civil monetary liability would eviscerate the policy's requirement that the insured be obligated to pay liability "as damages." *Id.; see also Ins. Co. of North Am. v. National Am. Ins. Co. of Calif.*, 37 Cal. App. 4th 195, 206-07 (1995) (prevailing party attorneys' fees awarded per contract are "costs," not damages).

National Union has no duty under the 2011 Policy to indemnify Yahoo for the attorneys' fees awarded in connection with the *In re Yahoo Mail Litigation* settlement. Like all the Policies, the 2011 Policy encompasses sums Yahoo is legally obligated to pay "as damages." As the *Cutler-Orosi* court recognized, plaintiffs' attorneys' fees are litigation expenses. *See Cutler-Orosi*, 31 Cal. App. 4th at 631-32. Unlike damages, these expenses do not compensate

the plaintiffs for their injuries, and thus do not qualify as damages under the insuring agreement. *Id*. Further, the attorneys' fees are not covered by the 2011 Policy's Supplementary Payments provision, which expressly states that costs taxed against the insured "do not include attorneys' fees or attorneys' expenses taxed against the insured." *Accord Alea London Ltd. v. Am. Home Services, Inc.*, 638 F.3d 768, 780 (11th Cir. 2011). Therefore, attorneys' fees are not damages under the 2011 Policy, and Yahoo is not entitled to indemnification for that component of the *In re Yahoo Mail Litigation* settlement.

***c.*** *The Underlying Plaintiffs' Incentive Awards Are Not Damages.*

Incentive awards to class representative are discretionary and intended to compensate class representatives for their personal efforts in bringing the action. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 934, 958–59 (9th Cir. 2009). In cases where money damages are awarded to a class, incentive awards are given in addition to the damages awarded to the class members. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015).

The *In re Yahoo Mail Litigation* court granted the request for incentive awards based on the class representatives' efforts prosecuting the case, such as producing emails, responding to interrogatories, and testifying at depositions. SSF 30. Like plaintiffs' attorneys' fees, the incentive awards did not compensate the plaintiffs for the injuries that brought them into court. The incentive awards were not damages, but instead an administrative litigation cost incurred to prosecute the case. Accordingly, National Union has no duty to indemnify Yahoo in connection with this or any other component of the settlement that Yahoo negotiated.[4]

**D. <u>National Union Did Not Commit Bad Faith.</u>**

National Union did not breach its duty to defend or indemnify Yahoo in connection with the Email Scanning Cases. Hence, there is no triable issue of material fact as to Count III of the Complaint, and Yahoo's breach of the implied covenant claim fails as a matter of law.

To prove an insurer acted in bad faith in an alleged wrongful delay or denial in the payment of policy benefits, the insured must show that the insurer acted unreasonably or

[4] To the extent the incentive awards are deemed "costs" under the Policies' Supplementary Payments provision (and therefore tied to National Union's duty to defend), National Union would be entitled to reimbursement from Yahoo of any such payment under the terms of the Deductible Endorsement.

without proper cause. *R & B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 354 (2006). In determining reasonableness, the insurer's decisions are evaluated from the time they were made. *Id*. An insurer does not act unreasonably when a genuine dispute exists as to the existence of coverage – either from a factual or legal standpoint. *See CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 286 (2005) (where coverage decision was objectively reasonable, insurer could not be liable for bad faith); *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 351 (2001) (finding a genuine factual dispute existed and holding that "sloppy or negligent claims handling does not rise to the level of bad faith"). Likewise, bad faith liability cannot be predicated on a mistake or negligence, especially under circumstances where the insured contributes to the mistake. *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 55 (1985) (the implied covenant of good faith and fair dealing "is a two-way street, running from the insured to his insurer as well as vice versa.").

Based on this authority, Yahoo cannot prevail on its bad faith claims. *See Waller*, 11 Cal. 4th at 36. As a preliminary matter, there is no potential for coverage for *Sutton* and *Penkava* because they do not allege a "publication," as required to implicate the Privacy Offense and trigger a duty to defend under the Policies' "personal injury"/"personal and advertising injury" coverage, or their claims are otherwise excluded from coverage.

Yahoo's claim for bad faith in connection with the *Holland* and *In re Yahoo Mail Litigation*, likewise, fails as a matter of law. In its January 15, 2014 coverage position letter, National Union invited Yahoo to provide any information Yahoo believed would cause National Union to reconsider its coverage position and withdraw its defenses concerning the *Holland* lawsuit. Yahoo communicated <u>nothing</u> to National Union in the nearly two years that followed. It was only in November 2015 that Yahoo first advised National Union that the *Holland* lawsuit had been consolidated in *In re Yahoo Mail Litigation*, and first requested that National Union reconsider its position based upon the PI Endorsement. *Id*. Because the implied covenant of good faith and fair dealing "is a two-way street," Yahoo's claim for bad faith is defeated by its own negligent failure to notify National Union of the *In re Yahoo Mail Litigation* and amended Consolidated Class Action Complaint.

Nor can National Union's actions after receiving Yahoo's November 20, 2015 request for reconsideration amount to bad faith. After receiving Yahoo's request that National Union reconsider its coverage position under both the 2011 Policy and the subsequently-issued policy (the "2012 Policy," which Yahoo has only recently removed from this coverage dispute), National Union confirmed that the 2011 Policy was the only one of the two policies amended by the PI Endorsement, reconsidered its coverage position, and agreed to defend Yahoo under the 2011 Policy pursuant to a reservation of rights.

National Union may have initially been mistaken that the 2011 Policy was amended by the PI Endorsement, just as Yahoo was mistaken in believing that the 2012 Policy was amended by that same endorsement, but a mistake is not "bad faith," particularly when it is exacerbated by the insured. Indeed, as Yahoo's counsel expressed in an article (under the heading "Never Take the Carrier's Initial Denial or Limitation as Absolute: Always Push Back"):

> When a client receives a denial or reservation of rights letter from the carrier, the policyholder should evaluate the denial or coverage limitation thoroughly and evaluate the basis for it, and, in almost every instance, the policyholder should push back. It doesn't always happen but a letter contesting the carrier's denial can result in a carrier changing course and agreeing to provide a complete, or at least partial, defense. *The simple reason is that carriers sometimes make mistakes; they cite the wrong policy language, fail to consider an endorsement that eliminated the exclusion referenced in a coverage denial* or fail to fully understand the true nature and scope of the underlying complaint to recognize the potential for a duty to defend.

William T. Um & Erica J. Dominitz, *Top 10 Things Litigators Should Know about Insurance*, LAW 360 (August 2, 2016 5:29 PM EDT) (emphasis added).

Moreover, it is evident that, between November 20, 2015 and the present, a genuine dispute has existed as to National Union's liability under the Policies, precluding a finding of bad faith. *See Chateau Chamberay*, 90 Cal. App. 4th at 347. Even if – at worst – National Union were negligent or mistaken in its evaluation of coverage, the law requires National Union to be reasonable – not flawless. Bad faith connotes "unfair dealing, not mistaken judgment." *California Shoppers*, 175 Cal. App. 3d at 55. Yahoo can point to no facts indicating that National Union engaged in conduct even remotely comparable to unfair dealing. As such,

Yahoo's claim for bad faith fails as a matter of law, and National Union is entitled to summary judgment.

## VI. CONCLUSION

Yahoo's effort to evade its repayment obligations and obtain a windfall in connection with the Email Scanning Cases cannot be rewarded. Yahoo's claims for breach of the duty to defend, the duty to indemnify, and the implied duty of good faith and fair dealing fail as a matter of law. National Union respectfully requests that this Court grant National Union's motion for summary judgment, and enter Judgment in National Union's favor on Counts I, II, and III of Yahoo's Complaint, declaring as follows:

A. National did not breach a duty to defend Yahoo with respect to the Email Scanning Cases;

B. National Union has no duty to indemnify Yahoo with respect to the Email Scanning Cases;

C. National Union did not breach the implied covenant of good faith and fair dealing; and

D. National Union shall be awarded its costs of suit.

Dated: January 4, 2018

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By: */s/ Daniel I. Graham, Jr.*
Daniel I. Graham, Jr.
Matthew C. Lovell
Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa, a Pennsylvania Corporation