KILPATRICK TOWNSEND & STOCKTON LLP
WILLIAM T. UM (State Bar No. 166536)
WUm@kilpatricktownsend.com
HEATHER W. HABES (State Bar No. 281542)
HHabes@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363

Attorneys for Plaintiff
YAHOO! INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

YAHOO! INC., a Delaware corporation,

Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,

Defendant.

CASE NO.: 5:17-cv-00489-EJD
Hon. Edward J. Davila, Courtroom 4

**YAHOO! INC.'S OPPOSITION/CROSS-MOTION TO NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION FOR SUMMARY JUDGMENT**

Date: Thursday, March 15, 2018
Time: 9:00 a.m.
Dept.: 4
Judge: Hon. Edward J. Davila

Date Complaint Filed: 1/31/2017

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 2

II. STATEMENT OF ISSUES ..... 3

III. UNDISPUTED MATERIAL FACTS ..... 4

A. National Union Agreed To Defend Yahoo Under The Policies. ..... 4

B. The Email Scanning Cases Filed Against Yahoo Alleged Potentially Covered Violations Of Privacy. ..... 6

1. *Sutton* and *Penkava* Paved The Way For Later Similar Claims. ..... 6

2. *Holland* Was A Copycat Lawsuit Of *Sutton* And *Penkava*. ..... 7

C. National Union Wrongly Denied Coverage For The Email Scanning Cases. ..... 8

1. National Union Refused To Defend *Sutton* And *Penkava* Even Though They Included Potentially Covered Claims. ..... 8

2. National Union Denied Coverage For *Holland*, And Then Retracted Its Decision Two Years Later. ..... 9

3. National Union Wrongly Maintained Its Incorrect Denial On *Sutton* And *Penkava*. ..... 11

IV. ARGUMENT ..... 11

A. Applicable Legal Standards ..... 11

1. Summary Judgment Is Appropriate Where There Is No Dispute Of Material Fact. ..... 11

2. The Duty To Defend Is Broad And Requires Immediate Defense. ..... 12

B. National Union Breached Its Duty To Defend As A Matter Of Law. ..... 13

1. National Union Failed To Immediately Defend *Holland*. ..... 13

2. National Union Improperly Continues To Deny Its Duty To Defend Potentially Covered Claims In *Sutton* And *Penkava*. ..... 15

3. The Deductible Coverage Endorsement Is Clearly Inapplicable. ..... 16

4. As A Breaching Insurer, National Union Cannot Rely On The Policies' Limitation Provisions To Seek Full Reimbursement. ....................17

C. National Union Breached Its Duty To Indemnify As A Matter Of Law. ....................19

1. The *In re Yahoo Mail Litigation* Settlement Was For Covered Claims Of "Personal Injury." ....................19

2. National Union Has To Pay For The Settlement Of The Claims It Erroneously Failed To Defend In *Holland*. ....................21

D. National Union Breached The Implied Covenant Of Good Faith And Fair Dealing ....................22

V. CONCLUSION ....................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACS Systems, Inc. v. St. Paul Fire & Marine Insurance Co.*, 147 Cal. App. 4th 137 (2007) .... 16

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) .... 19, 20

*Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825 (1997) .... 21, 22

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017 (2002) .... 16

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135 (C.D. Cal. 2013) .... 15

*Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) .... 25

*Burgett, Inc. v. Zurich Amer. Ins. Co.*, 830 F. Supp. 2d 953 (E.D. Cal. 2011) .... 15, 16

*Buss v. Superior Court*, 16 Cal. 4th 35 (1997) .... 12, 13

*California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1 (1985) .... 24

*CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273 (2005) .... 23

*California Ins. Guar. Ass'n v. Wood*, 217 Cal. App. 3d 944 (1990) .... 12

*Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal. App. 4th 335 .... 23

*Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654 (1958) .... 22

*Cutler–Orosi Unified School District v. Tulare County School Etc. Authority*, 31 Cal. App. 4th 617 (1994) .... 21

*Dobson v. Twin City Fire Ins. Co.*, No. 11-0192, 2015 WL 12698443 (C.D. Cal. Aug. 5, 2015) .... 18

*Golden Eagle Ins. Co. v. Ins. Co. of the West*,
99 Cal. App. 4th 837 (2002)........ 20

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) ........ 12, 21

*Hardin v. Greenwich Ins. Co.*,
No. 11-1785, 2012 WL 3217704 (C.D. Cal. Aug. 3, 2012)........ 11

*Haskel, Inc. v. Superior Court*,
33 Cal. App. 4th 963 (1995)........ 12

*Housing Group v. PMA Capital Insurance Co.*,
193 Cal. App 4th 1150 (2011)........ 13, 14

*Hyundai Motor America v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
No. 08-0020, 2011 WL 13134897 (C.D. Cal. Sept. 1, 2011) ........ 18

*Insurance Co. of Penn. v. City of Long Beach*,
342 Fed. Appx. 274 (9th Cir. 2009) ........ 20, 21

*Intergulf Development LLC v. Superior Court*,
183 Cal. App. 4th 16 (2010)........ 13, 14

*Isaacson v. California Ins. Guarantee Ass'n*,
44 Cal. 3d 775 (1988) ........ 21

*Janopaul + Block Companies, LLC v. Superior Court*,
200 Cal. App. 4th 1239 (2011)........ 13

*K.M. Management, LLC v. American Cas. Co. of Reading PA*,
156 F. Supp. 3d 1154 (C.D. Cal. 2015)........ 11

*Kennedy v. American Fidelity & Casualty Co.*,
97 Cal. App. 2d 315 (1950)........ 18, 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008)........ 12

*Montrose Chem. Corp. v. Superior Court*,
6 Cal. 4th 287 (1993) ........ 12, 16

*Mt. Hawley Ins. Company v. Lopez*,
215 Cal. App. 4th 1385 (2013)........ 22, 23

*Nat'l Cas. Co. v. Coastal Dev. Servs. Found.*,
171 F. App'x 680 (9th Cir. 2006) ........ 20

*Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*,
307 F.3d 944 (9th Cir. 2002)........ 12, 16

*Pepsi-Cola Metropolitan Bottling Co., Inc. v. Insurance Co. of North America, Inc.*, No. 10-2696, 2010 WL 10875087 (C.D. Cal., Dec. 28, 2010) .......... 13, 14

*Saarman Construction, Ltd. v. Ironshore Specialty Ins. Co.*, No. 15-03548, 2016 WL 4411814 (N.D. Cal. Aug. 19, 2016) .......... 11, 12

*SCI CA. Funeral Servs., Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450 (C.D. Cal. 2013) .......... 19

*Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*, 78 Cal. App. 4th 847 (2000) .......... 22

*State Farm General Insurance Co. v. JT's Frames, Inc.*, 181 Cal. App. 4th 429 (2010) .......... 16

*Summers v. Teichert & Son, Inc.*, 127 F. 3d 1150 (9th Cir. 1997) .......... 11

*Universal Underwriters v. Lou Fusz Automotive*, 401 F.3d 876 (8th Cir. 2005) .......... 21

*Vandenberg v. Superior Court*, 21 Cal. 4th 815 (1999) .......... 19

*Woodliff v. California Insurance Guarantee Association*, 110 Cal. App. 4th 1690 (2003) .......... 17

**Rules**

Fed. R. Civ. P. 56 .......... 1

Fed. R. Civ. P. 56(a) .......... 11

Local Rule 7-4(a)(3) .......... 3

**NOTICE OF CROSS-MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, March 15, 2018 at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4 of the Honorable Judge Edward J. Davila of the United States District Court of California – San Jose Division located at 280 South 1st Street, San Jose, California 95113, Plaintiff Yahoo! Inc. ("Yahoo") will and hereby does move this Court for summary judgment, or in the alternative, partial summary judgment against National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") on all counts pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Yahoo respectfully requests that this Court grant summary judgment on the three counts of Yahoo's Complaint because there is no triable issue of material fact, and Yahoo is therefore entitled to judgment as a matter of law on the following grounds:

1. National Union breached its duty to defend by refusing to defend Yahoo timely against all potentially covered claims under Yahoo's policies;
2. National Union breached its duty to indemnify by failing to pay covered settlements;
3. By breaching its duties to defend and indemnify, National Union has acted unreasonably and without basis in violation of its implied covenant of good faith and fair dealing.

This Motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities, the Separate Statement of Material Facts, and the Declarations of Daniel C. Tepstein and William T. Um filed concurrently herewith, and all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This is not your typical insurance coverage case. Rather than dispute whether the underlying lawsuit allegations are potentially covered, National Union has admitted in writing that it incorrectly denied its duty to defend Yahoo for two years. When National Union finally retracted its denial, it was not because of new allegations or evidence from the underlying lawsuit. Instead, National Union acknowledged its defense was triggered by allegations that were included in the original complaint. Despite its clear failure to defend Yahoo for two years, National Union continues to deny that it has breached the policies at issue. National Union's arguments are not supported by the facts, policy language, or California law. Yahoo is entitled to judgment as a matter of law.

National Union's duty to defend was triggered immediately upon receipt of the lawsuit, *Eric Holland v. Yahoo! Inc*. ("*Holland*"), yet it failed to defend for two years. By purchasing insurance policies that impose a duty to defend, Yahoo not only was securing a defense, but was buying peace of mind that National Union would step in, help retain counsel, oversee the defense, and pay all associated defense costs. National Union did not fulfill any of these obligations as it failed to defend Yahoo immediately, and only acknowledged its duty to defend two years later, well after the underlying parties had reached a preliminary settlement. To make matters worse, despite conceding that the *Holland* lawsuit triggered the relevant insurance policies, National Union maintains its incorrect denials on two identical lawsuits that preceded the *Holland* lawsuit: *Sutton & Williams v. Yahoo! Inc*. ("*Sutton*") and *Penkava v. Yahoo! Inc*. ("*Penkava*"). National Union simply cannot explain why it agreed to defend *Holland*, while denying a defense on others just like it.

National Union has further refused to pay a settlement in *Holland* for covered monetary damages arising from Yahoo's alleged disclosure to third parties of private information. Yahoo expressly settled claims for monetary damages with class representatives in exchange for its payment of service awards and attorneys' fees to the plaintiffs. National Union's attempt to gloss over these details and generally construe all relief provided by the settlement as "injunctive" is

improper and incorrect. The settlement payment constitutes "sums" that Yahoo is "legally obligated to pay as damages" covered by the policies.

Moreover, the *Holland* settlement is the direct result of National Union's breach of the duty to defend because Yahoo was left on its own to resolve the claims against it without the assistance of its insurer. California insurance law is clear that under such circumstances, National Union is responsible for those damages that proximately resulted from its breach of the duty to defend, including the full settlement amount.

Because National Union unreasonably refused to defend and to indemnify Yahoo in the underlying actions, National Union also breached the implied covenant of good faith and fair dealing as a matter of law. The record is replete with evidence of National Union's bad faith conduct, including: its pattern and practice of denying claims based on deleted exclusions; its adoption of inconsistent positions on coverage with respect to similar lawsuits without explanation; and its repeated attempts to blame Yahoo for its own failures to investigate and to consider the underlying lawsuit allegations.

Finally, National Union's motion for summary judgment wrongly relies on the Deductible Coverage Endorsement as some type of "get out of jail free card" by claiming that even if National Union had a duty to defend, it would be excused because Yahoo was required to reimburse National Union all incurred defense costs. National Union's argument puts the cart before the horse. The Deductible Coverage Endorsement could only apply if National Union actually had defended Yahoo in the first instance, which even National Union admits it did not do. Under National Union's theory, it can deny coverage for any lawsuit, regardless of whether such lawsuit triggered the policies, and not face any consequence because the Deductible Coverage Endorsement would save the day. National Union's contention ignores the policy coverage that it agreed to provide, by including a duty to defend in the policies. Far from trying to obtain a "windfall" recovery, Yahoo is simply requesting this Court to enforce the terms of the policies as they are written – and not as National Union wishes they were drafted.

## II. STATEMENT OF ISSUES

Pursuant to Local Rule 7-4(a)(3), this Motion raises the following issues:

1. Whether National Union breached its duty to defend Yahoo by failing to defend the *Holland* lawsuit and forcing Yahoo to defend and to settle the lawsuit on its own;
2. Whether National Union breached its duty to defend by denying coverage for *Sutton* and *Penkava*, which include the same allegations in *Holland* that Yahoo allegedly intercepted plaintiffs' private emails and shared the content of those emails with others for financial profit;
3. Whether National Union breached its duty to indemnify Yahoo by denying coverage for the settlement in *Holland* of monetary damages resulting from Yahoo's alleged unauthorized disclosure of private information to third parties;
4. Whether National Union breached the implied covenant of good faith and fair dealing by, among other things:
    a. Exhibiting a pattern and practice of relying on deleted exclusions, including the "Insureds In Media And Internet Type Businesses" and "Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information" exclusions, to wrongfully deny coverage for the underlying lawsuits;
    b. Denying coverage for two years without basis when the allegations of the original complaint tendered to National Union triggered coverage, which National Union later admitted;
    c. Continuing to deny any duty to defend the *Sutton* and *Penkava* lawsuits that are identical to the *Holland* lawsuit, without explanation or reasonable basis;
    d. Deliberately ignoring correspondence from Yahoo's insurance broker explaining that an endorsement to the policies applied to remove certain exclusions; and
    e. Trying to blame Yahoo for its failure to investigate and to defend covered claims.

## III. UNDISPUTED MATERIAL FACTS

### A. National Union Agreed To Defend Yahoo Under The Policies.

National Union sold Yahoo four consecutive, one-year "Commercial General Liability" insurance policies (the "Policies") to Yahoo. (National Union's Separate Statement of Material Facts ("NUMF") #1.) The Policies include a standard form Commercial General Liability

("CGL") Coverage Form that includes, among other coverages, "COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY." (NUMF #2.) Significantly, Yahoo negotiated manuscript "personal injury" coverage provided by the National Union Policies through a separately drafted endorsement. (NUMF #9.) In "Endorsement No. 1," "COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY" of the standard form is "deleted in its entirety and replaced" with "COVERAGE B PERSONAL INJURY LIABILITY" as set forth in the Endorsement (the "Personal Injury Endorsement"). (*Id.*) This Personal Injury Endorsement removes certain exclusions that were included in the standard form, including 2(j) "Insureds In Media And Internet Type Businesses" (NUMF #11) and 2(p) "Distribution Of Material In Violation Of Statutes" (Yahoo's Separate Statement of Material Facts ("YMF") #2) and provides broad coverage for "personal injury" (NUMF #10).

Under the Personal Injury Endorsement, National Union expressly agrees that it has the "right and duty to defend" Yahoo against any suit seeking damages covered by the Policies. (NUMF #9.) "Personal injury" is defined by the endorsement as "injury … arising out of one or more of the following offenses: … (e) Oral or written publication, in any manner, of material that violates a person's right of privacy." (NUMF #10.)

The three insurance policies issued by National Union from May 31, 2009 to May 31, 2011, contain a "Deductible Coverage Endorsement." (NUMF #5.) The Deductible Coverage Endorsement entitles National Union to reimbursement of "Allocated Loss Adjustment Expense" that National Union pays as "Supplementary Payments." (NUMF #5.) The Policies explain that "Supplementary Payments" are those amounts "[National Union] will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend…." (NUMF #7.) Accordingly, only where National Union actually has investigated, settled, or defended a claim has it incurred any "Supplementary Payments," and only those amounts that National Union pays as "Supplementary Payments" are reimbursable as "Allocated Loss Adjustment Expense."[1]

[1] The "Payment Agreement" does not require Yahoo to make any payments to National Union other than reimbursement for "Allocated Loss Adjustment Expense" as set forth in the Policies. (NUMF ## 3-4.)

### B. The Email Scanning Cases Filed Against Yahoo Alleged Potentially Covered Violations Of Privacy.

During the period from August 2012 to June 2015, several class action lawsuits were filed against Yahoo alleging privacy violations involving Yahoo's email services. These lawsuits are detailed below and are collectively referred to as the "Email Scanning Cases."

#### 1. *Sutton* and *Penkava* Paved The Way For Later Similar Claims.

Yahoo was named as a defendant in complaints filed in California state and federal courts alleging violations of plaintiffs' privacy rights: (1) *Sutton & Williams v. Yahoo! Inc.*, Super. Ct. Cal., Marin County, Case No. CIV1202973 ("*Sutton*") filed on June 29, 2012, and (2) *Penkava v. Yahoo! Inc.,* United States District Court for the Northern District of California, Case No. 12-cv-03414 ("*Penkava*") filed on June 28, 2012. (NUMF ##13-14.) These lawsuits were filed by the same counsel. (YMF #3.) And although one was filed in state court, and one was filed in federal court, Yahoo understood these lawsuits to be effectively the same claim and treated them as such. (YMF #4.) Yahoo timely provided notice of both actions to National Union. (NUMF #12.)

These lawsuits contained identical allegations that Yahoo had violated the underlying plaintiffs' rights to privacy by "intercept[ing] e-mails sent by individual non-Yahoo! subscribers sent from their non-Yahoo! e-mail accounts before their intended delivery to private individual Yahoo! subscribers, through the application of devices and techniques to review those e-mails for their words, content and thought processes." (NUMF ##13-14.) *Penkava* also alleged that "Yahoo! ***profited*** as a result of its repeated and pervasive violation of CIPA [California Invasion of Privacy Act]." (YMF #6) (emphasis added). In other words, Yahoo was being accused of disclosing private information it received from non-users' emails to third parties for its own financial benefit. In the *Penkava* First Amended Complaint, plaintiffs further alleged that Yahoo derives "a ***financial windfall*** from the reading of, attempts to read, learning of the content or meaning of … and recording of communications[.]" (YMF #7) (emphasis added). Again, the plaintiffs made clear that Yahoo was allegedly sharing private information with third parties for Yahoo's financial benefit.

A few months after these lawsuits were filed, Yahoo met with plaintiffs' counsel to discuss the issues, the allegations, and Yahoo's positions. (YMF #14). After meeting with Yahoo and its

defense counsel, plaintiffs' counsel voluntarily agreed to dismiss both the *Sutton* and *Penkava* lawsuits and they were dismissed on January 22, 2013 and November 30, 2012, respectively. (YMF #14; NUMF #16.) But just months after these claims were dismissed, other plaintiffs who had sued Google, alleging similar claims that the email service provider was intercepting and scanning email content for the purpose of targeted advertising received a favorable ruling in the United States District Court for the Northern District of California. (YMF #15.)

**2. *Holland* Was A Copycat Lawsuit Of *Sutton* And *Penkava*.**

Presumably because of the favorable ruling by the court on similar claims in the Google lawsuit, Yahoo was named as a defendant in six new lawsuits asserting substantially identical allegations involving Yahoo's email service. (YMF #15.) That included the class action complaint filed by plaintiff Eric Holland on October 25, 2013, in the United States District Court for the Northern District of California, *Eric Holland v. Yahoo! Inc.*, Case No. 13-cv-4980 ("*Holland*"). (YMF #15.) The other lawsuits were filed by named plaintiffs *Kevranian*, *Zelaya*, *Nobles*, *Pincus*, and *Abrams*. (YMF #15.) Yahoo promptly tendered these lawsuits to National Union. (NUMF #17.) Just like the plaintiffs in *Sutton* and *Penkava*, the *Holland* plaintiffs alleged that the same practices by Yahoo encroached on plaintiffs' privacy rights because Yahoo was scanning and sharing information gleaned from plaintiffs' emails for its own benefit. (YMF ##8-9.)

Shortly after filing, *Holland* and the five other lawsuits were consolidated and a Consolidated Class Action Complaint was filed on February 12, 2014 in the United States District Court for the Northern District of California *In re Yahoo Mail Litigation*, No. 5:13-cv-4980-LHK ("*In re Yahoo Mail Litigation*"). (NUMF #21.) The *In re Yahoo Mail Litigation* Complaint included the identical claims from *Holland* that Yahoo allegedly improperly intercepted and scanned the content of non-users' email communications without their consent and shared this collected information with its "trusted partners" or used it to prepare digital profiles that it sold to advertisers. (YMF #10.)

After several mediations, Yahoo reached a settlement with the plaintiffs and on January 7, 2016, Yahoo filed a motion for preliminary approval of a class action settlement in *In re Yahoo Mail Litigation*. (NUMF #24.) Pursuant to the terms of the proposed settlement, the class

representatives agreed to settle their claims for monetary damages against Yahoo in exchange for payment of $4 million in attorneys' fees and $5,000 in service awards for each class representative. (YMF ##30-31; NUMF #30) In addition, Yahoo agreed as part of the settlement to change its webpage to add a bullet point that states, "Yahoo may share keywords, package tracking and product identification numbers ***with third parties*** in order to enhance your user experience and provide targeted ads." (YMF ##28-29.)

### C. National Union Wrongly Denied Coverage For The Email Scanning Cases.

#### 1. National Union Refused To Defend *Sutton* And *Penkava* Even Though They Included Potentially Covered Claims.

National Union summarily denied coverage for both *Sutton* and *Penkava* on September 26, 2012. (NUMF #15.) While National Union recognized that Coverage B, "as amended by Endorsement" in certain policies, covered "Personal Injury," it wrongfully concluded that the underlying lawsuits did not allege "any 'personal injury' or 'personal and advertising injury'" purportedly because: "[t]here are no allegations that Yahoo! published or made known to any third party any of the allegedly unlawful material that Yahoo! intercepted from the individual non-Yahoo! subscribers." (NUMF #15.)

In denying coverage, National Union explained that even if the *Sutton* and *Penkava* claims fell within coverage, there were several exclusions that could limit or preclude coverage. (YMF #12.) National Union referenced several exclusions as possible bars to coverage, including the following: "Knowing Violation Of Rights of Another"; "Criminal Acts"; and "electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control." (YMF #12.) National Union also relied on the following two additional exclusions to deny coverage even though these exclusions were deleted by the Personal Injury Endorsement: "Violation of Statutes" and "Insureds In Media And Internet Type Businesses."[2]. (YMF #12; NUMF #11.) Because National Union denied coverage, Yahoo was forced to engage and pay defense counsel. (YMF #13.)

[2] National Union misrepresented the name of this exclusion as "Insureds Engaging In Media And Internet Type Activities" in its September 26, 2012 letter. (YMF #12.)

### 2. National Union Denied Coverage For *Holland*, And Then Retracted Its Decision Two Years Later.

By letter dated January 15, 2014, National Union advised Yahoo that there was no coverage for the allegations in *Holland*. (NUMF #19.) Using the same basis—word for word—that it used to deny coverage for *Sutton* and *Penkava*, National Union claimed that "[t]here are no allegations that Yahoo! published or made known to any third party any of the allegedly unlawful material that Yahoo! intercepted from the individual non-Yahoo! subscribers." (YMF #18; NUMF ##15, 19.) National Union also similarly argued in its January 15, 2014 letter that even if the allegations fell within the coverage grant, there were at least ***six*** exclusions that could apply to bar coverage. (YMF #18.) National Union again relied on two exclusions—"Insureds in Media And Internet Type Businesses" and "Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information"—that were removed by the Personal Injury Endorsement. (YMF #19.)

Because National Union denied all responsibility for *Holland*, Yahoo retained counsel, paid the fees of its own counsel, oversaw and coordinated its defense against *Holland*, which became *In re Yahoo Mail Litigation* as detailed above, to conclusion without the assistance or support of National Union. (YMF ##20-21.) Almost two years after National Union's coverage denial, when a preliminary settlement hearing was pending in *In re Yahoo Mail Litigation*, Yahoo requested that National Union reconsider its prior denial, and agree to fund the settlement in *In re Yahoo Mail Litigation* by letter dated November 20, 2015. (YMF #22; NUMF #22.) Specifically, Yahoo reiterated that the original *Holland* complaint included claims that clearly fell within National Union's broad obligation to defend lawsuits alleging "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." (YMF #22; NUMF #22.)

National Union responded and agreed that it owed Yahoo a duty to defend *In re Yahoo Mail Litigation*. (YMF #23; NUMF #23.) By letter dated February 16, 2016, National Union stated that it "reconsidered its coverage position [and] ***retracts*** its previous disclaimer of coverage . . . and ***hereby agrees to defend*** Yahoo." (YMF #23.) National Union, however, only agreed to defend pursuant to its 2011-12 Policy, even though there was identical language in the 2010

Policy. (YMF #24.) National Union concluded—albeit over two years too late—that the *Holland* allegations were potentially covered by the policy, triggering National Union's duty to defend. (YMF #23.) Importantly, National Union has admitted in its responses to Yahoo's Requests for Admission in this litigation that the original *Holland* complaint triggered a potential for coverage under its 2011-12 Policy. (YMF #11.)

Rather than acknowledge that it should have agreed to defend Yahoo when it was first notified about *Holland*, and accept the consequences for its two-year delay, National Union instead blamed Yahoo as the reason for National Union's delay. (YMF #25.) Specifically, National Union claimed that when it originally considered coverage for *Holland*, "Endorsement No. 4 [the manuscript Personal Injury Endorsement discussed above] was missing from National Union's copy of the policy." (YMF #26.) National Union implied in its letter—and now clearly argues in its motion for summary judgment—that Yahoo had a duty to provide National Union with a copy of National Union's own policy and that Yahoo's failure to do so was partly the reason for National Union's delay to acknowledge its duty to defend. (YMF ##25-26.) Putting aside the absurdity of the position that Yahoo was somehow responsible for making sure National Union, the insurance company, had a complete copy of its own policy, it turns out that National Union did in fact have a complete copy of the relevant Personal Injury Endorsement. Indeed, National Union was able to rely on, and cite to, the terms of the endorsement to acknowledge its duty to defend without Yahoo having to provide National Union with a complete copy of the policy after all. (YMF #27.) National Union itself concedes that Yahoo did not provide a copy of the Endorsement when it asked National Union to reconsider its denial of *Holland*. (NUMF #22.)

This is not the first time that National Union tried to rely on non-existent exclusions to deny coverage to Yahoo. In an earlier situation, Yahoo's insurance brokers corresponded with National Union in connection with several lawsuits because National Union had failed to consider that the Personal Injury Endorsement replaced certain exclusionary language in the Yahoo policies. And yet, National Union failed to acknowledge that Personal Injury Endorsement in denying coverage for *Sutton*, *Penkava*, and *Holland*. (YMF ##12, 19.) The Endorsement provided by Yahoo's insurance brokers was the same endorsement that National Union claims was

"missing from National Union's copy of the policy" when National Union denied coverage for the *Holland* in January 2014. (YMF #26.) There is no excuse for National Union's failure to defend immediately against *Holland* when it received notice.

#### 3. National Union Wrongly Maintained Its Incorrect Denial On *Sutton* And *Penkava*.

After National Union changed its position on *Holland*, Yahoo asked National Union to reconsider its denials in *Sutton* and *Penkava* given that these lawsuits included the same allegations. (YMF #16.) In response, National Union confirmed its denial by letter dated May 12, 2016, relying on both the *Penkava* original complaint and First Amended Complaint. (YMF #17.) National Union failed to explain why the claims in *Sutton* and *Penkava* – which were identical to the claims against Yahoo that National Union had agreed were covered – did not merit a defense. (*Id.*)

## II. ARGUMENT

### A. Applicable Legal Standards

#### 1. Summary Judgment Is Appropriate Where There Is No Dispute Of Material Fact.

Upon a showing that there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added); *see also Hardin v. Greenwich Ins. Co*., No. 11-1785, 2012 WL 3217704 at *4 (C.D. Cal. Aug. 3, 2012) (granting insured's motion for partial summary judgment on the insurer's duty to defend). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks summary judgment. *K.M. Management, LLC v. American Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1162 (C.D. Cal. 2015). The non-moving party must then "identify with reasonable particularity the evidence that precludes summary judgment." *Saarman Construction, Ltd. v. Ironshore Specialty Ins. Co.*, No. 15-03548, 2016 WL 4411814, at *3 (N.D. Cal. Aug. 19, 2016). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the non-moving party must introduce some significant probative evidence …." *Id.* (*quoting Summers v.*

*Teichert & Son, Inc.*, 127 F. 3d 1150, 1152 (9th Cir. 1997)). If the non-moving party fails to make this showing, the motion will be granted. *Id.*

**2. The Duty To Defend Is Broad And Requires Immediate Defense.**

Under well-established California law, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993); *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008) (same). "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the *insurer* must prove it *cannot*." *Montrose*, 6 Cal. 4th at 300 (emphasis in original). "California courts have repeatedly found that ***remote facts buried within causes of action that may potentially give rise to coverage*** are sufficient to invoke the defense duty." *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) (emphasis added).

The duty to defend is immediate and it "arises as soon as the tender is made." *Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) ("To defend meaningfully, the insurer must defend immediately.") "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." *Montrose*, 6 Cal. 4th at 295. An immediate defense provides the insured with "the peace of mind and security which the insured has every reason to expect." *California Ins. Guar. Ass'n v. Wood*, 217 Cal. App. 3d 944, 948 (1990); *see also Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979, fn. 14 (1995).

National Union thus cannot escape its duty to defend unless the underlying actions "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 n.15 (1966). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 299-300.

### B. National Union Breached Its Duty To Defend As A Matter Of Law.

#### 1. National Union Failed To Immediately Defend *Holland*.

National Union has conceded that the allegations in the original *Holland* complaint were potentially covered by its Policies. The two year delay between National Union's receipt of a potentially covered lawsuit and its agreement to defend – during which time Yahoo litigated and reached a preliminary settlement in *Holland* – constitutes a breach of its duty to defend as a matter of law. *See Buss*, 16 Cal. 4th at 46 ("To defend meaningfully, the insurer must defend immediately."); *Intergulf Development LLC v. Superior Court*, 183 Cal. App. 4th 16, 20 (2010) ("Unreasonable delay in paying policy benefits … is an actionable withholding of benefits which may constitute a breach of contract as well as bad faith giving rise to damages in tort.")

Like National Union here, the insurer in *Housing Group v. PMA Capital Insurance Co.*, failed to accept its duty to defend immediately and allowed the insured to litigate without its assistance for the duration of the underlying litigation. 193 Cal. App. 4th 1150, 1155–1156 (2011). And just as National Union only agreed to defend after Yahoo had reached a preliminary settlement in *Holland*, the insurer in *Housing Group* only agreed to defend after the insured had agreed to a settlement in the underlying action. *See id*. The California Court of Appeal in *Housing Group* determined that the insurer's payment of defense fees at the end of the litigation was a breach of its duty to defend and "the equivalent of a defense denial." *Id.* at 1157. National Union's conduct here is no different. National Union's failure to defend Yahoo for two years until the underlying lawsuit was settled is the equivalent of a denial.

Even an insurer that immediately accepts its duty to defend but then fails to pay timely the insured's defense costs breaches its duty to defend. *Pepsi-Cola Metropolitan Bottling Co., Inc. v. Insurance Co. of North America, Inc.*, No. 10-2696, 2010 WL 10875087 at * 6 (C.D. Cal., Dec. 28, 2010). The *Pepsi* court found that because the evidence demonstrated that the insurer had a pattern of delaying reimbursements for defense costs for periods of longer than a year (up to two years), the insurer breached its duty to defend as a matter of law. *Id.*[3]

[3] Other California courts similarly recognize that an insurer's failure to accept a tender of defense immediately constitutes a breach of the duty to defend. *See*, *e.g., Janopaul + Block Companies, LLC v. Superior Court*, 200 Cal. App. 4th 1239 (2011) (reversing order requiring arbitration and

There is no question that National Union's conduct here is demonstrably worse than both insurers that were deemed to be in breach in *Pepsi* and *Housing Group*. National Union denied any defense and failed to pay defense costs for two years, unlike the insurer in *Pepsi* that accepted a defense and failed to pay, and unlike the insurer in *Housing Group* that reserved its rights but failed to accept the tender of defense. Tellingly, National Union cannot cite a single California authority in support of its argument that by merely accepting its duty to defend two years after receipt of the original tender, it did not breach its duty to defend. (*See* Dkt. 45 at 11.)

Instead, National Union's only response is to manufacture "reasons" for its delay; none of which have merit. Primarily, National Union claims that its delay should be excused because National Union did not have a complete copy of the insurance policy ***it issued*** to Yahoo. This position is absurd and factually incorrect. National Union admits that it did not receive a copy of the Personal Injury Endorsement from Yahoo when it requested National Union reconsider its denial, and yet, National Union was able independently to confirm that the Endorsement was part of the 2011-12 Policy, and to quote all of its relevant provisions. (YMF #27; NUMF #22.)

Even assuming that National Union did not have a complete copy of the Policy when it denied coverage for *Holland* on January 15, 2014, National Union explained in its letter it was denying coverage because the claims in *Holland* did not fall within the coverage for injury arising from "oral or written publication, in any manner, of material that violates a person's right of privacy." (YMF #18.) Importantly, this language ***was not changed*** by the Personal Injury Endorsement. (NUMF ##8, 10.) And even if some of the applicable exclusions to this language changed because of the Personal Injury Endorsement – National Union did not deny coverage based on any exclusion in the Policy. It simply reserved its rights under several exclusions, the majority of which were not altered by the endorsement.

As a secondary "reason" to justify its delay, National Union implies that the Consolidated Complaint in *In re Yahoo Mail Litigation* included new allegations, and thus it was actually

---

ordering preliminary determination as to whether insurer's failure to defend for more than two years after original tender was a breach of the duty to defend); *Intergulf*, 183 Cal. App. 4th at 18 (reversing order requiring arbitration and ordering preliminary determination as to whether insurer's failure to accept tender for eight months was a breach of the duty to defend).

Yahoo's fault that it did not provide a copy of the consolidated complaint earlier. Again, this argument does not hold water. Yahoo asked for reconsideration of the allegations in the *Holland* complaint, and National Union admitted in its discovery responses that the *Holland* complaint included potentially covered claims. (YMF # 11.) National Union's failure to defend timely is unreasonable and without basis and constitutes a breach, as a matter of law, of its duty to defend.

**2. National Union Improperly Continues To Deny Its Duty To Defend Potentially Covered Claims In *Sutton* And *Penkava*.**

Under the terms of the Policies, National Union agreed to defend claims alleging injury arising out of "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." (NUMF #10.) Both *Sutton* and *Penkava* alleged that Yahoo ***records*** the content from plaintiffs' private emails with third parties. (YMF #5.) And Plaintiffs in *Penkava* alleged that Yahoo "***profited*** as a result of its repeated and pervasive violation of CIPA [California Invasion of Privacy Act]." (YMF #6.) The *Penkava* First Amended Complaint further claimed that Yahoo "derives a ***financial windfall***" from its alleged interception and scanning of plaintiffs' emails. (YMF #7 (emphasis added).) Allegations in *Sutton* and *Penkava* that Yahoo recorded, shared with, or sold to third parties private information, constitute potentially covered "publications" triggering National Union's duty to defend under California law. *See Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co*., 957 F. Supp. 2d 1135, 1148 (C.D. Cal. 2013) (holding claims that insured "requested, recorded, and 'disseminated' or 'shared and/or sold'" the underlying claimants' ZIP codes were potentially covered under identical coverage provision). Most importantly, National Union already agreed to cover these exact same claims in *Holland*, which contains identical allegations and was a copycat lawsuit following the voluntarily dismissal of the *Sutton* and *Penkava* lawsuits a few months earlier.

In denying coverage for *Sutton* and *Penkava*, National Union claims that there is no alleged "publication" to third parties. But National Union, when considering whether a lawsuit's allegations trigger coverage, has to consider not only the factual allegations in the complaints, but the logical inferences that must be drawn from the underlying factual allegations. *See Burgett, Inc. v. Zurich Amer. Ins. Co.,* 830 F. Supp. 2d 953, 957 (E.D. Cal. 2011) (finding duty to defend

where claims could potentially establish disparagement by implication even in the absence of alleged disparaging statements about plaintiff). Even if National Union's narrow reading of "publication" is accepted, the factual allegations that Yahoo was accruing a financial benefit through its alleged privacy violations support the logical inference that Yahoo was allegedly selling and sharing private information with third parties. *See id*. A single allegation buried in the *Sutton* or *Penkava* complaint is sufficient to trigger National Union's duty to defend under California law. *Pension Trust Fund*, 307 F.3d 944 at 951; *see also Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,* 100 Cal. App. 4th 1017, 1034–35 (2002) ("Any doubt as to whether the facts establish or defeat the existence of the defense duty must be resolved in the insured's favor.").

National Union's attempt to rely on *ACS Systems, Inc. v. St. Paul Fire & Marine Insurance Co.*, 147 Cal. App. 4th 137, 150 (2007) and *State Farm General Insurance Co. v. JT's Frames, Inc.*, 181 Cal. App. 4th 429 (2010) to support its narrow definition of "publication" lacks merit. *ACS Systems* and *JT's Frames* are distinguishable as both cases held that a fax blast in violation of the Telephone Consumer Protection Act was not a potentially covered "publication." But unlike here, there were no factual allegations in those cases that supported a disclosure by the insured of private information (such as plaintiffs' emails here) to third parties.

Moreover, National Union's denial of *Sutton* and *Penkava* is irreconcilable with its acceptance of its duty to defend in *Holland*. National Union does not, and cannot, identify any difference between the allegations in *Holland* that it agreed to defend, and in *Sutton* and *Penkava* that it refused to defend. That is because the core allegation – that Yahoo violated the underlying plaintiffs' privacy rights by disclosing plaintiffs emails, or their content, with third parties for its own financial benefit – is included in all three lawsuits and form the fundamental basis for the plaintiffs' theories of recovery against Yahoo. National Union has a duty to defend in *Sutton* and *Penkava* as a matter of law because these suits include allegations that are potentially covered by the Policies, and National Union cannot prove "*the absence of any such potential*." *Montrose*, 6 Cal. 4th at 300 (emphasis in original).

**3. The Deductible Coverage Endorsement Is Clearly Inapplicable.**

National Union also incorrectly relies on the Deductible Coverage Endorsement to try to

claim that Yahoo was not damaged by its delay. The plain terms of the Deductible Coverage Endorsement demonstrate that it only applies after National Union defends Yahoo. The endorsement states that Yahoo has an obligation to reimburse "Supplementary Payments" incurred by National Union as "Allocated Loss Adjustment Expense"[4]; but by definition, "Supplementary Payments" refer only to those amounts first incurred and paid by National Union in its defense or settlement of claims against Yahoo. National Union, however, never defended, never investigated, and never settled the claims in any of the Email Scanning Cases on behalf of Yahoo. Instead, Yahoo was forced to act alone to secure its own defense counsel, to oversee and manage the litigation on its own, and to pay all the costs of defense and settlement in the Email Scanning Cases, without assistance from National Union.

As reflected by the language of the Deductible Coverage Endorsement, it applies only when National Union defends a potentially covered claim. That means National Union uses its bargaining power to retain defense counsel at reasonable rates, oversees and manages the defense, pays and reviews all defense invoices received, and brings the case to resolution. Then, at the conclusion of the lawsuit, National Union theoretically would send Yahoo a bill for all expenses it incurred as "Supplementary Payments" in the defense. The value of the Deductible Coverage Endorsement is that it provides Yahoo with assurance and peace of mind that National Union will oversee and handle matters that trigger the Policies on behalf of Yahoo, without Yahoo's operations being impacted. Yahoo never received the benefit of this peace of mind that it purchased with these policies. The Endorsement does not delete or otherwise alter National Union's broad duty to defend. Because National Union failed to defend Yahoo, it is not entitled to any reimbursement under the Deductible Coverage Endorsement.

#### 4. As A Breaching Insurer, National Union Cannot Rely On The Policies' Limitation Provisions To Seek Full Reimbursement.

Because National Union breached the terms of the contract by failing to defend, it cannot

---

[4] California case law construing "loss adjustment expense" further supports that it means expense incurred by the *insurer* to defend claims against the insured. *See Woodliff v. California Insurance Guarantee Association*, 110 Cal. App. 4th 1690, 1700-01 (2003) (explaining "loss adjustment expense" is "incurred by the insurer" and "an insured does not incur loss adjustment expenses because the insured does not initiate or control the loss adjustment process.")

seek full reimbursement of any defense costs it ultimately may pay under the Deductible Coverage Endorsement. California insurance law as set forth in *Kennedy v. American Fidelity & Casualty Co.*, 97 Cal. App. 2d 315 (1950) is directly on point. Just like National Union here, the insurer in *Kennedy* breached its duty to defend and then sought to rely on an endorsement that required the insured to reimburse the insurer for any payment it made for the defense of the action. *Id.* at 317. *Kennedy* found the insurer's argument "more ingenious than convincing." *Id.* The court held that because the insurer did not pay for the insured's defense it "repudiated the policy entirely insofar as the accident in question is concerned" and thus the insurer was "in no position to rely upon one clause of [the policy] for the very purpose of continuing its denial of all liability under the policy." *Id.* Here, National Union similarly breached the Policies by refusing to defend, and is therefore not entitled to seek reimbursement under the Policies, or to rely on the Deductible Coverage Endorsement, that it repudiated. *See id.*

Any other result would defeat the intended purpose of the Deductible Coverage Endorsement. If National Union had a right to seek full reimbursement of defense costs that Yahoo had to incur while National Union maintained its incorrect denial of coverage, then National Union could breach its duty to defend without consequence. To allow National Union to be in the same position whether it accepts or wrongfully denies its duty to defend would lead to an absurd and unfair result.

National Union relies on inapposite cases, while ignoring the clear precedent set by *Kennedy*. 97 Cal. App. 2d at 317. For instance, in the unpublished *Hyundai Motor America v. National Union Fire Insurance Company of Pittsburgh, Pa.*, the breaching insurer was not required to pay loss of use damages for collateral posted on an appeal bond as the insurers were not required to post collateral under the policy terms. No. 08-0020, 2011 WL 13134897, *3 (C.D. Cal. Sept. 1, 2011). The insurers in *Hyundai* were required to pay all damages resulting from the failure to defend, including damages based on non-payment of bond premium, which was covered by the policies. *Id.* at *3. Unlike in *Hyundai*, National Union expressly agreed to defend Yahoo and to pay all defense costs. Neither *Hyundai* nor the other cases on which National Union cites are analogous, nor do the cases provide any basis for relieving National Union of its obligation to

pay Yahoo's defense costs as a result of its breach. *See e.g., Dobson v. Twin City Fire Ins. Co.*, No. 11-0192, 2015 WL 12698443, *8-9 (C.D. Cal. Aug. 5, 2015) (holding breaching insurer could rely on allocation provision in paying covered amounts but affirming that *Kennedy* would apply to insurer attempting to seek reimbursement of all defense costs); *SCI CA. Funeral Servs., Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450 (C.D. Cal. 2013) (holding fronting insurer was not necessary party to dispute between insured and excess insurer).

### C. National Union Breached Its Duty To Indemnify As A Matter Of Law.

#### 1. The *In re Yahoo Mail Litigation* Settlement Was For Covered Claims Of "Personal Injury."

The settlement in *In re Yahoo Mail Litigation* constitutes "sums that the insured becomes legally obligated to pay as damages because of 'personal injury'" covered by the Policy. Under California law, the undefined term "damages" must be construed broadly, consistent with an insured's reasonable expectations of coverage, to include "compensation, in money, recovered by a party for loss or detriment it has suffered through the acts of another." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 826 (1990) (internal quotation marks omitted); *see also Vandenberg v. Superior Court*, 21 Cal. 4th 815, 840 (1999) ("A reasonable layperson would certainly understand 'legally obligated to pay' to refer to any obligation which is binding and enforceable under the law, whether pursuant to contract or tort liability.").

Yahoo was legally obligated to pay "damages" to resolve claims of "personal injury" under the Policies. Specifically, Yahoo was ordered to pay $4 million for attorneys' fees and $5,000 to each class representative as a service award to compensate plaintiffs for their efforts in bringing a class action to implement changes to Yahoo's website and to modify other procedures that allegedly violated plaintiffs' privacy rights. (YMF ##28-31.) Notably, pursuant to the terms of the settlement, Yahoo is required to disclose on its webpage that "Yahoo may share keywords, package tracking and product identification numbers ***with third parties*** in order to enhance your user experience and provide targeted ads." (YMF ##28-29 (emphasis added).) In other words, Yahoo was required to pay these monetary damages of attorneys' fees and service awards to compensate plaintiffs for the detriment they purportedly suffered because of Yahoo's alleged

"publication" of private material. National Union's contention that "[n]owhere in the Approval Order is there any mention of a demonstrated, or even alleged, publication of private information to third parties[,]" is unsupported and ignores the clear language of the Court's Order Granting Final Approval.

In addition, Yahoo did not pay damages solely for "injunctive relief" as National Union claims. Indeed, the class representatives in *In re Yahoo Mail Litigation* expressly agreed to resolve their claims against Yahoo for "monetary damages" under the terms of the settlement. (YMF #31.) The settlement did not solely resolve claims for injunctive relief as National Union incorrectly represents in its Motion. The settlement is covered by the Policies as a matter of law.

California and federal courts have confirmed that attorneys' fees paid to plaintiffs constitute covered damages under a liability insurance policy. *See, e.g., Insurance Co. of Penn. v. City of Long Beach*, 342 Fed. Appx. 274, 277-78 (9th Cir. 2009) (applying California law); *Nat'l Cas. Co. v. Coastal Dev. Servs. Found.*, 171 F. App'x 680, 685 (9th Cir. 2006) (applying California law) (holding award of plaintiffs' attorneys' fees and costs was covered "damages" as the insured reasonably expected that a suit for equitable relief that included exposure to a monetary award of plaintiffs' attorneys' fees and costs would be covered); *Golden Eagle Ins. Co. v. Ins. Co. of the West*, 99 Cal. App. 4th 837, 851 (2002) ("We conclude that an insured with contractual liability coverage would reasonably expect that the indemnitee's attorney fees and costs are sums the insured becomes 'legally obligated to pay as *damages* because of' covered tort claims.") (emphasis in original). Yahoo reasonably expected that the Policies would provide coverage for class action claims against it seeking an award of attorneys' fees given the Policies' broad coverage for "those sums that the insured becomes legally obligated to pay as damages."

In *City of Long Beach*, the Ninth Circuit, applying California law, held that attorneys' fees awarded in the underlying Fair Housing Act (FHA) action constituted covered "damages" under the liability insurance policies at issue. *Long Beach*, 342 Fed. Appx. at 277-78. The *City of Long Beach* court relied on the general principle set forth by the California Supreme Court in *AIU* that, when language in a policy remains ambiguous after the reasonable expectations of the parties have been considered, this ambiguity is generally resolved in favor of coverage. *Id.* at 278 (citing *AIU*,

51 Cal. 3d at 822). Because the term "damages" is not defined, and courts across the country have come to different conclusions as to whether attorneys' fees constitute "damages" under a liability policy, the term damages is unclear and thus must be resolved in favor of coverage. *Id.*

*Cutler–Orosi Unified School District v. Tulare County School Etc. Authority*, 31 Cal. App. 4th 617 (1994) is inapplicable because the court's decision was limited to the statute at issue, which explicitly referred to attorneys' fees as "costs," which were excluded under the applicable policy. Here, plaintiffs settled for attorneys' fees and service awards incurred in bringing a class action for the benefit of others pursuant to a settlement agreement—not a statutory fee award. Unlike the attorneys' fees in *Culter-Orosi*, the attorneys' fees provided by the settlement agreement are not for the sole purpose of reimbursing the class action litigants for the expense incurred in seeking relief. Instead, attorneys' fees in the class action context actually do constitute the reason class action plaintiffs (who are seeking relief for multiple individuals of the class) bring an action in the first instance. *See, e.g., Universal Underwriters v. Lou Fusz Automotive*, 401 F.3d 876 (8th Cir. 2005) (explaining that damages available under statutory scheme for class action serve as an incentive for private parties to enforce the Telephone Consumer Protection Act).

### 2. National Union Has To Pay For The Settlement Of The Claims It Erroneously Failed To Defend In *Holland*.

Under well-established California law, "if an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." *Isaacson v. California Ins. Guarantee Ass'n*, 44 Cal. 3d 775, 791 (1988) (internal quotations omitted). Stated differently, an insurer that refuses to defend is liable for all damages "because of its refusal—even though, had it defended the third-party action, it might have escaped liability for the resulting judgment." *Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825, 833-34 (1997) ("*Amato II*") (holding insurer liable for full amount of default judgment that was proximately caused by its breach of the duty to defend and recoverable regardless of coverage). This includes settlements entered by the insured that are proximately caused by the insurer's breach of the duty to defend. *See id*; *see also Gray*,

65 Cal. 2d at 280-81 (damages for breach of the duty to defend are not limited to defense costs).

Like the default judgment in *Amato II*, Yahoo's settlement in *In re Yahoo Mail Litigation* was the proximate and foreseeable result of National Union's improper denial of its duty to defend in *Holland*. Yahoo was forced to defend itself in the litigation, without the assistance and resources of National Union. Yahoo settled the litigation to avoid significant defense costs in protracted litigation and trial. Had National Union honored its Policy obligation and provided a full defense to Yahoo, the scope of the defense and the outcome of the case may have been different. Without the assistance of National Union, Yahoo had to make decisions based solely on its own evaluation of the merits of the claim and continued self-funding of the defense. National Union is thus liable for the damages Yahoo paid in settlement, which were proximately caused by National Union's failure to defend. *See, e.g., Amato II*, 53 Cal. App. 4th at 834.

### D. **National Union Breached The Implied Covenant Of Good Faith And Fair Dealing**.

The covenant of good faith and fair dealing implied in every contract assumes peculiar importance in insurance law because it may support the recovery of a tort measure of damages. *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958). "In general, the standard of good faith and fairness calls for consideration of the reasonableness of the insurer's conduct." *Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000). An insurer's failure to investigate may constitute unfair dealing when the insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages. *Id.* Accordingly, where the insurer has denied coverage unreasonably, it is liable in tort. *Id.*

National Union's denial of its duty to defend in the Email Scanning Cases was unreasonable as a matter of law. There is no dispute that the allegations in the original *Holland* complaint, and in *Sutton* and *Penkava* all triggered National Union's duty to defend for the reasons set forth above. And National Union had in its possession the relevant and complete copies of the policies and complaints alleging potentially covered claims. National Union, unreasonably and in bad faith, nonetheless issued denial letters including reference to the deleted exclusions. Such conduct demonstrates a wrongful pattern and practice of relying on non-existent

exclusions, including the "Insureds Engaging In Media And Internet Type Activities" to deny coverage. *See Mt. Hawley Ins. Company v. Lopez*, 215 Cal. App. 4th 1385, 1425 (2013) (finding that insurer's refusal of a defense based on an exclusion that was not part of the policy was evidence of bad faith).

Even when National Union agreed to defend *Holland* in February 2015, National Union claimed that the Personal Injury Endorsement was "missing" from its copy of the Policy and tried to blame Yahoo for not providing it. National Union also attempted to suggest that Yahoo was somehow responsible for National Union's delay in accepting its duty to defend on *In re Yahoo Mail Litigation* because Yahoo had not provided a copy of the consolidated complaint. But the allegations in the original *Holland* complaint are the same ones that National Union agreed triggered coverage in *In re Yahoo Mail Litigation*, meaning that National Union unreasonably failed to investigate the claims. And the allegations in *Sutton* and *Penkava* are nearly identical to the allegations in *Holland* on which National Union agreed to provide a defense. But yet, National Union cannot explain why it finally acknowledged its duty to defend *Holland* but not *Sutton* and *Penkava.* National Union's inconsistent positions further demonstrate its positions are unreasonable. *See Mt. Hawley,* 215 Cal. App. 4th at 1424 (finding factual issues preventing summary judgment on bad faith where insurer adopted inconsistent positions on defense for similar claims without explanation).

It is "doubtful" that the so-called "general dispute" doctrine applies to third party duty to defend cases like this one. *Mt. Hawley*, 215 Cal. App. 4th at 1424. National Union's argument that the doctrine applies here is unsupported by the cases on which it purports to rely. *See Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co*., 90 Cal. App. 4th 335, *as modified on denial of reh'g* (July 30, 2001) (holding that there was a genuine dispute under first party homeowners' policy where facts regarding amount of loss were disputed); *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 286 (2005) (holding that insurer's coverage decision was objectively reasonable in light of unsettled nature of case law).

Even if the doctrine did apply, National Union does not provide any evidence to support its claim that its denials in *Holland* or in *Sutton* and *Penkava* were based on a "genuine dispute" as to

any of the legal or factual issues. In *Holland*, National Union initially denied coverage for the exact same allegations that it then accepted two years later. The only reason for this delay appears to be that National Union deliberately ignored the covered allegations in the original *Holland* complaint. Not only did National Union overlook the covered allegations, but when it was confronted by Yahoo two years later, National Union did not concede that it had made a mistake or suggest that there was a genuine dispute as to coverage. Instead, National Union attempted to blame Yahoo for not notifying National Union about the Personal Injury Endorsement or the allegations in the *In re Yahoo Mail Litigation* Consolidated Complaint sooner. But as discussed above, both these "arguments" are inaccurate because neither the endorsement or the consolidated complaint changed the fact that National Union had a duty to defend over two years earlier.

Nor is National Union entitled to any deference because Yahoo somehow waited to dispute its denial of coverage. Yahoo did not have any obligation to raise the Personal Injury Endorsement at an earlier date; and National Union's argument to the contrary is absurd. To be clear, National Union denied coverage for *Holland* because National Union concluded that the claim did not fall within the coverage grant, and National Union reserved its rights under at least six different exclusions that it contended might also bar coverage. The Personal Injury Endorsement ***does not change*** the language of the applicable coverage grant, and it only removes two of the exclusions. No reasonable insured would believe that raising the Endorsement with National Union would result in a complete change of its coverage position under these circumstances. The reason Yahoo reached out to National Union was because it was in the process of entering a settlement and believed it would be worthwhile to make one final attempt to change National Union's position. While the implied covenant of good faith and fair dealing may be a "two-way street" as National Union suggests, National Union has not, and cannot, present any evidence that Yahoo has done anything here that would qualify as a breach of contract. *C.f., California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 56 (1985) (holding that insured's failure to give proper notice of the claim made insurer's breach reasonable).

Rather than present evidence to support its contention that National Union acted in good faith – because apparently there is none – National Union refers only to a an article written by

Yahoo's counsel regarding best practices for litigators dealing with insurance issues. This article does not suggest that an insured has any obligation to dispute an insurer's coverage denial. Instead, it merely recommends that litigators examine coverage denials and reservations of rights for any errors. National Union's conduct here was not a simple error. National Union deliberately overlooked applicable policy language and allegations triggering coverage in breach of the implied covenant of good faith and fair dealing; the article's "best practices" suggestion does nothing to change that.

Finally, because National Union's tortious conduct has reasonably compelled Yahoo to retain counsel to obtain the benefits due under the Policies, National Union is liable in this action for Yahoo's attorneys' fees. *See Brandt v. Superior Court,* 37 Cal. 3d 813, 817 (1985).

## III. CONCLUSION

National Union breached its duty to defend and to indemnify Yahoo in the Email Scanning Cases as a matter of law, and it cannot present any material dispute of fact to the contrary. Such breaches were unreasonable and in bad faith. Yahoo therefore requests summary judgment on Counts I, II, and III of Yahoo's Complaint as follows:

1. National Union breached its duty to defend Yahoo with respect to the Email Scanning Cases;
2. National Union breached its duty to indemnify Yahoo with respect to the Email Scanning Cases;
3. National Union breached the implied covenant of good faith and fair dealing; and
4. Yahoo shall be awarded all costs of suit.

DATED: February 6, 2018

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/William T. Um*
WILLIAM T. UM
HEATHER W. HABES
Attorneys for Plaintiff
Yahoo! Inc.