1  MATTHEW C. LOVELL (SBN: 189728)
2  mlovell@nicolaidesllp.com
   LAURA H. SMITH (SBN: 136117)
3  lsmith@nicolaidesllp.com
   NICOLAIDES FINK THORPE
4  MICHAELIDES SULLIVAN LLP
   101 Montgomery Street, Suite 2300
5  San Francisco, CA 94104
   Telephone:    (415) 745-3770
6  Facsimile:    (415) 745-3771

7
   DANIEL I. GRAHAM, JR. (Appearance *Pro Hac Vice*)
8  dgraham@nicolaidesllp.com
   NICOLAIDES FINK THORPE
9  MICHAELIDES SULLIVAN LLP
   10 S. Wacker, 21st Floor
10 Chicago, IL 60606
   Telephone:    (312) 585-1400
11 Facsimile:    (312) 585-1401

12
   Attorneys for Defendant NATIONAL UNION
13 FIRE INSURANCE COMPANY OF
   PITTSBURGH, PA, a Pennsylvania Corporation
14

15                  **UNITED STATES DISTRICT COURT**

16           **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

17 | YAHOO! INC., a Delaware corporation, | Case No. 5:17-CV-00489-EJD |
   | | |
18 | Plaintiff, | **NATIONAL UNION FIRE INSURANCE** |
   | | **COMPANY OF PITTSBURGH, PA'S** |
19 | | **REPLY IN SUPPORT OF MOTION FOR** |
   | v. | **SUMMARY JUDGMENT/OPPOSITION** |
20 | | **TO YAHOO! INC.'S CROSS-MOTION** |
   | NATIONAL UNION FIRE INSURANCE | **FOR SUMMARY JUDGMENT** |
21 | COMPANY OF PITTSBURGH, PA, a | |
   | Pennsylvania corporation, | **Accompanying Documents**: National Union's |
22 | | Reply to Yahoo's Separate Statement re Cross- |
   | Defendant. | Motion for Summary Judgment; Declaration of |
23 | | Daniel I. Graham, Jr. |
24 | | |
   | | Date:    Thursday, March 15, 2018 |
25 | | Time:    9:00 a.m. |
   | | Dept.:    4 |
26 | | Judge:    Hon. Edward J. Davila |
27

28

# TABLE OF CONTENTS

I.   SUMMARY OF OPPOSITION .................................................................................. 1

II.  CORRECTING YAHOO'S FACTUAL MISSTATEMENTS ......................................... 2

III. ARGUMENT ........................................................................................................ 3

    A.  National Union Did Not Have a Duty to Defend the *Sutton* and *Penkava* Lawsuits Because They Did Not Allege Yahoo Shared Personal Information with Third Parties ............................................................................................................... 3

    B.  National Union Did Not Breach a Duty to Defend the *Holland* Lawsuit or the *In re Yahoo Mail Litigation.* .................................................................................... 4

    C.  National Union Is Entitled to Rely on the 2011 Policy's Deductible Endorsement.... 7

    D.  National Union Has No Duty to Indemnify Yahoo for the *In re Yahoo Mail Litigation* Settlement Because It Does Not Constitute Damages Because of Personal Injury. .................................................................................................. 10

    E.  The *In re Yahoo Mail Litigation* Settlement Was Not the Direct Result of a Breach of the Duty to Defend the *Holland* Lawsuit. ................................................ 13

    F.  Yahoo's Bad Faith Claim Fails Because National Union Acted Reasonably. .......... 14

IV.  CONCLUSION.................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*AIU Ins. Co. v. Superior Court,*
  51 Cal.3d 807 (1990) ................................................................. 13

*Amato v. Mercury Casualty Co.,*
  53 Cal. App. 4th 825 (1997) ................................................ 13, 14

*Blue Ridge Ins. Co. v. Jacobsen,*
  25 Cal. 4th 489 (2001) ............................................................. 10

*California Shoppers, Inc. v. Royal Globe Ins. Co.,*
  175 Cal. App. 3d 1 (1985) ......................................................... 14

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,*
  90 Cal. App. 4th 335 (2001) ................................................ 14, 15

*Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch. etc. Auth.,*
  31 Cal. App. 4th 617 (1994) ...................................................... 11

*Etchell v. Royal Ins. Co.,*
  165 F.R.D. 523 (N.D. Cal. 1996) ............................................... 10

*Friedman Prof. Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.,*
  120 Cal. App. 4th 17 (2004) ........................................................ 4

*Golden Eagle Ins. Co. v. Ins. Co. of the West,*
  99 Cal. App. 4th 837 (2002) ...................................................... 12

*Gunderson v. Fire Ins. Exch.,*
  37 Cal. App. 4th 1106 (1995) ...................................................... 4

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.,*
  10 Cal. App. 4th 533 (1992) ........................................................ 4

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
  No. 08-0020, 2011 WL 13134897 (C.D. Cal. Sept. 1, 2011) ................... 9

*Ins. Co. of North Am. v. National Am. Ins. Co. of Calif.,*
  37 Cal. App. 4th 195 (1995) ...................................................... 11

*Insurance Co. of Penn. v. City of Long Beach,*
  342 F. Appx. 274 (9th Cir. 2009) ............................................... 12

*Intergulf Development v. Superior Court,*
  183 Cal. App. 4th 16 (2010) ........................................................ 5

*Janopaul + Block Cos., LLC v. Superior Court,*
  200 Cal. App. 4th 1239 (2011) ..................................................... 4

*Kennedy v. American Fidelity & Cas. Co.*,
  97 Cal. App. 2d 315 (1950) ................................................................. 10

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*,
  34 Cal. 4th 960 (2004) ........................................................................ 7

*National Casualty Co. v. Coastal Develop. Services Found.*,
  171 F. Appx. 680 (9th Cir. 2006) ..................................................... 12

*Nordby Construction, Inc. v. American Safety Indem. Co.*,
  2015 WL 1737654 (N.D. Cal. 2015) ................................................. 8

*Pepsi-Cola Metropolitan Bottling Co., Inc. v. Ins. Co. of North Am., Inc.*,
  2010 WL 10875087 (C.D. Cal. 2010) ............................................... 5

*R & B Auto Ctr., Inc. v. Farmers Group, Inc.*,
  140 Cal. App. 4th 327 (2006) .......................................................... 14

*SCI CA. Funeral Services, Inc. v. Westchester Fire Ins. Co.*,
  288 F.R.D. 450 (C.D. Cal. 2013) ..................................................... 8

*State Farm Gen. Ins. Co. v. Mintarsih*,
  175 Cal. App. 4th 274 (2009) ............................................................ 9

*State v. Pacific Indem. Co.*,
  63 Cal. App. 4th 1535 (1998) ............................................................ 7

*The Housing Group v. PMA Capital Ins. Co.*,
  193 Cal. App. 4th 1150 (2011) .......................................................... 5

*The Upper Deck Co., LLC v. Fed. Ins. Co.*,
  358 F. 3d 608 (9th Cir. 2004) ........................................................... 4

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*,
  401 F.3d 876 (8th Cir. 2005) ........................................................... 12

*Woodliff v. Calif. Ins. Guarantee Ass'n*,
  110 Cal. App. 4th 1690 (2003) .......................................................... 9

**Statutes**

18 U.S.C.A. § 2707 ................................................................................. 12

18 USC § 2510 ......................................................................................... 6

18 USC § 2701 ......................................................................................... 6

Cal. Penal Code § 630 .............................................................................. 3

Cal. Penal Code §§ 631 and 637.2 ........................................................... 6

California Civil Code Section 2860 ................................................................. 8

California Civil Code Section 3358 ............................................................. 7, 10

California Code of Civil Procedure § 1033.5(a)(10) ................................... 11

**Other Authorities**

*Cal. Practice Guide: Ins. Litig.* (2012) ........................................................ 8

1

I.      **SUMMARY OF OPPOSITION**

2

Far from "simply requesting this Court to enforce the terms of the policies as they are

3

written," (see Yahoo Opposition ECF No. 53 ("Opp.")) at p. 3, Yahoo seeks to rewrite the

4

Personal Injury coverage and to delete the reimbursement obligations Yahoo negotiated and

5

elected.  The legal issues before this Court, which National Union sets forth in its opening brief

6

at page 3, are straightforward:

7

National Union had no duty under its Personal Injury coverage to defend the *Sutton* and

8

*Penkava* lawsuits because the lawsuits did not allege that Yahoo shared the claimants' personal

9

information with third parties, and therefore did not potentially involve an oral or written

10

*publication* of material that violates a person's right of privacy (the "Privacy Offense").

11

National Union is entitled to enforce its right to reimbursement of Yahoo's defense costs

12

in connection with the *Holland/In re Yahoo Mail Litigation* pursuant to the Deductible Coverage

13

Endorsement to the 2011 Policy, because National Union agreed to defend those matters under

14

that fronting policy.  Any other outcome would place Yahoo in a better position than had the

15

policy been performed in the first instance – an outcome California law does not permit.

16

National Union has no duty to indemnify Yahoo for the settlement of the *In re Yahoo*

17

*Mail Litigation* because the attorneys' fees and litigation costs that Yahoo agreed to pay do not

18

constitute damages covered by the 2011 Policy.

19

Finally, National Union's initial belief that the 2011 Policy was not amended by the

20

Personal Injury endorsement was a mistake – and one that National Union has endeavored to

21

correct.  Yahoo does not offer any facts, disputed or otherwise, demonstrating that National

22

Union's disclaimer was a conscious and deliberate wrongful act against Yahoo.  Therefore,

23

Yahoo's breach of the implied covenant of good faith and fair dealing fails.

24

Yahoo's claims against National Union are not viable, for all these reasons.  National

25

Union therefore respectfully requests that this Court deny Yahoo's cross-motion for summary

26

judgment and grant summary judgment in National Union's favor.

27

28

## II.   CORRECTING YAHOO'S FACTUAL MISSTATEMENTS

Throughout this reply, National Union will correct the factual inaccuracies in Yahoo's papers.  At the outset, however, National Union wishes to address the following misstatements:

- Yahoo asserts that it requested National Union reconsider its prior denial *and* agree to fund the settlement of the *In re Yahoo Mail Litigation* in its letter dated November 20, 2015.  To the contrary, that letter made no reference to settlement of the *In re Yahoo Mail Litigation*.  Yahoo's first notice to National Union of the preliminary settlement of the *In re Yahoo Mail Litigation* was in Yahoo's email dated January 27, 2016.  *See* National Union's Am. Separate Stmt. of Facts, ECF No. 49 ("SSF") 25.

- In characterizing National Union's January 15, 2014 coverage position letter regarding the *Holland* lawsuit, Yahoo represents that "National Union did not deny coverage based on any exclusion in the [2011] Policy.  It simply reserved its rights under several exclusions, the majority of which were not altered by the [Personal Injury] endorsement." Opp. at 14.  This, too, is incorrect, because National Union relied on Exclusion 2(j) as an additional basis to deny coverage.  In its January 15, 2014 letter, National Union wrote:

  > Exclusion 2(j) entitled "Insureds in Media And Internet Type Businesses" provides that the insurance does not apply to personal and advertising injury committed by an insured whose business is "…advertising, broadcasting, publishing or telecasting…Designing or determining content of websites for others…an internet search, access, content or service provider." The [*Holland*] Lawsuit alleges that Yahoo! operates a webmail or web-based email service known as "Yahoo! Mail." In addition, Yahoo! is an internet search and service provider. *Accordingly, the exclusion for Insureds In Media And Internet Type Businesses in the Policies bars coverage for the Lawsuit and the Company relies on this exclusion as an additional basis to deny coverage for this claim*. (SSF 19, Lovell Decl. Ex. 10 emphasis added)

  The "Personal Injury endorsement" (titled "Coverage B – Personal Injury" and identified on the form as "Yahoo PI Manuscript End") deleted Exclusion 2(j) from the 2011 Policy.

- Yahoo asserts that National Union denied coverage for the *Holland* lawsuit for "two years," and that Yahoo reached out to National Union because Yahoo was in the process of entering into a settlement and "believed it would be worthwhile to make one final attempt to change National Union's position."  Opp. at 24.

To be clear, National Union denied coverage for the *Holland* lawsuit only once – in its January 15, 2014 position letter.  Yahoo, likewise, asked that National Union reconsider its disclaimer only once, almost two years later – in its November 20, 2015 correspondence.  National Union withdrew its denial after investigating the existence of and confirming that the Personal Injury endorsement deleted Exclusion 2(j) from the 2011 Policy, and agreed to defend Yahoo under the 2011 Policy pursuant to a reservation of rights.  SSF 19, 22-23.

## III.   ARGUMENT

### A.   National Union Did Not Have a Duty to Defend the *Sutton* and *Penkava* Lawsuits Because They Did Not Allege Yahoo Shared Personal Information with Third Parties.

Contrary to Yahoo's assertions, the *Holland* lawsuit was not a "copycat" of *Sutton* and *Penkava*.  Whereas the *Holland* lawsuit alleged that Yahoo sold personal information and marketed "personal data" to third-parties,[1] the *Sutton* and *Penkava* lawsuits contained no such allegations.  Instead, *Sutton* and *Penkava* alleged that Yahoo engaged in unlawful and wrongful wiretapping or eavesdropping in violation of the California Invasion of Privacy Act, Cal. Penal Code § 630, et seq. ("CIPA"), by intercepting and reviewing e-mails before delivery to Yahoo e-mail subscribers without their consent or knowledge.  SSF 13, 14.  As explained at pages 9-10 of National Union's motion for summary judgment (ECF No. 45), as a matter of California law these lawsuits did not allege injury arising out of Yahoo's oral or written *publication* of material that violates a person's right of privacy.  As such, they did not implicate the Privacy Offense, and National Union did not owe a duty to defend Yahoo under the Policies' Personal Injury coverage.

Yahoo attempts to overcome the absence of allegations of a publication of private information in the *Sutton* and *Penkava* lawsuits by arguing allegations that Yahoo "profited" from the information it gleaned from reading other people's email compels the conclusion that Yahoo necessarily shared private information with third parties.  However, the potential for coverage is determined by an examination of the facts and theories *actually* alleged against the

---

[1] *See* Additional Fact No. 3, set forth in National Union's Reply to Yahoo's Separate Statement, filed concurrently.

insured.  *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995).  An insured is not entitled to a defense just because it can imagine some plausible facts that would create a potential for coverage.  *Friedman Prof. Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 34-35 (2004) (duty to defend is not triggered by "made up facts, just because those facts might naturally be supposed to exist along with the known facts").  Nor can an insured rely on unpled hypothetical claims to manufacture coverage.  *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538 (1992); *The Upper Deck Co., LLC v. Fed. Ins. Co.*, 358 F. 3d 608, 615 (9th Cir. 2004) (California law).  That Yahoo allegedly profited from its activities does not compel the inference that Yahoo shared private information with third parties.  National Union had no duty to defend *Sutton* or *Penkava* because those lawsuits neither alleged nor suggested that Yahoo shared plaintiffs' information with others.

Moreover, under California law, "the universe of facts bearing on whether a claim is potentially covered includes extrinsic facts known to the insurer *at the inception of the suit* [.]" *Friedman*, 120 Cal. App. 4th at 34-35 (emphasis added).  *Sutton* and *Penkava* were initiated (and dismissed) prior to the *Holland* lawsuit's filing.  Because the *Sutton* and *Penkava* lawsuits did not allege injury arising out of Yahoo's publication of material that violates a person's right of privacy, National Union did not owe Yahoo a duty to defend, irrespective of any allegations that were asserted in the *Holland* lawsuit, after *Sutton* and *Penkava* were dismissed.  There is no inconsistency in National Union's coverage positions.  In addition, as previously explained, the Criminal Acts exclusion bars coverage for the *Sutton* and *Penkava* suits.  *See* ECF 45 at 10-11.

**B.      National Union Did Not Breach a Duty to Defend the *Holland* Lawsuit or the *In re Yahoo Mail Litigation*.**

Yahoo mistakenly asserts that National Union's "two-year delay" in retracting its disclaimer of the *Holland* lawsuit is a breach of the duty to defend "as a matter of law."  The cases on which Yahoo relies do not make that pronouncement.  *See Janopaul + Block Cos., LLC v. Superior Court*, 200 Cal. App. 4th 1239, 1251, fn. 9 (2011) ("[W]e do not decide in this proceeding whether the delay by [insurer] in accepting the tender of defense and reserving its rights constituted a breach of duty/bad faith"); *Intergulf Development v. Superior Court*, 183 Cal.

App. 4th 16, 22 (2010) (observing insurer's breach of duty to defend had yet to be demonstrated); *The Housing Group v. PMA Capital Ins. Co.*, 193 Cal. App. 4th 1150, 1158 (2011) ("[O]ur decision should not be read as expressing an opinion on any issues to be resolved in plaintiffs' lawsuit against [insurer]," as distinct from petition to compel fee arbitration).[2] Moreover, the decisions are factually distinguishable because they involved delays caused by the insurer after acknowledging coverage or by never responding to the tender at all.

In this case, however, it is disingenuous of Yahoo to attribute the "two-year delay" wholly to National Union. National Union's January 15, 2014 coverage position letter was issued by a claims professional different than the one who handled the *Sutton* and *Penkava* lawsuits, who was no longer employed by National Union. The January 15, 2014 letter did not reference the Yahoo manuscript Personal Injury endorsement when it denied coverage for the *Holland* lawsuit under the 2011 Policy and subsequently-issued policy (the "2012 Policy"). The letter, which expressly requested that Yahoo provide National Union "as soon as possible" any information that revealed the possibility the provisions cited in the coverage position letter did not apply, was addressed to Dan Tepstein, whose declaration supports Yahoo's cross-motion. The letter also copied Sally Bracho of ABD Insurance & Financial Services, the broker whom Yahoo identifies as having corresponded with National Union's prior claims professional, who was no longer employed by National Union, in the fall of 2012 about that Personal Injury endorsement to the 2011 Policy. SSF 20, Lovell Decl. Ex. 10. National Union received no immediate response to its January 15, 2014 letter from anyone on Yahoo's behalf.

It was not until November 20, 2015, that Yahoo first requested National Union reconsider its disclaimer for the *Holland* lawsuit under the 2011 and 2012 Policies.[3] Citing the Personal

---

[2] The court in *Pepsi-Cola Metropolitan Bottling Co., Inc. v. Ins. Co. of North Am., Inc.*, 2010 WL 10875087 (C.D. Cal. 2010), considered the effect of a delay up to two years in an insurer's payment of defense costs after agreeing to defend. Late payment is not an issue here. National Union tried to rectify the situation by advising Yahoo of National Union's intention to pay Yahoo's defense costs, subject to reimbursement under the Deductible Endorsement. Yahoo indicated it would "prefer not to have to go through the unnecessary exercise of having National Union issue a payment simply for National Union to request reimbursement right back from Yahoo." *See* Nat'l Union's Additional Fact Nos. 7 and 8 in National Union's Reply to Yahoo's Separate Statement.

[3] Yahoo takes issue that National Union did not evaluate the 2010 Policy in its reconsideration. The *Holland* lawsuit did not implicate that policy's policy period and Yahoo did not request reconsideration under that policy.

Injury endorsement, Yahoo asserted that National Union had improperly sought to rely on exclusions the endorsement had deleted, among them, Exclusion 2(j) ("Insureds in Media And Internet Type Businesses.")[4]  Yahoo's request for reconsideration did not include a copy of the Personal Injury endorsement but did alert National Union that its denial may have been based on the review of an incomplete copy of the policy.  SSF 22.  As a result, National Union conducted its own investigation, confirming that the 2011 Policy contained the endorsement and the 2012 Policy did not.  Thereafter, National Union maintained its disclaimer of coverage under the 2012 Policy, and agreed under the 2011 Policy to defend Yahoo in the *Holland* lawsuit.[5]  SSF 23.

Why Yahoo chose to wait until November 20, 2015 to raise the Personal Injury endorsement is unclear.  Either Yahoo, like National Union's claims professional, was initially mistaken that the 2011 Policy was modified by the endorsement, or Yahoo knew National Union's January 15, 2014 coverage position letter was incorrect at the time it was received and chose to say nothing.  In any case, under these facts, Yahoo's decision not to provide National Union with the additional information National Union requested for twenty-two months contributed to the "two-year delay" with which Yahoo takes issue.

But Yahoo did more than just request reconsideration of the *Holland* lawsuit in its November 20, 2015 correspondence.  Yahoo also provided National Union first notice of the *In re Yahoo Mail Litigation*, which alleged causes of action for violations of the Federal Stored Communications Act (18 USC § 2701, et seq.), the California Invasion of Privacy Act (Cal. Penal Code §§ 631 and 637.2), Article 1, Section 1 of the California Constitution, and the Federal Wiretap Act (18 USC § 2510, et seq.).  Notably, the *In re Yahoo Mail Litigation*'s Consolidated Class Action Complaint and Amended Consolidated Class Action Complaint were filed on February 12, 2014 and June 9, 2015, respectively, *after* National Union issued its January 15, 2014 position letter.  Yahoo did not forward those pleadings to National Union,

---

[4] Curiously, Yahoo asserts that "No reasonable insured would believe that raising the Endorsement with National Union would result in a complete change of its coverage position under these circumstances."  Opp. at 24.  However, that is precisely what Yahoo requested.
[5] The 2012 Policy was initially at issue in this coverage action, but Yahoo later amended its complaint to delete the 2012 Policy from this dispute.

despite National Union's request in its position letter that, "if [Yahoo is] served with any additional demands or pleadings, please forward them to [National Union] immediately so that we can review our coverage position."  SSF 20, Lovell Decl. Ex. 10.

In short, National Union retracted its disclaimer of coverage under the 2011 Policy for the *Holland* lawsuit after Yahoo advised National Union of the Personal Injury endorsement and National Union agreed to defend Yahoo under reservation in the newly-tendered *In Re Yahoo Mail Litigation*.  Under these facts, National Union did not breach its duty to defend.

## C.     National Union Is Entitled to Enforce the 2011 Policy's Deductible Endorsement.

National Union denies a breach of the duty to defend on these facts.  But even so, a breach of the duty to defend would not permit Yahoo to transform the fronting policy it negotiated and purchased into a completely different type of insurance program.  "Contract damages serve to put the party in as good a position as it would have been had performance been rendered as promised."  *State v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1556 (1998).  Yahoo is "entitled to damages that will make it whole, but no more."  *Id.*  California Civil Code Section 3358 likewise provides that "no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."  *See Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 968 (2004) ("[P]laintiff is entitled to damages that are equivalent to the benefit of the plaintiff's contractual bargain. … The injured party's damages cannot, however, exceed what it would have received if the contract had been fully performed on both sides").

In the Deductible Endorsement, Yahoo agreed to reimburse National Union up to the Deductible Limit(s) shown in the Schedule for any amounts National Union pays as damages.  In addition, Yahoo agreed to reimburse National Union not just some but *all* "Allocated Loss Adjustment Expense" (i.e., attorneys' fees and "any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against" Yahoo) that National Union pays as Supplementary Payments.  Because contract damages serve to put Yahoo in as good a position as it would have been in had performance been rendered

under the 2011 Policy as promised, National Union is entitled to seek reimbursement from Yahoo of any amounts National Union pays as defense costs under the Deductible Endorsement.

To escape its reimbursement obligations, Yahoo offers several unavailing arguments. Preliminarily, Yahoo contends that the Deductible Endorsement served to provide Yahoo "assurance and peace of mind that National Union will oversee and handle matters that trigger the Policies[.]"  Opp. at 17.  According to Yahoo, it would have given the burden of managing the *Holland* lawsuit over to National Union and then – "theoretically" – National Union would bill Yahoo at the conclusion of the litigation to seek reimbursement of the defense costs National Union incurred.  Yahoo reasons that, because it purportedly did not receive this "peace of mind," National Union is not entitled to rely on the Deductible Endorsement that formed part of the insurance contract.  But the factual record contradicts Yahoo's assertions.

National Union would not have been able to "step in, help retain counsel, [and] oversee the defense," as Yahoo suggests.  National Union's February 16, 2016 amended position letter confirms that National Union's reservations created a conflict of interest that entitled Yahoo to designate independent counsel pursuant to California Civil Code Section 2860.  Accordingly, Yahoo's premise that National Union would have controlled and overseen Yahoo's defense of the *Holland* lawsuit is incorrect.

Moreover, the 2011 Policy is a fronting policy, which "do[es] not transfer the risk of loss from the policyholder to the insurer."  *SCI CA. Funeral Services, Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450, 454 (C.D. Cal. 2013).  Instead, the arrangement allows the insured to retain the risk (and minimize the cost of insurance) because the insurer expects to be indemnified for any loss that the insurer may be required to pay, and has rated the policy accordingly.  *Id.*; quoting *Croskey, et al. Cal. Practice Guide: Ins. Litig.* (2012) §§ 1:53.10-11, 7.392.1.  A fronting policy allows an insured to "functionally self-insure."  *Nordby Constr., Inc. v. American Safety Indem. Co.*, 2015 WL 1737654, at *6 (N.D. Cal. 2015).  Finally, under the terms of the Payment Agreement to the 2011 Policy, Yahoo was required to pay loss and ALAE in excess of $10,000 within 30 days of invoice.  Consequently, Yahoo's assertion that it was

1  deprived of its ability to shift the risk and financial hardship of the *Holland* lawsuit to National

2  Union is inaccurate.

3      Yahoo's reasoning that the Deductible Endorsement is inapplicable because any

4  amounts National Union now pays would not constitute defense costs for purposes of the 2011

5  Policy's "Supplementary Payments" provision is similarly flawed.[6]  To the extent an insurer has

6  an obligation to pay defense costs, that obligation necessarily arises under the "Supplementary

7  Payments" provision:  "[I]t is the duty to defend that triggers coverage under a supplemental

8  payments provision, not the actual provision of a defense."  *Nordby Construction,* 2015 WL

9  1737654, at *13 (holding whether insurer did or did not defend was "not material" to analysis of

10 supplementary payments provision); *see also State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal.

11 App. 4th 274, 285 (2009) ("[U]nder a supplemental payments provision ... an insurer is

12 obligated to pay costs ... only if the insurer had a duty to defend the insured, regardless of

13 whether the insurer actually provided a defense.").  Yahoo's defense costs are payable by

14 National Union, if at all, as "Supplementary Payments."  And such amounts are clearly

15 "Allocated Loss Adjustment Expense," as defined by the Deductible Endorsement, in that they

16 are "chargeable to the "defense of a loss or a claim or suit against" Yahoo.  As such, those

17 disputed costs are subject to the Deductible Endorsement.

18      Yahoo's assertion that National Union, as a "breaching insurer," cannot enforce the

19 Deductible Endorsement is, likewise, incorrect.  Even assuming one exists, a breach of the duty

20 to defend does not nullify policy terms or impose on an insurer obligations it did not assume.

21 *See, e.g., Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2011 WL

22 13134897, at *3-4 (C.D. Cal. 2011)(insurer's breach of the duty to defend does not entitle

23 insured to delete from the policy provisions contained therein).

24

25 ───────────────

26 [6] Yahoo cites *Woodliff v. Calif. Ins. Guarantee Ass'n*, 110 Cal. App. 4th 1690 (2003), for the general proposition that "loss adjustment expense" means expense incurred by the *insurer* to defend claims against the insured is overstated. The precise question before the court was whether a breach of contract judgment fell within an exception to "covered

27 claims" as defined in the statutory scheme of the California Insurance Guarantee Association.  The court expressly stated that its holding was "limited to the situation presented" involving an insolvent insurer.  Moreover, the Deductible

28 Endorsement has its own definition of what constitutes "Allocated Loss Adjustment Expense."

Yahoo erroneously contends that *Kennedy v. American Fidelity & Cas. Co*., 97 Cal. App. 2d 315 (1950), a decision in which the court held that an insurer that breached a duty to defend and repudiated its policy could not rely on a reimbursement provision to continue to deny liability, is "clear precedent" on the issue before this Court.   Absent from *Kennedy* is consideration of California Civil Code Section 3358 or any authority supporting its determination.   The few courts to consider the four-paragraph decision in the 68 years since its issuance have limited *Kennedy* to those instances where an insurer completely repudiates its policy.   *See, e.g., Etchell v. Royal Ins. Co.*, 165 F.R.D. 523, 553 (N.D. Cal. 1996) (observing *Kennedy* suggests a rule that insurer which has denied coverage from "using provisions of the repudiated contract that imposed duties on the insureds as <u>additional bases</u> for denying *any and all liability* under the policies.") (Underscore added, italics in original)

Yahoo is nothing like the bankrupt insured whose trustee filed suit in *Kennedy*. Moreover, as explained above, National Union did not completely repudiate the 2011 Policy in connection with the *Holland* lawsuit/*In Re Yahoo Mail Litigation*.   Nor is National Union using its Deductible Endorsement as the "get out of jail free" card Yahoo suggests to avoid paying Yahoo's defense costs.   To the contrary, Yahoo knows full well that National Union was prepared to issue payment to Yahoo on its defense invoices, subject to a reservation of rights. *See* Nat'l Union Add'l Fact Nos. 7-8, n.2, *supra*.   *Kennedy* is not this case.

In short, a forfeiture of National Union's rights under the Deductible Endorsement would create a coverage windfall that Yahoo did not purchase and California law does not permit.   National Union is therefore entitled to exercise its contractual right to reimbursement under the Deductible Endorsement.

### D.   National Union Has No Duty to Indemnify Yahoo for the *In re Yahoo Mail Litigation* Settlement Because It Does Not Constitute Damages Because of Personal Injury.

Even where an insurer has a duty to defend, its duty to indemnify is not implicated if the insured's liability ultimately is not covered.   *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497 (2001).   National Union has no obligation to indemnify the *In re Yahoo Mail Litigation*

settlement because it did not resolve liability for Personal Injury – that is, an "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."

The *In re Yahoo Mail Litigation* settlement addressed technical statutory violations and required Yahoo to adjust its email architecture.  It provided no compensation to class members for invasions of their privacy.  In fact, Yahoo retained the right to continue to scan emails, albeit at a slightly different point in transmission.  *See* Order Granting Mot. re Prelim. Approv. of Class Action Settlmt. ("Approval Order"), Nat'l Un. RJN (ECF No. 46), Ex. 10, 3:25-4:1 ("Yahoo will now only analyze emails for content when these emails are no longer in transit and after these emails reach a Yahoo Mail user's inbox or outbox.").  Far from evidencing that the settlement provided compensation to claimants for individual invasions of privacy, Yahoo's disclosure that it "may share keywords, package tracking and product identification numbers" with third parties to enhance user experience and provide targeted advertising (Opp. at 19:24-26) merely confirms Yahoo's intention to continue doing what it was doing before.  This is not a settlement resolving an insured's liability for covered Personal Injury.

Furthermore, while the settlement provided for recovery of attorneys' fees and nominal payments to class representative awards, the Court confirmed in its Approval Order that the *In re Yahoo Mail Litigation* settlement resolved claims for which the certified class only could "obtain injunctive relief *and not monetary damages*."  SSF 29, Approval Order, 2:19, emphasis added).  Yahoo does not dispute that costs of complying with an injunction are not damages. But the attorneys' fees component of the settlement is not damages either.

California Code of Civil Procedure Section 1033.5(a)(10) provides that attorneys' fees authorized by contract, statute, or law are allowable as *costs* to the prevailing party.  Attorneys' fees are generally paid as "costs" within a liability policy's Supplementary Payments provision. *Ins. Co. of North Am. v. National Am. Ins. Co. of Calif.,* 37 Cal. App. 4th 195, 206-07 (1995). However, the 2011 Policy expressly states that costs taxed against the insured "do not include attorneys' fees or attorneys' expenses taxed against the insured."  For this reason, Yahoo endeavors to recast the attorneys' fees as damages.  But California law provides otherwise. *Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch. etc. Auth.*, 31 Cal. App. 4th 617, 632 (1994)

(explaining that attorney fees "are inconsistent with the concept of 'damages' as the term is used in its ordinary and popular sense").

Despite California authority on point, Yahoo relies on two distinguishable Ninth Circuit opinions to argue the attorneys' fees are damages:  *Insurance Co. of Penn. v. City of Long Beach,* 342 F. Appx. 274 (9th Cir. 2009) and *National Casualty Co. v. Coastal Develop. Services Found.*, 171 F. Appx. 680 (9th Cir. 2006).

In *City of Long Beach,* the court noted a distinction based on the language of the statute authorizing an award of "a reasonable attorney's fee *and* costs."  The court believed this language suggested that attorneys' fees were something separate from costs, and therefore covered.  *Id.* at 277 (italics in original).  The potential ambiguity addressed in *City of Long Beach* does not exist here, however.  As in *Cutler-Orosi*, the Stored Communications Act authorizes "a reasonable attorney's fee and *other* litigation costs," confirming that attorneys' fees are one of serval types of recoverable *costs*.  18 U.S.C.A. § 2707 (emphasis added).

Meanwhile, the policy at issue in *Coastal Develop.* defined "damages" as "a monetary judgment … including … *all costs taxed against the INSURED*."  *Id.* at 683 (emphasis in original).  The court therefore found the attorneys' fees awarded against the insured constituted "damages" because they fell within the policy's scope of a monetary judgment <u>including</u> costs.  *Coastal's* analysis of non-standard wording does not speak to the issues before this Court.

Also inapposite is *Golden Eagle Ins. Co. v. Ins. Co. of the West*, 99 Cal. App. 4th 837, 851 (2002), where the court held an obligation to indemnify another for its attorneys' fees is a liability for damages in the context of contractual liability.  But coverage for contractual indemnity is a *different* question than whether a prevailing party's attorneys' fees award is an item of costs or damages, as the *Golden Eagle* court noted.  *Id.* at 851 (observing *Cutler-Orosi* was not on point "because it does not concern contractual liability provisions or the insured's assumption of liability for the indemnitee's costs in defending against covered third party tort actions").  *Golden Eagle* does not support Yahoo's position.

Yahoo's reliance on *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (Missouri law), where the Eighth Circuit held that fixed

statutory damages are not excluded penalties but compensation to claimants, is likewise misplaced.  *Universal Underwriters* did not address attorneys' fees and its analysis does not control how they should be characterized here.

Finally, as to the $5,000 class representative awards, by Yahoo's own description, their purpose is to "compensate [representatives] for their efforts in bringing a class action" (Opp. at 19:20-21), not for injury.  As such, they are a litigation cost, not damages under *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 826 (1990) (damages are compensation for loss or detriment a person has suffered).  Simply put, no part of the *In re Yahoo Mail Litigation* settlement is damages.

### E.    The *In re Yahoo Mail Litigation* Settlement Was Not the Direct Result of a Breach of the Duty to Defend the *Holland* Lawsuit.

To avoid National Union's indemnity arguments, Yahoo contends National Union should be foreclosed from challenging coverage for the settlement because, according to Yahoo, the "*Holland* settlement" was the "direct result of National Union's breach of the duty to defend" in that Yahoo was purportedly forced to defend itself "without the assistance and resources of National Union … based solely on [Yahoo's] own evaluation of the merits of the claim."  Opp. at 3; 22.  Yahoo is incorrect for several reasons.  First, the lawsuit that Yahoo resolved was not *Holland*, but rather, the *In re Yahoo Mail Litigation*.  As explained above, Yahoo did not advise National Union of the *In re Yahoo Mail Litigation* until November 20, 2015, after which National Union agreed to defend Yahoo.  Second, National Union's reservations created a conflict of interest that prevented National Union from controlling Yahoo's defense of the litigation.  Third, by Yahoo's own admission, the settlement was negotiated over a period of time, after the Consolidated Class Action Complaint was filed on February 12, 2014 and during the course of "several mediations," each of which was conducted unbeknownst to National Union.  Opp. at 7.  Consequently, Yahoo's assertion that the settlement was a "direct result" of a breach of a duty to defend is not supported by the factual record.

The factual record, likewise, undercuts Yahoo's effort to align this case to *Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825 (1997), a bad faith case involving a default judgment against an individual insured after his auto insurer denied a defense.  The *Amato* court

concluded the insurer had "no good cause to refuse to defend" (*Id.* at 831), acted in bad faith, and thus was responsible for the amount of the default judgment "which constituted the detriment to [the insured] proximately caused by [the insurer's] tortious breach of the duty to defend. *Id.* at 835. The "unusual factor of the default" was a key factor in the court's reasoning – precisely because Mr. Amato did not incur any defense costs and yet was harmed by the breach. *Id.* at 834.

Unlike *Amato*, this case does not involve the entry of a default judgment. Yahoo was financially able to, and did, mount a defense to the *In re Yahoo Mail Litigation.* In fact, under the Deductible Endorsement, Yahoo elected to assume ultimate responsibility for all such expenses. Notably, National Union agreed to defend Yahoo upon Yahoo's request and prior to the conclusion of the *In re Yahoo Mail Litigation. Amato* is thus factually distinguishable and does not compel the conclusion that National Union is obligated to indemnify Yahoo for the *In re Yahoo Mail Litigation* settlement.

**F.      Yahoo's Bad Faith Claim Fails Because National Union Acted Reasonably.**

In seeking summary judgment on its bad faith cause of action, Yahoo demonizes National Union throughout its opposition, asserting that National Union acted unreasonably and without basis "by breaching its duties to defend and indemnify Yahoo." Opp. at 1. An insurer's breach of its duty to defend or indemnify is not the standard by which the implied covenant of good faith and fair dealing is measured, however.

To demonstrate that National Union breached the implied covenant of good faith and fair dealing, Yahoo must show National Union acted unreasonably or without proper cause. *R & B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 354 (2006). Yahoo would need to demonstrate "unfair dealing, not mistaken judgment." *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 55 (1985); *see also Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001) (even "sloppy or negligent claims handling does not rise to the level of bad faith"). Bad faith requires "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the

benefits of the agreement." *Id.* at 346.   Yahoo offers no facts, disputed or otherwise, demonstrating that National Union consciously and deliberately acted wrongfully against Yahoo.

Far from deliberate, egregious conduct, National Union's coverage position of the *Sutton* and *Penkava* lawsuits is supported by their allegations.  As respects the *Holland* lawsuit, National Union admittedly was mistaken when it issued its coverage position letter based on an incomplete copy of the 2011 Policy that did not include the Personal Injury endorsement.  As discussed above, National Union's coverage position letter was issued by a claims professional different than the one who handled the *Sutton* and *Penkava* lawsuits, who was no longer employed by National Union.  But National Union remedied its mistake once it confirmed the 2011 Policy was modified by the endorsement, and agreed to defend Yahoo in the *Holland* lawsuit and *In re Yahoo Mail Litigation*, as set forth in National Union's February 16, 2016 correspondence.  Far from placing blame on Yahoo in that correspondence, National Union expressed its appreciation of Yahoo as a customer and only observed that National Union's investigation would have been expedited had Yahoo provided the Personal Injury endorsement and the pleadings filed in the *In re Yahoo Mail Litigation* in the first instance.  While mistakes were made, National Union reconsidered its coverage position, agreed to defend, and offered to pay defense costs.  Despite Yahoo's efforts to pillory National Union, Yahoo has not met the threshold to establish "bad faith."

## IV.   CONCLUSION

WHEREFORE, National Union respectfully requests that this Court grant National Union's Motion for Summary Judgment, deny Yahoo's Cross-Motion for Summary Judgment, and award National Union such other and further relief this Court deems just and proper.

Dated:  February 19, 2018

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By:      /s/ *Matthew C. Lovell*
        Daniel I. Graham, Jr.
        Matthew C. Lovell
        Attorneys for Defendant National Union Fire
        Insurance Company of Pittsburgh, Pa, a
        Pennsylvania Corporation