KILPATRICK TOWNSEND & STOCKTON LLP
WILLIAM T. UM (State Bar No. 166536)
WUm@kilpatricktownsend.com
ELENA YAKUBOVA (State Bar No. 311541)
EYakavbova@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363

Attorneys for Plaintiff
YAHOO! INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

YAHOO! INC., a Delaware corporation,

Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,

Defendant.

CASE NO.: 5:17-cv-00489-EJD
Hon. Edward J. Davila, Courtroom 4

**YAHOO! INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Date: April 5, 2018
Time: 9:00 a.m.
Dept.: 4

Date Complaint Filed: 1/31/2017

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. NATIONAL UNION BREACHED ITS DUTY TO DEFEND. ..... 3

A. National Union Failed To Defend *Holland* Immediately or Meaningfully. ..... 3

B. National Union Continues To Wrongfully Deny Its Duty To Defend *Sutton* and *Penkava*. ..... 4

III. THE DEDUCTIBLE ENDORSEMENT DOES NOT APPLY IN THIS CASE. ..... 5

IV. NATIONAL UNION HAS BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ..... 8

V. NATIONAL UNION BREACHED ITS DUTY TO INDEMNIFY. ..... 9

VI. CONCLUSION ..... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) ....... 10

*Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825 (1997) ....... 9, 10

*Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) ....... 9

*Buss v. Superior Court*, 16 Cal. 4th 35 (1997) ....... 1, 3

*Golden Eagle Ins. Co. v. Ins. Co. of the West*, 99 Cal. App. 4th 837 (2002) ....... 11

*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966) ....... 3, 4

*Haskel Inc. v. Superior Court*, 33 Cal. App. 4th 963 (1995) ....... 3

*Insurance Co. of Penn. v. City of Long Beach*, 342 Fed. Appx. 274 (9th Cir. 2009) ....... 11

*Isaacson v. California Ins. Guarantee Ass'n*, 44 Cal. 3d 775 (1988) ....... 9

*Love v. Fire Insurance Exchange*, 221 Cal. App. 3d 1136 (1990) ....... 8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ....... 4

*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) ....... 1, 3, 4

*Nat'l Cas. Co. v. Coastal Dev. Servs. Found.*, 171 F. App'x 680 (9th Cir. 2006) ....... 11

*San Diego Apartment Brokers, Inc. v. California Capital Ins. Co.*, 2014 WL 1613449 (Cal. Ct. App. April 22, 2014) ....... 9

*Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*, 78 Cal. App. 4th 847 (2000) ....... 8

*Vandenberg v. Superior Court*,
21 Cal. 4th 815 (1999) .......... 10

*White v. Western Title Ins. Co.*,
40 Cal. 3d 870 (1985) .......... 8

*Woodliff v. California Insurance Guarantee Association*,
110 Cal. App. 4th 1690 (2003) .......... 7, 8

# I. INTRODUCTION

National Union continues to ignore the following tenets of insurance law regarding the duty to defend established by the California Supreme Court:

> ***The Duty to Defend Is Immediate***: "To defend meaningfully, the insurer must defend immediately." "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf."
>
> ***To Escape Its Duty To Defend, An Insurer Must Establish The Absence Of Any Potential Coverage***: "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*."

*See Buss v. Superior Court*, 16 Cal. 4th 35 (1997) and *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) (emphasis in original).

It is undisputed that National Union denied coverage for *Holland* in 2013 and that two years passed before National Union acknowledged its duty to defend. This two year delay, as a matter of law, constitutes breach of the duty to defend as Yahoo was forced to defend the lawsuit on its own without the full protection of a defense from National Union. National Union did not defend Yahoo "meaningfully" and certainly not "immediately," as required by California law. National Union's attempt to blame Yahoo for this long delay does not excuse National Union's breach of contract under California law.

National Union also ignores well-established California law with respect to its analysis of the *Sutton* and *Penkava* lawsuits. It is undisputed that both *Sutton* and *Penkava* allege, among other things, that Yahoo intercepted and reviewed e-mails before delivery to Yahoo e-mail subscribers, "through the application of devices and techniques to review those e-mails for their words, content and thought processes," and that Yahoo "profited" from and derived a "financial windfall" from these practices. These allegations were more than sufficient to trigger National Union's broad coverage grant to defend claims that potentially allege "oral or written publication, in any manner,

of material that violates a person's right of privacy."

National Union's defense that "Yahoo allegedly profit[ing] from its activities does not compel the inference that Yahoo shared private information with third parties" does not meet the strict requirement that to escape the duty to defend, National Union must establish the absence of any potential for coverage. Inferences are sufficient to create a potential for coverage. Allegations that Yahoo—an internet company that generates revenue from selling targeted advertising—reviewed personal emails and "profited" from such practices are more than sufficient to create the inference that Yahoo may have shared such private information with third parties and, therefore, triggered the potential for coverage under the personal injury provision. National Union has not, because it cannot, show that the *Sutton* and *Penkava* lawsuits "can by no conceivable theory raise a single issue which could bring it within the policy coverage."

By failing to defend *Holland* immediately and by refusing to defend *Sutton* or *Penkava* at all, National Union has breached its duty to defend. Under California insurance law, breaching its contractual obligations to Yahoo has consequences for National Union, including that National Union cannot rely on limitation provisions, after its breach, to justify its conduct. Specifically, National Union cannot rely on the Deductible Endorsement—a limitation provision—to claim that it will pay some portion of Yahoo's defense fees and expenses but only if Yahoo agrees to return the payment back to National Union. National Union cannot ignore the Policy's express requirement that the Deductible Endorsement only applies if National Union first pays defense fees and expenses. National Union admits that it never made any payments to Yahoo and, therefore, the Deductible Endorsement, by definition, is not applicable. National Union's breach also impacts National Union's obligation to indemnify Yahoo for the settlement of the underlying Email Scanning Cases.

By breaching its contract in the manner that it has, National Union also breached its implied covenant of good faith and fair dealing. As set forth in Yahoo's moving papers, National Union has exhibited a pattern and practice of wrongfully denying claims, including relying on non-existent exclusions, to the detriment of Yahoo. Yahoo also has shown that rather than take responsibility for its misconduct, National Union continues to blame Yahoo for its breach, including claiming that

Yahoo was somehow required to provide National Union, the insurance company, with a complete copy of the relevant insurance policies. Tort damages for bad faith are justified here to deter National Union's wrongful conduct.

For all of these reasons, the Court should grant Yahoo's motion for summary judgment on all counts.

## II. NATIONAL UNION BREACHED ITS DUTY TO DEFEND.

### A. National Union Failed To Defend *Holland* Immediately or Meaningfully.

An insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966) (emphasis added). "To defend meaningfully, an insurer must defend immediately." *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997). "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." *Montrose Chem. Corp. v. Superior Court,* 6 Cal. 4th 287, 295 (1993). The duty to defend is a continuing one that arises on tender of defense and lasts until the underlying lawsuit has concluded, or it has been shown that there is no potential for coverage. *Id.* Insureds, like Yahoo, obtain liability insurance "to be protected against the trauma and financial hardship of litigation." *Haskel Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979, n. 14 (1995). The purpose of an immediate defense obligation is to relieve the insured from the burden of financing its own defense and then having to sue the insurer, as the premiums paid by the insured would then purchase nothing more than a lawsuit. *Id.*

With respect to the *Holland* lawsuit, the following facts are not in dispute:

(1) The *Holland* lawsuit alleges "oral or written publication, in any manner, of material that violates a person's right of privacy," thereby triggering the Personal Injury coverage;

(2) National Union denied coverage for *Holland* after it was filed in October 2013;

(3) Yahoo defended the *Holland* lawsuit by itself without the protection of a defense from National Union for over two years to conclusion;

(4) National Union finally acknowledged it owed Yahoo a duty to defend *Holland* in February 2016, two years after originally denying any obligation to defend *Holland*; and

(5) The original material allegations contained in *Holland* did not change in two years.

*See* YMF #8-10, 18, 20, and 23.

Under well-established California insurance law, these undisputed facts confirm National Union's breach of duty. National Union did not defend "meaningfully" or "immediately" and left Yahoo without the "full protection of a defense on its behalf" as required by the Policies. Moreover, none of National Union's excuses (*i.e.*, that it did not have a complete copy of its own insurance policy or that Yahoo never provided National Union with the full copy of the insurance policy) saves National Union from its breach of contract. Not surprisingly, National Union does not cite a single authority that by accepting its duty to defend two years after receipt of Yahoo's original tender, National Union could avoid its breach of duty. Instead, as set forth below, National Union's excuses only confirm a pattern and practice by National Union of its bad faith conduct.

**B. National Union Continues To Wrongfully Deny Its Duty To Defend *Sutton* and *Penkava*.**

An insured "is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (emphasis in original); *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008) (same). "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the *insurer* must prove it *cannot*." *Montrose*, 6 Cal. 4th at 300 (emphasis in original). National Union thus cannot escape its duty to defend unless the underlying actions "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray*, 65 Cal. 2d at 275 n.15. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 299-300.

Here, the allegations in *Sutton* and *Penkava* are not in dispute. Both allege the following:

(1) Yahoo is an internet company that provides web-based services, including Yahoo Mail, to millions of users and generates revenue from selling targeted advertising;

(2) Yahoo allegedly intercepted and reviewed e-mails before delivery to Yahoo e-mail

subscribers, "through the application of devices and techniques to review those e-mails for their words, content and thought processes";

(3) Yahoo violated the plaintiffs' rights to privacy by intercepting and reviewing these personal emails; and

(4) Yahoo "profited" from and derived a "financial windfall" from these practices. *See* YMF #5-7.

Contrary to National Union's understanding, the *Sutton* and *Penkava* lawsuits do not have to allege the precise words that "Yahoo disclosed private materials to third parties" to trigger National Union's duty to defend. Plaintiff's general allegations and inferences that can be drawn from such allegations are more than sufficient to create a potential for coverage to trigger National Union's duty to defend. Here, a logical inference from the *Sutton* and *Penkava* allegations is that Yahoo was being accused of disclosing private information it received from non-users' emails to third parties for its own financial benefit. Indeed, in *Penkava*, plaintiffs expressly alleged that Yahoo derives "a financial windfall from the reading of, attempts to read, learning of the content or meaning of…and recording of communications[.]" (YMF #7). These allegations were more than sufficient to trigger the Personal Injury coverage as these allegations constitute, "oral or written publication, in any manner, of material that violates a person's right of privacy."

Having established the potential for coverage, in order to escape its duty to defend, National Union must establish the absence of any potential coverage. More specifically, National Union must prove that the underlying actions "can by no conceivable theory raise a single issue which could bring it within the policy coverage." National Union has come no more close to meeting this high bar to justify its claim that it does not owe Yahoo a duty to defend *Sutton* and *Penkava*.

## III. THE DEDUCTIBLE ENDORSEMENT DOES NOT APPLY IN THIS CASE.

By its express terms, the Deductible Endorsement only applies if National Union, in the first instance, acknowledges a duty to defend and ***actually*** incurs "loss adjustment expense" by defending Yahoo. It is undisputed that this did not happen; National Union did not incur any attorneys' fees or expenses for the investigation or defense of the Email Scanning Cases. It was Yahoo who retained defense counsel, incurred millions in defense fees, and defended the Email

Scanning Cases without the assistance and aid of National Union.

National Union's attempt to try to enforce the Deductible Endorsement ***after the fact*** and without having defended Yahoo from the outset only confirms that the Deductible Endorsement is not applicable to the current situation. So how exactly does National Union propose to apply the Deductible Endorsement after denying coverage for two years? National Union proposes the following:

- National Union requests Yahoo to itemize and forward two years' worth of defense invoices confirming the attorneys' fees and expenses that it incurred to defend the covered lawsuit to National Union for its review and auditing;
- National Union then reviews the invoices to determine what items were "reasonable and necessary" after conducting an audit and evaluating how the case should have been defended;
- National Union pays only that portion of the invoices submitted by Yahoo that it unilaterally determines is reasonable and necessary and within National Union's billing guidelines, even though the defense invoices already have been incurred and paid by Yahoo; and
- After issuing payment to Yahoo, National Union then sends Yahoo a "bill" seeking reimbursement of the very amount that it just paid to Yahoo.

As this tortured process shows, the only thing that National Union is proposing to do by "defending" Yahoo two years after the fact, is to send Yahoo a check, only to ask for the same check back from Yahoo. Even worse, National Union's proposed check would only cover a portion—National Union's unilateral determination of what is "reasonable and necessary"—of the attorneys' fees and expenses that Yahoo incurred to defend the Email Scanning Cases.[1]

This obviously is not how the Deductible Endorsement is supposed to work. As intended by the parties, when a potentially covered claim arises, National Union is supposed to step in and defend the case and pay the attorneys' fees and expenses, for which National Union may be entitled to seek reimbursement. Yahoo paid premiums for the benefit of having National Union—with its

[1] In its February 16, 2016 letter when it agreed to defend *Holland*, National Union stated that it would only pay "those rates that are commensurate with the rates and fees National Union actually pays to panel counsel retained by it [and will only] pay its share of those defense costs and expenses reasonably and necessarily incurred," even though National Union knew that Yahoo already had incurred two years' worth of invoices by that point. (YMF # 23-26).

presumed expertise and defense resources—defend, investigate, and settle such covered claims and advance the costs of defending those claims.

None of that happened here. Yahoo was not afforded the benefit of National Union's administrative expertise and resources for the Email Scanning Cases and instead, was forced to search for and retain its own defense counsel, pay defense counsel to defend these cases, and then obtain the best settlement that it was able to achieve to minimize or eliminate its liability. Because National Union did not defend in the first instance, the Deductible Endorsement simply does not apply, and Yahoo has no obligation to reimburse any defense costs that National Union may ultimately be required to pay.

California case law is in accord. In the insurance industry, the phrase "loss adjustment expense" generally means the expense "*incurred by the insurer*" to investigate and to settle a claim on behalf of the insured. *Woodliff v. California Insurance Guarantee Association*, 110 Cal. App. 4th 1690, 1700-01 (2003) (emphasis in original). The *Woodliff* court rejected the argument by the California Insurance Guarantee Association ("CIGA")—nearly identical to the argument National Union makes here—that amounts paid by the policyholder for legal representation after the insurer wrongfully failed to defend were "loss adjustment expenses":

> Simply stated, an insured does not incur loss adjustment expenses because the insured does not initiate or control the loss adjustment process. The insured's reasonable expectation is that the insurer will engage in that process. That, in fact, is one of the reasons insurance is obtained. Consequently, when, as here, an insured is faced with a refusal to defend by its insurer and thereafter first retains counsel to defend and later obtains a judgment against the insurer to compensate for damages caused by breach of the contractual duty to defend—damages that can include compensation for monies spent on attorney fees—the insured's judgment against the insurer cannot reasonably be categorized as one for "loss adjustment expenses." ***Instead, it reflects compensation awarded to the insured by a court based upon the insurer's failure to provide a key benefit owed to him under the insurance policy: legal representation.***

*Woodliff*, 110 Cal. App. 4th at 1694 (emphasis added).

Under the express provisions of the Policy, and as the term is universally understood in the insurance industry, allocated loss adjustment expenses are costs incurred by ***the insurer*** to defend, to adjust, and to settle claims as part of the loss adjustment process. National Union did not incur any costs to defend Yahoo against these underlying claims because it has done no actual "defending" or "adjusting" or "settling" of the covered claim. Instead, National Union outright denied it had any obligation to defend Yahoo and forfeited its right to assert any condition of limiting provision of its Policy, including the Deductible Endorsement. Just as in *Woodliff*, any payment by National Union of defense fees and costs incurred by Yahoo in the Email Scanning Cases when faced with National Union's denial cannot reasonably be categorized as "loss adjustment expense."

## IV. NATIONAL UNION HAS BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

"A covenant of good faith and fair dealing is implied in every insurance contract." *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 885 (1985). "In general, the standard of good faith and fairness calls for consideration of the reasonableness of the insurer's conduct." *Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000). In California, a breach of the implied duty of good faith and fair dealing has two elements: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Insurance Exchange*, 221 Cal. App. 3d 1136, 1151 (1990).

Both these elements are satisfied here. There is no question that National Union refused to accept its duty to defend and thus withheld payment of associated defense costs from Yahoo. And, as set forth above, National Union did not have a reasonable basis to deny coverage for the Email Scanning Cases.

National Union denied coverage for the Email Scanning Cases by: (1) relying on exclusions, such as the "Insureds Engaging in Media and Internet Type Activities," that were removed through a negotiated endorsement in the Policy, (2) ignoring prior notifications by Yahoo's broker that

National Union improperly was relying on omitted exclusions, (3) blaming Yahoo for not providing National Union, the insurance company, with a full copy of the negotiated endorsement, and (4) attempting to rely on a Deductible Endorsement to demand reimbursement from Yahoo even though the express language of the endorsement makes clear that reimbursement is only allowed when National Union actually defends and pays attorneys' fees and expenses in the first instance. These are just some of the unreasonable and wrongful basis by which National Union has deprived Yahoo of the Policy benefits due under the Policies.

Under such circumstances, Yahoo is entitled to tort damages for National Union's bad faith conduct. Moreover, because National Union's tortious conduct has reasonably compelled Yahoo to retain counsel to obtain the benefits due under the Policy, National Union is liable in this action for Yahoo's attorneys' fees. *See Brandt v. Superior Court,* 37 Cal. 3d 813, 817 (1985).

## V. NATIONAL UNION BREACHED ITS DUTY TO INDEMNIFY.

Beyond reimbursement of Yahoo's defense costs and attorneys' fees, National Union has an obligation to reimburse the amount that Yahoo paid to settle the Email Scanning Cases. Under well-established California law, "if an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." *Isaacson v. California Ins. Guarantee Ass'n*, 44 Cal. 3d 775, 791 (1988) (internal quotations omitted). An insurer that refuses to defend is liable for all damages "because of its refusal—even though, had it defended the third-party action, it might have escaped liability for the resulting judgment." *Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825, 833-34 (1997) ("*Amato II*") (holding insurer liable for full amount of default judgment that was proximately caused by its breach of the duty to defend and recoverable regardless of coverage). This includes settlements entered by the insured that are proximately caused by the insurer's breach of the duty to defend. *San Diego Apartment Brokers, Inc. v. California Capital Ins. Co.*, 2014 WL 1613449, *6 (Cal. Ct. App. April 22, 2014).

It is undisputed that National Union did not step up and defend *Holland* when this lawsuit was originally filed. It is also undisputed that Yahoo, therefore, defended *Holland* on its own to

conclusion and made decisions along the way to protect itself as best as possible to try to minimize and to eliminate potential future liability and exposure. Yahoo was forced to defend itself in the litigation, without the assistance and resources of National Union. Had National Union honored its Policy obligation and provided a full defense to Yahoo, the scope of the defense and the outcome of the case may have been different. Under such circumstances, Yahoo's settlement of the Email Scanning Cases was the proximate and foreseeable result of National Union's improper denial of its duty to defend. National Union is thus liable for the damages Yahoo paid in settlement, which were proximately caused by National Union's failure to defend. *See, e.g., Amato II*, 53 Cal. App. 4th at 834.

In addition, the amount Yahoo paid to settle the Email Scanning Case constitutes "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" covered by the Policy. Yahoo's settlement specifically contemplated that the plaintiffs' counsel and the class representatives would be awarded monies for bringing and prosecuting the lawsuit against Yahoo for alleged "personal injury" conduct that violated the plaintiffs' privacy rights. The resolution of the case and Yahoo's agreement to cure the alleged privacy violations eliminated Yahoo's liability for covered "personal injury." Thus, the monies paid in the form of plaintiffs' counsel's and the class representatives' awards constitute "damages because of 'personal injury.'"

The undefined term "damages" must be construed broadly, consistent with an insured's reasonable expectations of coverage, to include "compensation, in money, recovered by a party for loss or detriment it has suffered through the acts of another." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 826 (1990) (internal quotation marks omitted); *see also Vandenberg v. Superior Court*, 21 Cal. 4th 815, 840 (1999) ("A reasonable layperson would certainly understand 'legally obligated to pay' to refer to any obligation which is binding and enforceable under the law, whether pursuant to contract or tort liability."). Applying these principles, the Policy provides coverage for a settlement including the underlying plaintiffs' claim for attorneys' fees and costs and service awards. California and federal courts have confirmed that attorneys' fees paid to plaintiffs' attorneys constitute covered damages under a liability insurance policy. *See, e.g., Insurance Co. of*

*Penn. v. City of Long Beach*, 342 Fed. Appx. 274, 277-78 (9th Cir. 2009) (applying California law); *Nat'l Cas. Co. v. Coastal Dev. Servs. Found*., 171 F. App'x 680, 685 (9th Cir. 2006) (applying California law) (holding award of plaintiffs' attorneys' fees and costs was covered "damages" as the insured reasonably expected that a suit for equitable relief that included exposure to a monetary award of plaintiffs' attorneys' fees and costs would be covered); *Golden Eagle Ins. Co. v. Ins. Co. of the West*, 99 Cal. App. 4th 837, 851 (2002) ("We conclude that an insured with contractual liability coverage would reasonably expect that the indemnitee's attorney fees and costs are sums the insured becomes 'legally obligated to pay as *damages* because of' covered tort claims.") (emphasis in original). Yahoo reasonably expected that the Policy would provide coverage for class action claims against it seeking an award of attorneys' fees given the Policy's broad coverage for "those sums that the insured becomes legally obligated to pay as damages."

## VI. CONCLUSION

National Union breached its duty to defend the *Sutton*, *Penkava*, and *Holland, et al.* lawsuits and National Union cannot "cure" its breach two years after the fact. Moreover, National Union's breach comes with consequences, including that National Union cannot rely on limitation provision of the Policy, specifically the Deductible Endorsement, which by definition, can only apply if National Union had defended Yahoo in the first instance. National Union is also responsible for the amount paid to settle the *In Re Yahoo Mail Litigation*, which were proximately caused by National Union's failure to defend Yahoo.

Yahoo therefore requests summary judgment on Counts I, II, and III of Yahoo's Complaint.

DATED: March 1, 2018

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/William T. Um*
WILLIAM T. UM
Attorneys for Plaintiff
Yahoo! Inc.