United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

YAHOO! INC.,

          Plaintiff,

    v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

          Defendant.

Case No. 5:17-cv-00489-EJD

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 45, 53

     This insurance coverage dispute stems from several class action lawsuits filed against Plaintiff Yahoo! Inc. over its practice of scanning the content of e-mails. Yahoo tendered the lawsuits to its insurer, Defendant National Union First Insurance Company of Pittsburgh, PA, who denied coverage. Though National Union eventually retracted the denial for some claims, Yahoo had by then put on its own defense and had settled the e-mail scanning claims, paying over $4 million in the process.

     Yahoo now seeks to establish that National Union breached its duty to defend, its duty to indemnify, and committed bad faith when it denied and delayed coverage. Presently before the court are cross-motions for summary judgment. Dkt. Nos. 45, 53. Having carefully considered the parties' arguments in conjunction with the record, the court finds that Yahoo's positions on National Union's duties are largely correct, but that a material dispute precludes summary judgment on the claim for bad faith. Thus, the parties' motions for summary judgment will be granted in part and denied in part for the reasons explained below.

## I. FACTUAL AND PROCEDURE BACKGROUND

### A. Yahoo's Policies with National Union

     Yahoo obtained four consecutive commercial general liability ("CGL") insurance policies from May 31, 2008, to May 31, 2012. The most relevant policy to this action is No. GL 348-18-

1   61, in effect from May 31, 2011, to May 31, 2012 (the "2011 Policy").  Lovell Decl., Dkt. No. 45,

2   at Ex. 4.

3       The 2011 Policy required National Union to defend Yahoo and pay "sums that the insured

4   becomes legally obligated to pay as damages," up to a limit of $1 million per occurrence, because

5   of "personal injury" or "advertising injury."  Id.  Under Endorsement # 004 - Coverage B (the

6   "Personal Injury Endorsement"), "personal injury" was defined to include "[o]ral or written

7   publication, in any manner, of material that violates a person's right of privacy."  Id.

8       For exclusions, the Personal Injury Endorsement retained the CGL policy's standard

9   exclusion to coverage of personal injury "arising out of a criminal act committed by or at the

10  direction of the insured."  Id.  The endorsement did not retain, however, the standard exclusion for

11  injury "committed by an insured whose business is . . . [a]n Internet search, access, content or

12  service provider."  Id.

13      Importantly, the 2011 Policy was a "fronting policy;" that is, Yahoo retained the risk of

14  loss and generally agreed to indemnify National Union.  Under the Deductible Coverage

15  Endorsement, Yahoo agreed to reimburse National Union for any amounts paid as damages and

16  any "Allocated Loss Adjustment Expense" which National Union paid as "Supplementary

17  Payments."  Id.  The definition of "Allocated Loss Adjustment Expense" detailed in the

18  Deductible Coverage Endorsement included "all fees for service of process and court costs and

19  court expenses" and "attorneys' fees."  Id.  The "Supplementary Payments" provision of the

20  standard CGL policy also stated, in pertinent part, that National Union would pay "all expenses" it

21  incurred.  Id.

22      **B.     The E-mail Scanning Lawsuits**

23      Three civil lawsuits concerning Yahoo's e-mail service were filed in 2012 and 2013.

24      On June 28, 2012, David Sutton and Roland Williams sued Yahoo on behalf of a class in

25  Marin County Superior Court (the "Sutton lawsuit") for a violation of the California Invasion of

26

27

28

Privacy Act ("CIPA"), Penal Code §§ 630 et seq. Req. for Judicial Notice, Dkt. No. 46, at Ex. 1.[1] They alleged that Yahoo "wiretapped . . . or eavesdropped upon and/or recorded the e-mails of Plaintiffs and the Class sent from their non-Yahoo! accounts to the Yahoo! accounts of private individuals before receipt by the Yahoo! subscriber without the consent of all parties to the confidential e-mail communication." Id. The Sutton lawsuit was dismissed without prejudice on January 22, 2013, with the consent of the parties. Id. at Ex. 3.

On June 29, 2012, Carson Penkava filed a class action complaint against Yahoo in this court (the "Penkava lawsuit"), also for violation of CIPA and based on the same e-mail scanning practice alleged in the Sutton lawsuit. Id. at Ex. 2. The Penkava lawsuit was voluntarily dismissed with prejudice on November 30, 2012. Id. at Ex. 4.

On October 25, 2013, Eric Holland and Cody Baker filed a class action complaint against Yahoo in this court (the "Holland lawsuit") for violations of CIPA and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C §§ 2510 et seq. Id. at Ex. 5. The Holland lawsuit plaintiffs alleged that Yahoo scanned and analyzed "each and every email sent to Yahoo! Mail users, including those sent from non-Yahoo! users" without informing e-mail users of the practice. Id. The Holland lawsuit was eventually consolidated with three other similar class actions as In re Yahoo Mail Litigation. Id. at Ex. 6. In the consolidated complaint, the plaintiffs abandoned the ECPA claim, but added claims for violations of Article I, Section 1 of the California Constitution; violation of the Wiretap Act, 18 U.S.C. §§ 2510 et seq.; and violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 et seq. Id. at Ex. 7. They also added a claim for declaratory relief. Id.

Yahoo and the consolidated plaintiffs reached a settlement, which the district court preliminarily approved on March 15, 2016. Id. at Ex. 10. The district court finally approved the settlement on August 25, 2016, issuing the injunctive relief agreed upon by the parties and

---

[1] The parties' requests for judicial notice (Dkt. Nos. 46, 54) are GRANTED. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of court filings and other matters of public record").

ordering Yahoo to pay $4,020,000 in attorney's fees to plaintiffs' counsel and $5,000 service awards to each of the four named plaintiffs. Id. at Ex. 12.[2]

**C.     Yahoo's Tenders to National Union**

Yahoo notified National Union about the Sutton lawsuit and the Penkava lawsuit on August 8, 2012. Lovell Decl., at Exs. 6, 7. National Union declined the tenders on September 26, 2012, because the actions did not involve a privacy offense as defined by the 2011 Policy and due to various cited exclusions. Id. at Ex. 8.

Yahoo thereafter tendered the Holland lawsuit to National Union on November 15, 2013. Id. at Ex. 9. National Union declined this initial tender on January 15, 2014, relying on an incomplete version of the 2011 Policy and, in part, on an exclusion that was removed from the policy. Id. at Ex. 10. National Union invited Yahoo to submit additional information that could assist with a further examination of coverage. Id.

On November 20, 2015, Yahoo requested that National Union reconsider its denial of coverage for the Holland lawsuit, which by that time was consolidated into In re Yahoo Mail Litigation. Id. at Ex. 11. National Union retracted the denial of coverage on February 16, 2016, and agreed to provide a defense to Yahoo under a reservation of rights. Id. at Ex. 12.

On March 10, 2016, National Union declined Yahoo's request that it be indemnified for the payments it made toward the settlement of In re Yahoo Mail Litigation. Id. at Ex. 14. In explanation of the denial, National Union stated the settlement involved only injunctive relief, service awards and attorney's fees, which it stated were not covered by the 2011 Policy. Id.

**D.     The Instant Action**

Yahoo initiated this action in January, 2017. It asserts three claims against National Union: (1) breach of contract based on National Union's alleged failure to defend Yahoo against the e-mail scanning actions; (2) breach of contract based on National Union's alleged failure to

---

[2] The court will hereinafter reference the Sutton, Penkava and Holland lawsuits collectively as the "E-mail Scanning Lawsuits."

indemnify Yahoo in relation to the e-mail scanning actions; and (3) breach of the implied covenant of good faith and fair dealing.[3]  National Union filed an Answer on March 16, 2017.  Dkt. No. 13. These motions followed.

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim.  <u>Id.</u> at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact.  Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 324.  A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.  <u>Id.</u> ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than

---

[3] The parties stipulated to permit Yahoo to amend the complaint to remove allegations related to another e-mail scanning lawsuit.  Dkt. No. 44.

Case No.: <u>5:17-cv-00489-EJD</u>
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

5

United States District Court
Northern District of California

simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

### III.    DISCUSSION

#### A.    Authority Governing Yahoo's Causes of Action

Yahoo must prove the standard elements of breach of contract for its duty claims "because "[w]hile insurance contracts have special features, they are still contracts." Bank of the West v. Super. Ct., 2 Cal. 4th 1254, 1264 (1992).[4] Those elements are: "'(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" Wall St. Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008) (quoting Regan Roofing Co. v. Super. Ct., 24 Cal. App. 4th 425, 434-35 (1994)).

Yahoo's implied covenant claim sounds in tort. Pac. S. Mortg. Trust Co. v. Ins. Co. of N. Am., 166 Cal. App. 3d 703, 715 (1985). "In addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing." Richards v. Sequoia Ins. Co., 195 Cal. App. 4th 431, 438 (2011) (citing Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1093 (2005). As its name suggests, the covenant is implied in every insurance contract "as a supplement to the express contractual covenants, to prevent a

---

[4] The court applies California law to this diversity action. HS Servs., Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 644 (9th Cir. 1997).

contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995).

But "[w]here benefits are withheld for proper cause, there is no breach of the implied covenant." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990). This means that without a viable breach of contract claim against the insurer, an insured's cause of action for breach of the implied covenant of good faith and fair dealing will fail as a matter of law. Behnke v. State Farm Gen. Ins. Co., 196 Cal. App. 4th 1443, 1468 (2011).

### B. The Duty to Defend and the Duty to Indemnify

A standard insurance policy generally imposes two separate duties on an insurer: a duty to defend the insured, and a duty to indemnify the insured. Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal. 4th 277, 286-87 (2014).

"An insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy." Id. at 287; accord Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 949 (9th Cir. 2002) (recognizing the duty to defend in California "is necessarily broader than the duty to indemnify because of 'the difficulty in determining whether the third party suit falls within the indemnification coverage before the suit is resolved.'"). "An insurer must defend against a suit even 'where the evidence suggests, but does not conclusively establish, that the loss is not covered.'" Hartford Cas. Ins. Co., 59 Cal. 4th at 287. (quoting Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 299 (1993)). The duty to defend arises when the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement," even if those facts are disputed, groundless, false or fraudulent. Waller, 11 Cal. 4th at 19; see also Hartford Cas. Ins. Co., 59 Cal. 4th at 287 (holding the determination of an insurer's duty to defend depends on a comparison between the allegations of the complaint and the terms of the policy). That the precise causes of action asserted by the third party fall outside of policy coverage is not dispositive; the insurer must defend so long as under "the facts alleged, reasonably inferable, or otherwise known, the

complaint could fairly be amended to state a covered liability." Hartford Cas. Ins. Co., 59 Cal. 4th at 287 (quoting Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005)). Doubt as to whether an insurer must defend is resolved in favor of the insured. Id. However, "if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." Scottsdale Ins. Co., 36 Cal. 4th at 655.

"The duty to defend is broader than the duty to indemnify." Id. Whereas the duty to defend attaches upon the possibility that a claim may be covered by the policy regardless of whether covered damages are awarded, the duty to indemnify "is only determined when the insured's underlying liability is established." Ringler Assocs. Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165, 1185 (2000). This is because the two duties differ in substance: "[w]hereas the duty to defend 'entails the rendering of a service, viz., the mounting and funding of a defense' the duty to indemnify 'entails the payment of money.'" Certain Underwriters at Lloyd's of London v. Super. Ct., 24 Cal. 4th 945, 958 (2001) (quoting Aerojet-General Corp. v. Transp. Indem. Co., 17 Cal. 4th 38, 58 (1997)). But they are nonetheless related, such that "[w]here there is a duty to defend, there *may be* a duty to indemnify; but where there is no duty to defend, there *cannot* be a duty to indemnify." Id. (emphasis added).

**C.     Interpretation of Insurance Policies**

Insurance policies are interpreted in the same manner as contracts. Bank of the West, 2 Cal. 4th at 1264.

The goal of contract interpretation is to give effect to the parties' mutual intent. Id.; Cal. Civ. Code § 1636. "Such intent is to be inferred, if possible, solely from the written provisions of the contract." In re Marriage of Lafkas, 237 Cal. App. 4th 921, 932 (2015) (citing Cal. Civ. Code § 1639). "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' . . . controls judicial interpretation." Id. (citing Cal. Civ. Code §§ 1638, 1644). "A

contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Cal. Civ. Code § 1647. But "[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." Cal. Civ. Code § 1648. In addition, "interpretations that create absurd or unreasonable results" must be avoided. Sequeira v. Lincoln Nat'l Life Ins. Co., 239 Cal. App. 4th 1438, 1445 (2015).

A policy provision is ambiguous if "capable of two or more constructions, both of which are reasonable." Waller, 11 Cal. 4th at 18. However, "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Id. "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Bank of the West, 2 Cal. 4th at 1264-65 (quoting Cal. Civ. Code § 1649). "This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'" Id. (quoting AIU Ins. Co. v. Super. Ct., 51 Cal. 3d 807, 822 (1990)). Only if this rule does not resolve the ambiguity is it resolved against the insurer. Id.

**D.     Application**

**i.     Breach of the Duty to Defend**

National Union argues the court should enter judgment in its favor on Yahoo's first claim for breach of contract because Yahoo cannot prove the E-mail Scanning Lawsuits triggered a duty to defend. Since Yahoo would bear the evidentiary burden on its claim, it must show there is no dispute of material fact there existed a potential for coverage. Hartford Cas. Ins. Co., 59 Cal. 4th at 288. If it does so, National Union must establish the absence of any potential for coverage, including the application of any policy exclusions. Id.; see also Reg'l Steel Corp. v. Liberty Surplus Ins. Corp., 226 Cal. App. 4th 1377, 1394 (2014) (holding an insurer has the burden of proving exclusions to coverage). "[A]n insurer may be excused from a duty to defend only when

'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" <u>Hartford Cas. Ins. Co.</u>, 59 Cal. 4th at 288 (quoting <u>Waller</u>, 11 Cal. 4th at 19).

As the California Supreme Court instructs, whether there was a potential for coverage for any of the E-mail Scanning Lawsuits depends on a comparison between the language of the 2011 Policy and the allegations in the third-party complaints. <u>See</u> <u>id.</u> at 287. More specifically, the court must determine whether the E-mail Scanning Lawsuits describe, or could be fairly amended to describe, a covered injury, defined by the policy as an "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."

### a. The Policy Language

Looking first to the language of the policy, the court finds no dispute, and therefore no ambiguity, that an injury falling within coverage must be content-based. <u>See</u> <u>ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 147 Cal. App. 4th 137, 152 (2007) ("<u>ACS</u>"). Nor is there any dispute or ambiguity as to the policy's requirement of third-party disclosure. The operative provision provides coverage for an "[o]ral or written *publication*, in any manner, of material that violates a person's right of privacy." The "ordinary and popular" definition of "publication" is clear and instructive, as are prior decisions addressing that term. "Publication" involves "the act or process of publishing." <u>Merriam-Webster's Collegiate Dictionary</u> 1005 (11th ed. 2003). "Publish," in turn, means "to make generally known," "to make public announcement," "to disseminate to the public," or "to produce or release for distribution." <u>Id.</u> at 1006. By the time Yahoo executed the 2011 Policy, the California Court of Appeal had already held in two opinions that nearly-identical policy language - "making known to any person or organization written or spoken material that violates and individual's right to privacy" and "oral or written publication that violates a person's right to privacy" - covers only violations of "secrecy" privacy, not "seclusion privacy." <u>ACS Sys., Inc.</u>, 147 Cal. App. 4th at 150; <u>State Farm Gen. Ins. Co. v. JT's Frames, Inc.</u>, 181 Cal. App. 4th 429, 445-46 (2010) ("<u>JT's Frames</u>"). That is, "the coverage applies to liability for injury caused

by the disclosure of private *content* to a third party." ACS Sys., Inc., 147 Cal. App. 4th at 150 (emphasis in original). Thus, the coverage "does not apply to injury caused by receipt of an unauthorized advertising fax, because in that case no disclosure of private facts to a third party has occurred." Id.

### b. The Sutton and Penkava Lawsuits

Comparing the policy language to the allegations made in the Sutton and Penkava lawsuits, the undisputed factual record shows there was at least the potential for coverage for both actions. The complaints were essentially facsimiles, were tendered to National Union on the same date, and were considered together by National Union when determining coverage. The plaintiffs in each case made the same allegation of operative fact: that Yahoo, "intentionally and as part of a common practice, intercepts e-mails sent by individual non-Yahoo! subscribers sent from their non-Yahoo! e-mail accounts before their intended delivery to private individual Yahoo! subscribers, through the application of devices and techniques to review those e-mails for their words, content, and thought processes."

Importantly, however, the original and amended complaints filed in the Penkava lawsuit went one step further. The original complaint contained the allegation that "Yahoo! profited in California as a result of its repeated and pervasive violation of CIPA." Similarly, the first amended complaint, filed five days before the date of National Union's letter denying coverage, stated that "Yahoo! derives a financial windfall from the reading of, attempts to read, learning of the content or meaning of, eavesdropping upon, and recording of communications Plaintiff sent to Yahoo! Mail users." It is reasonably inferable from these profiting allegations that Yahoo was disclosing to third-party customers of consumer data the private content it obtained from its alleged e-mail scanning practices, either through the direct sale of the information it intercepted or in the provision of services, such as targeted advertising.[5] See Gray v. Zurich Ins. Co., 65 Cal. 2d

---

[5] In fact, the later-filed Holland lawsuit establishes that such allegations would eventually materialize, as discussed further in the next section.

United States District Court
Northern District of California

263, 276 (1966) (holding a duty to defend is determined based on the potentiality for liability based on covered conduct). Although the <u>Sutton</u> complaint did not contain the same allegations, National Union offers no reason why the pleading could not have been amended to include them. <u>See</u> <u>Hartford Cas. Ins. Co.</u>, 59 Cal. 4th at 287.

National Union's reliance on the California Court of Appeal's decisions in <u>ACS</u> and <u>JT's Frames</u> to escape the potential for coverage is misplaced. While the coverage dispute in both of those cases required interpretation of policy language similar to the language at issue here, that is where the similarities end. The third-party lawsuits discussed in <u>ACS</u> and <u>JT's Frames</u> alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, from unsolicited advertisements sent by fax. The Court of Appeals could naturally find that this activity, which involved only a violation of "seclusion" privacy and did not disclose an individual's private content, was not covered by the policy language. Here, in contrast, the plaintiffs in the <u>Sutton</u> and <u>Penkava</u> lawsuits alleged that Yahoo's e-mail scanning activity resulted in the interception of private communications, and raised the fair possibility of amendments alleging that Yahoo was disclosing that information to third parties.

Similarly, this district's decision in another action between these two parties, <u>Yahoo! Inc. v. National Union Fire Insurance Company of Pittsburgh</u>, 255 F. Supp. 3d 970 (N.D. Cal. 2017), has little persuasive value outside of the court's interpretation of the policy language. Like the unsolicited faxes discussed in <u>ACS</u> and <u>JT's Frames</u>, the third-party lawsuits underlying the coverage dispute involved Yahoo's alleged transmission of unsolicited text messages. Indeed, the district court found this alleged conduct consisted only of violations of "seclusion" privacy, not "secrecy privacy.

Moreover, other cases cited by National Union, such as <u>Gunderson v. Fire Insurance Exchange</u>, 37 Cal. App. 4th 1106 (1995), and <u>Hurley Construction Company v. State Farm Fire and Casualty Company</u>, 10 Cal. App. 4th 533 (1992), are inapposite. Both cases arrive at the same holding: that when determining a duty to defend for a third-party lawsuit, the insurer "does

not have a continuing duty to investigate whether there is a potential for coverage" and need not speculate about potential facts, but can make a decision based on the lawsuit's allegations and extrinsic facts known to the insurer at the time. <u>Gunderson</u>, 37 Cal. App. 4th at 1114. This rule does not foreclose the possibility of coverage here, because National Union cannot reasonably contend it was unaware of allegations apparent on the face of the complaints filed in the <u>Penkava</u> lawsuit. No speculation or investigation into additional unknown facts was required before the potential for coverage arose and was made known to National Union.

Furthermore, National Union has not met its burden to establish that the <u>Sutton</u> and <u>Penkava</u> lawsuits were excluded from coverage by the 2011 Policy's Criminal Acts provision. That provision excluded from the policy injuries "arising out of a criminal act committed by or at the direction of the insured." It must be construed narrowly against National Union. <u>See</u> <u>Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.</u>, 14 Cal. App. 5th 281, 291 (2017). While it is true that only claims for violation of CIPA were asserted in the <u>Sutton</u> and <u>Penkava</u> lawsuits, the form of the claim is not controlling. <u>See</u> <u>Hartford Cas. Ins. Co.</u>, 59 Cal. 4th at 287. The additional allegations of profit by Yahoo raised a possibility of a claim for civil damages. It was therefore uncertain at the commencement of the <u>Sutton</u> and <u>Penkava</u> whether the Criminal Acts provision would apply to bar coverage, and equally uncertain whether there existed a duty to defend. Under those circumstances, National Union was obligated to defend until the lack of coverage was conclusively established. <u>Id</u>.

### c. The <u>Holland</u> Lawsuit and <u>In re Yahoo Mail Litigation</u>

The <u>Holland</u> lawsuit, which was eventually consolidated as <u>In re Yahoo Mail Lititgation</u>, presents a different issue for the duty to defend. Since National Union eventually agreed to defend two years after the initial tender, the question is whether Yahoo has proven that National Union breached its duty by delaying a defense. To answer that question, the court must determine whether, at the time of tender, the <u>Holland</u> lawsuit invoked a duty to defend under the policy.

The duty to defend arises immediately upon the tender of a potentially covered claim.

1  Buss v. Super. Ct., 16 Cal.4th 35, 46 (1997). "Imposition of an immediate duty to defend is

2  necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf."

3  Montrose Chem. Corp., 6 Cal. 4th at 295. "A failure to provide counsel or to guarantee the

4  payment of legal fees immediately after an insurer's duty to defend has been triggered constitutes

5  a breach of the duty to defend, even if the insurer later reimburses the insured." Travelers Indem.

6  Co. of Connecticut v. Centex Homes, No. 11-CV-03638-SC, 2015 WL 5836947, at *5 (N.D. Cal.

7  Oct. 7, 2015).

8      Like the Sutton and Penkava lawsuits, the complaint filed in the Holland lawsuit contained

9  allegations upon which third-party disclosure of private communications could be reasonably

10  inferred. The plaintiffs alleged that Yahoo "intercepted, scanned, stored, read and analyzed" the

11  contents of messages they sent to Yahoo e-mail users. They also alleged that Yahoo violated

12  ECPA by intercepting and using "the contents of Plaintiff's and class members' email for the

13  purpose of deriving profits from, among other things, the marketing of their personal data and the

14  sales of targeted advertising and content." These allegations were enough to raise at least the

15  potential for coverage under the 2011 Policy in the same way as the Sutton and Penkava lawsuits.

16      National Union implies that other facts surrounding the tender of the Holland lawsuit raise

17  a material dispute as to when the duty to defend arose. Specifically, National Union argues it

18  should not be faulted for delaying a defense of the Holland lawsuit because (1) the claims

19  professional who issued the coverage denial was not the same individual who examined the Sutton

20  and Penkava lawsuits, and (2) Yahoo did not provide National Union with the terms of its own

21  policy. The court is not persuaded. The first fact is irrelevant to whether the duty to defend arose

22  immediately upon tender, since the potential for coverage was apparent from allegations in the

23  Holland complaint without the need to reference prior or extrinsic facts, such as the Sutton and

24  Penkava lawsuits. And the second fact similarly of no moment to determining when a duty to

25  defend the Holland lawsuit arose. National Union provides no authority to support the proposition

26  that an insurer's duty to defend is delayed during the time it operates under an incomplete copy of

27

the policy it drafted.

In sum, the court finds no dispute of material fact that National Union breached the duty to defend the <u>Sutton</u> and <u>Penkava</u> lawsuits. Furthermore, the court finds no dispute of material fact that National Union breached the duty to provide Yahoo an immediate defense of the <u>Holland</u> lawsuit.

### d. The Deductible Coverage Endorsement

National Union argues that even if it breached its duty to defend, it is not foreclosed from enforcing its rights under the Deductible Endorsement to the 2011 policy. Yahoo argues otherwise. National Union's position is the more persuasive.

This issue requires observance of two important aspects of insurance law. The first concerns the basic purpose of classic liability insurance. "[L]iability insurance is a contract between the insured and the insurance company to provide the insured, in return for the payment of premiums, protection against liability for risks that are within the scope of the policy's coverage." <u>Delgado v. Interinsurance Exch. Of the Auto. Club of S. Cal.</u>, 47 Cal. 4th 302, 311 (2009). One of the insured's reasonable expectations is that the insurer will defend it against claims potentially covered by the policy. <u>See</u> <u>Marie Y. v. Gen. Star Indem. Co.</u>, 110 Cal. App. 4th 928, 950 (2003) ("In most policies of insurance, the insurer agrees to defend an insured against any claim for which the policy affords coverage.").

The second applies to damages because insurance is a matter of contract. "Damages awarded to an injured party for breach of contract 'seek to approximate the agreed-upon performance.'" <u>Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.</u>, 34 Cal. 4th 960, 967 (2005) (quoting <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 515 (1994)). "The goal is to put the plaintiff in as good a position as he or she would have occupied if the defendant had not breached the contract." <u>Id</u>. (internal quotation omitted). "The injured party's damages cannot, however, exceed what it would have received if the contract had been fully performed on both sides." <u>Id</u>. at 968.

Here, the court has explained why National Union failed to adhere to one of Yahoo's reasonable expectations by breaching its duty to defend the E-mail Scanning Lawsuits. Yahoo, however, has not established why the rule governing the traditional measure of contract damages allows it retain payments it otherwise would have been required to reimburse. The principal case relied on by Yahoo, Kennedy v. American Fidelity and Casualty Company, Inc., 97 Cal. App. 2d 315 (1950), does not support the result it seeks.

In Kennedy, the plaintiff sued her insurer after it failed to defend her in an action involving a car accident. The California Court of Appeal, in a brief opinion and without citing any supporting authority, held the insurer could not use a reimbursement endorsement to avoid a judgment for defense costs because the insurer had "repudiated the policy entirely insofar as the accident in question [was] concerned." 97 Cal. App. 4th at 317. If any rule can be discerned from the Kennedy court's brief analysis, it is not one expanding the scope contract damages available in insurance coverage actions. Rather, it seems the point of the Kennedy court's holding is to prevent an insurer who has denied coverage under a policy from utilizing another provision of that same policy to continue to altogether deny its duty to defend based on the potential for coverage.

Unlike the insurer in Kennedy, National Union is not arguing the Deductible Coverage Endorsement excludes coverage for the E-mail Scanning Lawsuits or precludes a duty to defend. Instead, the court understands that National Union would enforce the endorsement to the extent permitted by its language and as contemplated by both parties when they agreed to the terms of the 2011 policy. Kennedy, therefore, is distinguishable.

Furthermore, Yahoo's interpretation of when the Deductible Coverage Endorsement does not apply is problematic. Yahoo argues the endorsement's reimbursement provisions apply "only when National Union defends a potentially covered claim." Yahoo further explains:

> That means National Union uses its bargaining power to retain defense counsel at reasonable rates, oversees and manages the defense, pays and reviews all defense invoices received, and brings the case to resolution. Then, at the conclusion of the lawsuit, National Union theoretically would send Yahoo a bill for all expenses it incurred as "Supplementary Payments" in the defense. The value of

the Deductible Coverage Endorsement is that it provides Yahoo with assurance and peace of mind that National Union will oversee and handle matters that trigger the Policies on behalf of Yahoo, without Yahoo's operations being impacted. Yahoo never received the benefit of this peace of mind that it purchased with these policies.

Yahoo's interpretation applying the endorsement only when National Union defends a potentially covered claim is contrary to the mutual expectations of the parties and would fundamentally transform the policy. The court must resist this absurd result. See Sequeira, 239 Cal. App. 4th at 1445. Again, Yahoo contracted for a form of self-insurance known as a "fronting" policy, not a classic liability policy, which means it retained the ultimate risk on any covered claim. See Playtex FP, Inc. v. Columbia Cas. Co., 609 A.2d 1087, 1091 (Del. Super. Ct. 1991) (explaining that "[f]ronting policies have no risk transfer associated with them" and that "[l]arge companies use fronting policies to comply with statutory filing requirements, and for business purposes such as leasing property or equipment and satisfying vendors' requirements for insurance coverage"). The 2011 Policy cannot be interpreted, therefore, to shoulder National Union with the risk that Yahoo agreed to retain. That result is contrary to the policy's core purpose, and such an intention cannot be inferred from its clear and explicit language. Yahoo's citation to Woodliff v. California Insurance Guarantee Association, 110 Cal. App. 4th 1690 (2003), does not modify this outcome because that case, which does not involve self-insurance or a fronting policy, is distinguishable on that basic fact.

In addition, the factual record does not support the hypothetical "value" Yahoo attributes to the 2011 Policy. Rather than retaining counsel and managing Yahoo's defense, National Union eventually agreed to defend the Holland lawsuit subject to a reservation of rights. Doing so resulted in a conflict, enabling Yahoo to retain independent counsel under California Insurance Code § 2860. This scenario is a common one in this court's experience and would have occurred even if National Union had agreed to defend the E-mail Scanning Lawsuits when they were tendered. Yahoo, a sophisticated business, must be equally aware of this reality. Consequently, Yahoo cannot credibly claim its "objectively reasonable expectations" were derailed because

National Union did not oversee the details of its defense.

Thus, the court finds the Deductible Coverage Endorsement is neither unenforceable nor inapplicable under the particular facts of this case. This does not mean, however, that National Union escapes its duties under the policy. But nullifying the Deductible Coverage Endorsement and prohibiting National Union from seeking reimbursement would enrich Yahoo beyond its reasonable expectations. Indeed, the explicit terms of the policy show that Yahoo always knew it would be required to reimburse National Union, and Yahoo has not presented persuasive legal authority to support a windfall.

### ii. Breach of Duty to Indemnify

National Union argues Yahoo cannot establish a breach of the duty to indemnify because the E-mail Scanning Lawsuits did not involve claims actually covered by the 2011 Policy. Much like the duty to defend claim, Yahoo's burden is to show no dispute of material fact that National Union failed to indemnify a covered liability.

### a. The Sutton and Penkava Lawsuits

Yahoo cannot satisfy this burden for the Sutton and Penkava lawsuits. The record shows that both actions were voluntarily dismissed within months of their commencement without written settlement agreements. Nor has Yahoo produced any evidence it made payments in connection with those dismissals. Accordingly, there can be no breach of the duty to indemnify under the 2011 Policy based on the Sutton and Penkava lawsuits because Yahoo never became legally obligated to pay damages for those actions. See Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1120 (1999); see also Aerojet-General Corp., 155 Cal. App. 4th at 143 (holding policy language indemnifying an insured for payments of "damages" only applies to money ordered by a court to be paid).

### b. In re Yahoo Mail Litigation

As to In re Yahoo Mail Litigation, the parties dispute whether the settlement of that action resolved a claim for "damages because of 'personal injury,'" to which the 2011 policy applied.

National Union argues (1) the settlement did not involve a claim based on "[o]ral or written publication, in any manner, of material that violates a person's right of privacy," and (2) did not obligate Yahoo pay "damages." National Union is incorrect.

### 1. The Settlement Resolved Claims for Personal Injury

The court construes the pleadings from <u>In re Yahoo Mail Litigation</u> to determine whether the settlement was "entered on a theory which is actually (not potentially) covered by the policy." <u>Palmer</u>, 21 Cal. 4th at 1120. The plaintiffs asserted a claim for violation of the SCA, by which "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). In support of their SCA claim, the plaintiffs alleged "Yahoo's scanning of the content of its users' emails (and its storage and sharing of the content with third parties) exceeded its authorization from any party to the emails." The plaintiffs also alleged that Yahoo "provides some of the information it collects from its users' incoming and outgoing email to unidentified 'trusted partners' and other third parties for advertising purposes." For relief under the SCA, the plaintiffs sought statutory damages, punitive damages, and attorney's fees and costs.

Ruling on Yahoo's motion to dismiss,[6] the district court found Plaintiffs successfully stated a claim for improper disclosure in violation of the SCA. The court thereafter certified a class of plaintiffs under the SCA claim, observing "the common factual question of whether Yahoo actually discloses to third parties the contents of class members' emails is essential to Plaintiffs' claim." The parties then reached a settlement by which the four representative plaintiffs agreed to release their claims for damages. The district court approved the settlement.

This procedural history of <u>In re Yahoo Mail Litigation</u> shows that, when the action settled, the representative plaintiffs' damages claims for violation of the SCA based on improper disclosure to third parties were still at issue and were released by virtue of the settlement. The

---

[6] The court takes judicial notice of the district court's orders a motion to dismiss and on a motion for class certification filed in <u>In re Yahoo Mail Litigation</u> even though neither was included in the record submitted by the parties.

representative plaintiffs' SCA claim for violation of 18 U.S.C. § 2702(a)(1) fall within the 2011 policy's definition of "personal injury," in that they plaintiffs sought damages for the "[o]ral or written publication . . . of material that violates a person's right of privacy."  National Union's citation to limited statements from the district court's approval orders and on the form of relief obtained takes too narrow a view of the pleadings and overlooks the nature of the plaintiffs' individual SCA claims.

The court finds the settlement entered in In re Yahoo Mail Litigation resolved claims for "personal injury" under the 2011 Policy.

### 2.  The Settlement Partially Constitutes "Damages"

The 2011 Policy does not define the term "damages."  When that is the case, California courts apply the "plain and ordinary" meaning to the term; that is, the definition "requires there to be 'compensation,' in 'money,' 'recovered' by a party for 'loss' or 'detriment' it has suffered through the acts of another.  AIU Ins. Co., 51 Cal. 3d at 826.  California courts also construe the term's coverage broadly to promote the insured's objectively reasonable expectations.  Id. at 822. To determine these expectations, "the disputed policy language must be examined in context with regard to its intended function in the policy," by considering "the policy as a whole, the circumstances of the case . . . and common sense."  Golden Eagle Ins. Co. v. Ins. Co of the West, 99 Cal. App. 4th 837, 851 (2002) (internal citations omitted).

The first question is whether Yahoo's payment of attorney's fees to the plaintiffs' counsel constitutes "damages."  Contrary to National Union's argument, attorney's fees are not categorically excluded from a policy's "damages" clause by Cutler-Orosi Unifed School District v. Tulare County School Districts Liability/Property Self Insurance Authority, 31 Cal. App. 4th 617 (1995), which case has been repeatedly limited to its facts.[7]  At the same time, "[a]ttorney fee awards may not normally be considered as 'damages' in that they do not compensate claimants for

---

[7] Nor is the court persuaded that the California statute identifying permissible costs, Civil Procedure Code § 1033.5, applies to these facts.  The attorney's fees ordered in In re Yahoo Mail Litigation were awarded by the court, not as part of the prevailing party's statutory costs.

Case No.: 5:17-cv-00489-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

20

1    the injury for which they brought suit." <u>Combs v. State Farm Fire & Cas. Co.</u>, 143 Cal. App. 4th

2    1338, 1344 (2006).

3         Here, the parties requested attorney's fees pursuant to only one statute, California Code of

4    Civil Procedure 1021.5.  The California legislature adopted § 1025.1 "as a codification of the

5    'private attorney general' doctrine."  <u>Woodland Hills Residents Ass'n, Inc. v. City Council of</u>

6    <u>L.A.</u>, 23 Cal. 3d 917, 933 (1979).  "The doctrine rests upon the recognition that privately initiated

7    lawsuits are often essential to the effectuation of the fundamental public policies embodied in

8    constitutional or statutory provisions, and that, without some mechanism authorizing the award of

9    attorney fees, private actions to enforce such important public policies will as a practical matter

10   frequently be infeasible."  <u>Id</u>.  It is "an exception to the general rule, commonly referred to as the

11   'American rule,' that each party to a lawsuit must ordinarily pay his or her own attorney fees."

12   <u>Bui v. Nguyen</u>, 230 Cal. App. 4th 1357, 1365 (2014).

13        Under the 2011 Policy and on this undisputed factual record, the court finds Yahoo would

14   reasonably expect that an award of attorney's fees under § 1021.5 would constitute "sums that the

15   insured becomes legally obligated to pay as damages" because of "'bodily injury' arising out of

16   'personal injury.'"  The fee award entered in <u>In re Yahoo Mail Litigation</u> fits within the policy as a

17   whole, since the general purpose of a CGL policy is "to provide the insured with the broadest

18   spectrum of protection against liability for unintentional and unexpected personal injury or

19   property damage arising out of the conduct of the insured's business."  <u>MacKinnon v. Truck Ins.</u>

20   <u>Exch.</u>, 31 Cal. 4th 635, 654 (2003) (quoting <u>Westchester Fire Ins. Co. v. City of Pittsburg, Kans.</u>,

21   768 F. Supp. 1463, 1468 (D. Kans. 1991)).  The fee award also fits within the plain and ordinary

22   meaning of "damages" as used in the 2011 Policy.  The attorney's fees are "money" the plaintiffs

23   "recovered" for a "detriment" suffered through Yahoo's acts.  Indeed, the fee award and Yahoo's

24   alleged e-mail scanning conduct are "hand in glove" by operation of § 1021.5; that is, the fee

25   award is directly attributable to the public policy vindicated by exposing and successfully

26   remedying Yahoo's e-mail scanning activities.

27

28   Case No.: 5:17-cv-00489-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT
                                               21

But even if these considerations were not enough to reveal Yahoo's reasonable expectations, the court would still construe the ambiguous "damages" term against National Union and in favor of coverage.  See AIU Ins. Co., 51 Cal. at 822; see also Ins. Co. of the State of Penn. v. City of Long Beach, 342 Fed. App'x 274, 277 (9th Cir. 2009).  National Union chose not to define "damages" in its form CGL policy or in the Personal Injury Endorsement, and must be the party to bear the consequences from an ensuing ambiguity.  Under either analysis, one under the insured's reasonable expectations or one that construes ambiguous coverage terms against the insurer, National Union breached the duty to indemnify for the award of attorney's fees.

The service awards to class representatives do not, however, fall within the definition of "damages."  "Such awards are discretionary . . .  and are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  Notably, the district court did not explicitly order these payments under § 1021.5 or under a "private attorney general" theory, but did so after "considering the amount of time and effort expended . . . over this nearly three-year long litigation," and "the results achieved."  As framed by the district court, the service awards were not compensation for a "detriment" caused by Yahoo inasmuch as they constituted recompense for the inconveniences of litigation.  Thus, National Union did not breach the duty to indemnify for those payments.[8]

### iii.     Breach of the Covenant of Good Faith and Fair Dealing

As noted, insurance contracts imply a covenant of good faith and fair dealing.  Love, 221 Cal. App. 3d at 1147.  "Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims."  Id. at 1148.  "Thus, an insurer

---

[8] Given the result on the duty to indemnify, the court need not address Yahoo's alternative indemnification theory based on Amato v. Mercury Casualty Co., 53 Cal. App. 4th 825 (1997).

must investigate claims thoroughly; it may not deny coverage based on either unduly restrictive policy interpretations or standards known to be improper; it may not unreasonably delay in processing or paying claims." Id. (internal citations omitted).

"[I]n the context of the insurance contract, it has been held that the insurer's responsibility to act fairly and in good faith with respect to the handling of the insured's claim 'is not the requirement mandated by the terms of the policy itself-to defend, settle, or pay." Chateau Chamberay Homeowners Ass'n v. Assoc. Intern. Ins. Co., 90 Cal. App. 4th 335, 346 (2001) (quoting Cal. Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 54 (1985)). Thus, "[t]he mere denial of benefits . . . does not demonstrate bad faith." Hanson v. Prudential Ins. Co. of Am., 783 F.2d 762, 766 (9th Cir. 1985). "[W]here there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." Chateau Chamberay, 90 Cal. App. 4th at 347.

The "ultimate test" for assessing claims of bad faith is "whether the insurer's conduct was unreasonable under all of the circumstances." Barickman v. Mercury Cas. Co., 2 Cal. App. 5th 508, (2016); accord Love, 221 Cal. App. 3d at 1151 (holding bad faith occurs when the insurer withholds benefits unreasonably or without proper cause). The insurer has the burden of showing the reasonableness of its claims-handling (Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001)), which is ordinarily a question of fact that must be resolved by a jury. Chateau Chamberay, 90 Cal. App. 4th at 346. "[I]t becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." Id.

Yahoo argues National Union's decisions to deny coverage of the E-mail Scanning Lawsuits were breaches of the covenant of good faith and fair dealing and demonstrate bad faith. In support, Yahoo points out that (1) National Union cited, in its letter denying coverage for the Sutton and Penkava lawsuits, an exclusion for "Insureds in Media and Internet Type Businesses," which exclusion was not retained in the 2011 Policy by the Personal Injury Endorsement; (2)

National Union cited this same deleted exclusion in the initial denial of coverage for the <u>Holland</u> lawsuit; (3) National Union used an incomplete copy of the 2011 Policy to determine whether the <u>Holland</u> lawsuit was a covered claim; and (4) National Union insinuated that Yahoo's inaction and failure to submit "information easily at hand" was the reason it denied coverage for the <u>Holland</u> lawsuit.

Though these facts are not subject to a material dispute, there is more than one inference that can be drawn from this evidence. A reasonable jury could find, as National Union argues, that there was no bad faith because its errors were simply mistaken coverage decisions and that it otherwise acted reasonably under the circumstances. Conversely, a reasonable jury could find that National Union committed bad faith by failing to investigate Yahoo's claims thoroughly. To that end, the evidence could support the finding that National Union undertook an incomplete review of its own claims file when it declined coverage for the <u>Holland</u> lawsuit because, had it done so, it would have discovered its response to the <u>Sutton</u> and <u>Penkava</u> lawsuits, which accurately cited the coverage grant of the 2011 Policy. In addition, the evidence could support a finding that National Union committed bad faith by conducting a negligent review of its own policies, relying on standards known to be improper when denying coverage, and attempting to shift the blame for its erroneous coverage decision to its insured. Indeed, this record contains at least two instances in which National Union cited policy exclusions that were not actually part of the policy, and one instance where it made a coverage decision with incomplete information. Notably, National Union fails to explain why a complete version of the 2011 Policy was not easily available in its own files.

Because the court is unable to draw inferences from the evidence and resolve the claim as a matter of law, a jury must decide whether National Union's claims-handling with respect to the E-mail Scanning Lawsuits constitutes bad faith. <u>See</u> <u>Anderson</u>, 477 U.S. at 249-55 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## IV.   ORDER

Based on the foregoing, the parties' cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART as follows:

1.      Yahoo's motion that National Union breached the duty to defend the E-mail Scanning Lawsuits is GRANTED and National Union's motion is DENIED.

2.      National Union's motion that it did not breach the duty to indemnify with respect to the Sutton and Penkava lawsuits is GRANTED and Yahoo's motion is DENIED.

3.      Yahoo's motion that National Union breached its duty to indemnify the attorney's fees awarded to the plaintiffs in In re Yahoo Mail Litigation is GRANTED and National Union's motion is DENIED.

4.      National Union's motion that it did not breach its duty to indemnify the service awards to class representatives in In re Yahoo Mail Litigation is GRANTED and Yahoo's motion is DENIED.

5.      Because there is a genuine dispute of material fact whether National Union breached the implied covenant of good faith and fair dealing, both parties' motions are DENIED as to that claim.

The court schedules this action for a Further Case Management Conference at 10:00 a.m. on **November 29, 2018**.  The parties shall file an updated Joint Case Management Conference Statement on or before **November 19, 2018.**


**IT IS SO ORDERED.**

Dated:  October 12, 2018

EDWARD J. DAVILA
United States District Judge